PETER B. MORRISON (SBN 230148)
Peter.Morrison@skadden.com
ZACHARY FAIGEN (SBN 294716)
Zack.Faigen@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

ALEXANDER C. DRYLEWSKI (*pro hac vice*)
alexander.drylewski@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-0411

*Attorneys for Defendant*
*Paradigm Operations LP*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ANDREW SAMUELS, on behalf of himself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>LIDO DAO; AH CAPITAL MANAGEMENT, LLC; PARADIGM OPERATIONS LP; DRAGONFLY DIGITAL MANAGEMENT LLC; ROBOT VENTURES LP,<br><br>Defendants. | Case No. 3:23-cv-06492-VC<br><br>**DEFENDANT PARADIGM OPERATIONS LP'S MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Hearing Date: June 27, 2024<br>Time: 10:00 a.m.<br>Place: Courtroom 4<br>Judge: Hon. Vince Chhabria |

# NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on June 27, 2024, at 10:00 a.m., before the Honorable Vince Chhabria in Courtroom 4 of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Fransisco, CA 94102, Defendant Paradigm Operations LP ("Paradigm") will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing Plaintiff's Amended Complaint (the "Motion").

Paradigm's Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers on file in this action, the motions to dismiss filed by Defendants AH Capital Management, LLC, Dragonfly Digital Management LLC, and Robot Ventures LP, and such further argument and matters as may be presented at the time of the hearing on the Motion. Pursuant to Civil Local Rule 7-2(b)(3), Paradigm requests that the Court enter an order dismissing the Amended Complaint (the "AC") as against Paradigm with prejudice.

The Motion presents two issues to be decided:

1. Whether Plaintiff's claim under Section 12(a)(1) of the Securities Act of 1933 ("Securities Act") should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) where Plaintiff fails to plead that Paradigm was a "statutory seller" of the alleged securities at issue because he fails to plead that (i) he purchased the alleged security from Paradigm, or (ii) he was successfully solicited by Paradigm to purchase the alleged security.

2. Whether Plaintiff's claim under Section 12(a)(1) of the Securities Act should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff fails to plead that Paradigm is derivatively liable for the acts of the purported "Lido DAO partnership" where (i) Plaintiff fails to adequately plead the existence of any such "partnership," (ii) he fails to plead that Paradigm is a partner in any such "partnership," and (iii) as a matter of law, partners cannot be held liable under Section 12 for the alleged conduct of a partnership.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF FACTS .........................................................................................................2

ARGUMENT .................................................................................................................................3

    I.    PLAINTIFF FAILS TO PLEAD A SECTION 12 CLAIM AGAINST PARADIGM .................................................................................................................3

        A.    Plaintiff Does Not Allege That Paradigm Passed Title of LDO Tokens to Him..................................................................................................3

        B.    Plaintiff Does Not Allege That Paradigm Solicited His Purchase of LDO Tokens.......................................................................................................4

            1.    Plaintiff Fails To Plead That Paradigm Urged Him To Acquire LDO Tokens.....................................................................4

            2.    Plaintiff Fails To Plead Paradigm's "Successful" Solicitation.........6

            3.    Plaintiff Fails To Plead Paradigm's Financial Motivation ...............6

    II.    PLAINTIFF FAILS TO PLEAD THAT PARADIGM FORMED A PARTNERSHIP..................................................................................................7

        A.    Plaintiff Does Not Allege Mutual Consent To Run A Business A Co-Owners ...........................................................................................................7

        B.    Plaintiff Does Not Allege The Sharing Of Profits And Losses Among Partners ..............................................................................................9

        C.    Plaintiff Does Not Allege Any Agreement Or Right Of Joint Control......10

    III.    CONCLUSION...............................................................................................10

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Ackerman v. Schwartz*,
    947 F.2d 841 (7th Cir. 1991) .................................................................................................. 10

*Azco Biotech, Inc. v. Qiagen, N.V.*,
    No. 12-CV-2599, 2015 WL 12516024 (S.D. Cal. July 2, 2015) ............................................ 8

*Bank of California v. Connolly*,
    36 Cal. App. 3d 350 (1973) .................................................................................................... 7

*Beautiful Slides, Inc. v. Allen*,
    No. 17-cv-01091, 2017 WL 3782304 (N.D. Cal. Aug. 31, 2017) .................................... 9, 10

*Bustamante v. Intuit, Inc.*,
    141 Cal. App. 4th 199 (2006) .................................................................................................. 7

*Capri v. Murphy*,
    856 F.2d 473 (2d Cir. 1988) .................................................................................................... 5

*Corrales v. Corrales*,
    198 Cal. App. 4th 221 (2011) .................................................................................................. 8

*Crawford v. Glenns, Inc.*,
    876 F.2d 507 (5th Cir. 1989) ............................................................................................... 5, 6

*Dorchester Investors v. Peak International Ltd.*,
    134 F. Supp. 2d 569 (S.D.N.Y. 2001) ..................................................................................... 5

*Eng v. Brown*,
    21 Cal. App. 5th 675 (2018) ................................................................................................ 7, 9

*In re Genius Brands International, Inc. Securities Litigation*,
    97 F.4th 1171 (9th Cir. 2024) ................................................................................................. 4

*In re Hart (Karaeff v. Hart)*,
    Nos. 09-71053, 11-42424, 2014 WL 1018087 (Bankr. N.D. Cal. Mar. 14, 2014),
    *aff'd*, No. NC-14-1154-JuTaPa, 2015 WL 845569 (9th Cir. BAP Feb. 26, 2015) ................. 9

*Hollifield v. Resolute Capital Partners Ltd.*,
    No. 2:22-cv-07885, 2023 WL 4291524 (C.D. Cal. May 12, 2023) ................................... 4, 6

*Houghton v. Leshner*,
    No. 22-cv-07781, 2023 WL 6826814 (N.D. Cal. Sept. 20, 2023) .......................................... 5

*Jones v. Goodman*,
    57 Cal. App. 5th 521 (2020) .................................................................................................... 7

*Kerrigan v. Visalus, Inc.*,
   No. 14-cv-12693, 2016 WL 892804 (E.D. Mich. Mar. 9, 2016) ........................................... 6

*Lozada v. TaskUs, Inc.*,
   No. 22 Civ. 1479, 2024 WL 68571 (S.D.N.Y. Jan. 5, 2024) ............................................ 5, 6

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................................... 6

*In re Marriage of Geraci*,
   144 Cal. App. 4th 1278 (2006) .......................................................................................... 9

*Maine State Retirement System v. Countrywide Financial Corp.*,
   No. 2:10-CV-0302, 2011 WL 4389689 (C.D. Cal. May 5, 2011) ................................... 4, 5

*Mehedi v. View, Inc.*,
   No. 21-cv-06374, 2023 WL 3592098 (N.D. Cal. May 22, 2023) ..................................... 4, 7

*Pino v. Cardone Capital, LLC*,
   55 F.4th 1253 (9th Cir. 2022) ........................................................................................... 4, 6

*Pinter v. Dahl*,
   486 U.S. 622 (1988) ................................................................................................... passim

*Prostar Wireless Group, LLC v. Domino's Pizza, Inc.*,
   360 F. Supp. 3d 994 (N.D. Cal. 2018) ............................................................................. 10

*Rensel v. Centra Tech, Inc.*,
   No. 17-24500, 2019 WL 2085839 (S.D. Fla. May 13, 2019) ........................................... 6, 7

*Risley v. Universal Navigation Inc.*,
   No. 22 Civ. 2780 (KPF), 2023 WL 5609200 (S.D.N.Y. Aug. 29, 2023) ................. 1, 2, 4, 7

*Rivlin v. Levine*,
   195 Cal. App. 2d 13 (1961) ............................................................................................... 8

*Schaffer Family Investors, LLC v. Sonnier*,
   120 F. Supp. 3d 1028 (C.D. Cal. 2015) ........................................................................... 10

*Schneider v. Traweek*,
   No. CV 88-0905, 1990 WL 169856 (C.D. Cal. Sept. 5, 1990) ...................................... 5, 10

*Slack Technologies, LLC v. Pirani*,
   598 U.S. 759 (2023) ......................................................................................................... 10

*In re Tezos Securities Litigation*,
   No. 17-cv-06779, 2018 WL 4293341 (N.D. Cal. Aug. 7, 2018) ........................................ 6

*In re Vaxart, Inc. Securities Litigation*,
   No. 20-cv-05949, 2023 WL 3637093 (N.D. Cal. May 25, 2023) ....................................... 8

*Wildes v. BitConnect International PLC*,
    25 F.4th 1341 (11th Cir. 2022) .................................................................................... 4

*Young America's Foundation v. Stenger*,
    No. 3:20-CV-0822, 2023 WL 3559619 (N.D.N.Y. May 19, 2023) ........................................ 9

**STATUTES**

15 U.S.C. § 77k ................................................................................................................ 10

Cal. Corp. Code § 16101 ..................................................................................................... 8

Cal. Corp. Code § 16202 ..................................................................................................... 7

Cal. Corp. Code § 16401 ..................................................................................................... 8

**OTHER AUTHORITIES**

Official Comments, Revised Uniform Partnership Act § 202 (2023-24 ed.) ................................. 10

Li Yuxuan, *Lido Finance-Decentralized Guardian of ETH2.0*, Mint Ventures (Aug. 20, 2021),
    https://mint-ventures.medium.com/lido-finance-decentralized-guardian-of-eth2-0-
    bbd415060f85 ................................................................................................................ 8

**PRELIMINARY STATEMENT**

Plaintiff asserts a single claim against Paradigm under Section 12(a)(1) of the Securities Act based on his purchase of LDO tokens, which he alleges are unregistered "securities." Yet Plaintiff does not allege that Paradigm had any role in creating LDO tokens, sold a single LDO token to him or anyone else, urged him or anyone else to purchase LDO tokens, or had *any* contact or relationship with Plaintiff whatsoever. As such, he cannot hold Paradigm liable as a "statutory seller" of LDO tokens under Section 12(a)(1). *Pinter v. Dahl*, 486 U.S. 622, 642, 647 (1988). Recognizing this failure, Plaintiff attempts to lump Paradigm and three unaffiliated investment firms into an implied-by-law "partnership"—which he refers to vaguely as "Lido," "Lido Finance" and/or "Lido DAO" throughout the AC—the contours of which are never explained. Plaintiff's ill-defined theory fails to plead the most basic elements of a partnership and should be rejected.

According to Plaintiff, in 2020, four individuals founded the Lido business, which offers a staking service on the Ethereum blockchain.[1] Plaintiff alleges that the founders incorporated legal entities in the British Virgin Islands to "facilitate the creation of Lido," and thereafter created LDO tokens, which Plaintiff later purchased *from an unidentified seller* on a secondary trading platform. Plaintiff does not name the seller or any of these parties as defendants. Instead, he brings suit against Paradigm and three other entities who, like Plaintiff, purchased LDO tokens a year or more after Lido allegedly formed and the tokens were created. While his legal theory remains unclear, Plaintiff seems to assert that Defendants should be combined together and held jointly liable for *his* LDO purchases because they are "large holders of LDO" tokens (a metric the AC does not define) and somehow formed a "partnership" at unalleged times in unalleged ways. But Plaintiff does not plead any coherent theory of partnership, including when it formed, how it formed, or why Defendants are the only "partners" in it (while curiously excluding Plaintiff, an admitted LDO token purchaser himself, and the thousands of other LDO token holders). Plaintiff thus provides no basis to impose this *ex post facto* contrivance on Defendants.

---

[1] A "blockchain" is a peer-to-peer network that reflects all transactions on a publicly viewable and unalterable system. *See Risley v. Universal Navigation Inc.*, 2023 WL 5609200, at *2 (S.D.N.Y. Aug. 29, 2023). Plaintiff defines "staking" as "a process through which people earn money in exchange for verifying transactions on the Ethereum blockchain." (AC ¶ 1.)

Whatever Plaintiff's gripes about LDO tokens, they have nothing to do with Paradigm. The "remedial goals of the Securities Act are insufficient justification for interpreting a specific provision more broadly than its language and the statutory scheme reasonably permit," *Pinter*, 486 U.S. at 653, and here, "[t]here is simply no intellectually honest way to read Section 12(a)(1) in a manner that allows the Court to reach Plaintiffs' requested outcome," *Risley*, 2023 WL 5609200, at *19 (rejecting statutory seller claims against Paradigm and other investors as inadequately pled). Plaintiff's theory is belied by law and common sense. The Court should dismiss the AC with prejudice.[2]

## STATEMENT OF FACTS[3]

Paradigm is a firm that invests in digital assets and related technologies. (AC ¶ 6.) Plaintiff alleges that four individuals (the "Lido Founders") founded the Lido "partnership" in 2020. (*Id.* ¶¶ 5, 27.) Plaintiff does not plead that Paradigm was involved in Lido in any way when it allegedly was formed. He alleges the Lido Founders "generated a billion LDO tokens," which were then sold starting in 2021. (*Id.* ¶¶ 32, 38.) Plaintiff claims Lido sold 10% of its then-outstanding LDO to Paradigm (*id.* ¶ 38), but does not allege any transaction or agreement between Lido and Paradigm other than this sale. Plaintiff alleges that over the next two years Lido sold LDO tokens to Defendants AH Capital Management ("a16z"), Dragonfly Digital Management ("Dragonfly") and Robot Ventures ("Robot"). (*Id.* ¶¶ 38, 96.) Plaintiff does not allege any agreement between or among Paradigm, a16z, Dragonfly or Robot. In fact, he does not allege a single communication among them.

Plaintiff claims that in 2023, he bought 132 LDO tokens for $293 on a trading platform from an unnamed seller. (*Id.* ¶ 10.) He does not allege that he purchased them from any Defendant. Plaintiff also does not allege that Paradigm sold any LDO tokens or made any statements urging anyone to purchase LDO tokens. The AC cites only two statements it attributes to Paradigm. The first is an undated, generic statement from Paradigm's website that does not even mention Lido or LDO tokens. (*Id.* ¶ 42.) The second is a February 2022 post in a chat forum by "Hasu," who allegedly worked for both Lido and Paradigm, predicting that LDO might at some future point be listed on a digital asset

---

[2] LDO tokens are not "securities" but the Court need not reach that issue, as Plaintiff fails to plead a Section 12(a)(1) claim against Paradigm even assuming they are.

[3] Paradigm assumes the truth of the facts alleged in the AC only for purposes of this Motion. All *emphases are added* and internal citations and alterations are omitted, unless otherwise indicated.

2

trading platform. (*Id.* ¶ 51.) Plaintiff does not allege that he ever saw either statement. Plaintiff also points to various alleged statements by the Lido Founders and other third parties regarding Paradigm's general experience with, and expertise in, decentralized finance projects. (*Id.* ¶¶ 40, 41, 96.) But Plaintiff does not allege that Paradigm made, authorized, or endorsed any of these statements, that he ever saw any of these statements, or that Paradigm actually contributed any such expertise to Lido.

Plaintiff alleges that the Lido "partnership," which he also names as a Defendant, is a "DAO" (or "Decentralized Autonomous Organization").[4] A DAO is a non-legal term of art that typically refers to a disparate group of token holders who, by virtue of owning any tokens, can make and vote on governance proposals to take certain actions. (*Id.* ¶¶ 20, 33, 46.) Plaintiff vaguely asserts that the Lido DAO "partnership" consists of, and is controlled by, Paradigm, a16z, Dragonfly and Robot, whom Plaintiff refers to as "large holders of LDO" tokens—but not any of the thousands of other LDO purchasers (including Plaintiff). (*Id.* ¶¶ 5, 121.) The AC does not explain how they control Lido, what their voting power is, who else (if anyone) qualifies as a "large holder," or what threshold of LDO qualifies as "large."[5] Nor does the AC allege that Paradigm participated in any Lido governance.

## ARGUMENT

### I. PLAINTIFF FAILS TO PLEAD A SECTION 12 CLAIM AGAINST PARADIGM

In *Pinter*, the Supreme Court established the test for when a defendant can be held liable as a "statutory seller" under Section 12(a)(1). 486 U.S. at 642, 647. Under that test, the plaintiff must plead that the defendant (1) "passed title" of the alleged security directly to him, or (2) "successfully solicit[ed his] purchase, motivated at least in part by a desire to serve [its] own financial interests or those of the securities' owner." *Id. Pinter* rejected the "substantial-factor test," holding that even those who are *essential* to securities transactions are not "statutory sellers" if they did not pass title or solicit the sale. *Id.* at 650 n.25 ("Congress knew of the collateral participation concept and employed it [elsewhere] in the Securities Act."). Plaintiff fails to satisfy either prong of *Pinter*.

#### A. Plaintiff Does Not Allege That Paradigm Passed Title of LDO Tokens to Him

To satisfy the "passing title" prong, a plaintiff must plead that he "purchased a security directly

---

[4] Plaintiff has not served "Lido DAO" (nor could he, as it is not a juridical entity (*see infra*)).

[5] For example, while Plaintiff alleges that 15% of LDO tokens "were allocated to Lido's Founders" and 20% to "Lido developers" (AC ¶ 93), he does not say whether they are "large holders."

3

from" the defendant. *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *11 (C.D. Cal. May 5, 2011). That is because Section 12 "imposes liability on only the buyer's immediate seller . . . . [A] buyer cannot recover against his seller's seller." *Pinter*, 486 U.S. at 644 n.21. Here, Plaintiff does not (and cannot) allege that he purchased LDO tokens "directly from" Paradigm. (AC ¶ 138 (alleging that "Defendants" "transferr[ed] title to LDO tokens" to unnamed putative class members, *not* Plaintiff).)[6] Rather, Plaintiff alleges he purchased his LDO from an unnamed seller on a secondary platform. (*Id.* ¶ 10.) Accordingly, Plaintiff cannot satisfy *Pinter*'s "passing title" prong. *Hollifield v. Resolute Cap. Partners Ltd.*, 2023 WL 4291524, at *6 (C.D. Cal. May 12, 2023) (dismissing Section 12 claim where the "SAC contains no facts—as opposed to conclusory assertions—from which to draw the inference that any Movant transacted directly with Plaintiffs").

**B.      Plaintiff Does Not Allege That Paradigm Solicited His Purchase of LDO Tokens**

Plaintiff also does not plead that Paradigm "successfully solicit[ed his] purchase" of LDO tokens and was "motivated at least in part by a desire to serve his own financial interests or those of the securities owner," as *Pinter* requires. 486 U.S. at 647.

1.      Plaintiff Fails To Plead That Paradigm Urged Him To Acquire LDO Tokens

A "solicitation" is a communication "directed at producing the sale" of a specific security. *Pinter*, 486 U.S. at 646. A "person solicits the sale of a security where she petitions, entices, lures or urges another to purchase a security." *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1182 (9th Cir. 2024); *see Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341, 1346 (11th Cir. 2022) ("[F]or solicitation to occur, a person must urge or persuade another to buy a *particular security*."). Applying this standard, the Ninth Circuit held that a fund manager solicited the purchase of a security (a stake in his fund) when he said: "I am offering investment opportunities to the everyday investor, like you! ... [Y]ou're gonna walk away with a 15% annualized return." *Pino v. Cardone Cap., LLC*, 55 F.4th 1253, 1256 (9th Cir. 2022); *Wildes*, 25 F.4th at 1346 (holding "when the promoters urged people to buy BitConnect coins in online videos," they "solicited the purchases that followed").

---

[6] Plaintiff's attempt to plead his claim against "Defendants" without differentiation also fails to satisfy the requirements of Rule 8. *Mehedi v. View, Inc.*, 2023 WL 3592098, at *12 (N.D. Cal. May 22, 2023) (dismissing Section 12 claim where Plaintiff pled "conclusory allegations" but no "specific factual allegations" as to *each* defendant); *Risley*, 2023 WL 5609200, at *18 (same).

Here, by contrast, Plaintiff does not plead any statements by Paradigm that urged or persuaded him to buy LDO tokens. In fact, the AC pleads only two statements by Paradigm on any topic. First, he alleges a statement on Paradigm's website that it "takes a deeply hands-on approach to help projects reach their full potential" (AC ¶ 42), which does not even mention Lido or LDO, much less urge anyone to purchase LDO. Second, he alleges a post in a chat forum by "Hasu" in February 2022—more than a year before Plaintiff purchased his LDO tokens—which merely stated that he "see[s] a decent chance" LDO would be listed on a digital asset trading platform at some point in the future. (*Id.* ¶ 51.) That statement does not urge or try to persuade anyone to purchase LDO.

Faced with these shortcomings, Plaintiff resorts to citing statements by third parties—*not* Paradigm—speculating how Paradigm's status as an LDO purchaser could possibly assist the Lido business. (AC ¶ 6 (statement by Lido); ¶ 40 (unaffiliated third-party blog); ¶ 41 (statement by Lido); ¶ 96 (statement by Lido).) Those are not Paradigm's statements, let alone its "solicitations." Moreover, even if Paradigm assisted Lido in those ways—and Plaintiff does not plead that it did—that would only be relevant to the "substantial factor" test the Supreme Court rejected in *Pinter*. 486 U.S. at 648-54 & nn. 24-29. Indeed, that is why courts routinely dismiss solicitation claims based on a defendant's alleged role in the business rather than on statements urging the listener to buy the security at issue. *See, e.g.*, *Me. State Ret. Sys*, 2011 WL 4389689, at *10 ("being merely a 'substantial factor' in causing the sale of unregistered securities is not sufficient" where plaintiffs did not plead "specific allegations of solicitation, including direct communication with Plaintiffs"); *Schneider v. Traweek*, 1990 WL 169856, at *17 (C.D. Cal. Sept. 5, 1990) (rejecting allegations defendant "was the 'Secondary General Partner'" and "provided unspecified 'assistance' in issuing the private placement memorandum").[7] To allow claims based on a defendant's alleged role in a business would directly contradict *Pinter*.[8]

---

[7] *See also Capri v. Murphy*, 856 F.2d 473, 478 (2d Cir. 1988) (defendant playing "major role" in setting up venture insufficient for solicitation); *Crawford v. Glenns, Inc.*, 876 F.2d 507, 512 & n.16 (5th Cir. 1989) (while defendant's "activities may have been necessary to the operation of [the fund,] they cannot properly be considered as having induced [plaintiff] to invest"); *Lozada v. TaskUs, Inc.*, 2024 WL 68571, at *19 (S.D.N.Y. Jan. 5, 2024) (no solicitation despite defendant being "deeply involved in the day-to-day management" and playing "a central role in setting up the SPO"); *Dorchester Invs. v. Peak Int'l Ltd.*, 134 F. Supp. 2d 569, 580 (S.D.N.Y. 2001) (allegation that defendant was "a person upon whom the success of [the company] depends" was "insufficient").

[8] *Houghton v. Leshner*, 2023 WL 6826814 (N.D. Cal. Sept. 20, 2023), is non-binding and distinguishable (and, in any event, wrongly decided). There, plaintiffs alleged specific facts that the
*(cont'd)*

5

### 2. Plaintiff Fails To Plead Paradigm's "Successful" Solicitation

Even if Paradigm's alleged statements could somehow be construed as solicitations (and they manifestly cannot), Plaintiff does not allege that he saw them—or was even aware of them—prior to acquiring his LDO. That too is fatal to his claim. "While it may be true the Ninth Circuit stops short of demanding 'face-to-face' buyer-seller contact for Section 12 liability to attach, [plaintiff] does not identify any authority . . . holding *Pinter* applicable in the absence of any buyer-seller contact whatsoever." *In re Tezos Sec. Litig.*, 2018 WL 4293341, at *9 (N.D. Cal. Aug. 7, 2018). This makes imminent sense: if Plaintiff never saw any statements by Paradigm, then clearly he was not urged by Paradigm to do anything.[9] Courts across jurisdictions dismiss Section 12 claims for this very reason.[10]

### 3. Plaintiff Fails To Plead Paradigm's Financial Motivation

Plaintiff also fails to plead that Paradigm had a financial "interest in the sales . . . such as where he anticipates a share of the profits, or receives a brokerage commission." *Pinter* 486 U.S. at 654. In *Pino*, the Ninth Circuit held that the defendant had a financial interest where he would receive "35% of the Funds' profits" for which he solicited investments. 55 F.4th at 1258; *see also Lozada*, 2024 WL 68571, at *18 (defendants had a financial interest in the stock offering where they "reap[ed] net proceeds of over $121 million" and "over $499 million," respectively, in the transaction).

Here, Plaintiff does not claim Paradigm had any financial interest in Plaintiffs' purchase of 132 LDO tokens for $293. (ECF 55 ¶ 2.) Nor would that even make sense. Plaintiff bought his tokens from an unnamed third party. (AC ¶ 10.) He does not plead that Paradigm received a commission or stood to profit from the sale. Nor does he hypothesize why Paradigm would have a financial interest

---

defendants were responsible for the promotion, "creation and governance" of the alleged security at issue. *Id.* at *1, *5. Plaintiff does not plead any such facts as to Paradigm here.

[9] He also would lack standing because he cannot claim an injury fairly traceable to Paradigm's alleged conduct. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

[10] *See, e.g.*, *Hollifield*, 2023 WL 4291524, at *6 (dismissing solicitation claim because "Plaintiffs do not allege that they attended any seminars or dinners or listened to any radio shows" hosted by defendants); *Tezos*, 2018 WL 4293341, at *9 ("Without averments that he was cognizant of, or influenced by, [defendant's] involvement . . . [plaintiff's] statutory seller claim against [defendant] is not plausible."); *Rensel v. Centra Tech, Inc.*, 2019 WL 2085839, at *4 (S.D. Fla. May 13, 2019) (despite defendant "urg[ing] his followers to 'get yours before they sell out, I got mine,'" solicitation claim failed because there was no allegation defendant "had any contact with Plaintiffs, or that Plaintiffs even saw the posts"); *Kerrigan v. Visalus, Inc.*, 2016 WL 892804, at *17 (E.D. Mich. Mar. 9, 2016) (no solicitation where plaintiffs did "not allege that they actually saw and/or were aware the specific activities by the individual Defendants"); *Crawford*, 876 F.2d at 512 (no solicitation where defendant had "no communication" with plaintiff before plaintiff "decided to invest").

in that transaction at all, or even care whether those 132 tokens were held by Plaintiff or the party who sold them. Plaintiff's only allegation is one conclusory sentence that "Defendants"—lumped together—sold LDO tokens "with a self-interested financial motive." (*Id.* ¶ 138.) But "[m]ere conclusory allegations that a defendant . . . was motivated by financial gain . . . are insufficient to state a claim under Section 12." *Rensel*, 2019 WL 2085839, at *3; *Mehedi*, 2023 WL 3592098, at *12 (same); *see also Risley*, 2023 WL 5609200, at *19 (hope that security will increase in value is not a cognizable financial interest under *Pinter*). Plaintiff thus fails to allege this necessary element, too.

## II.  PLAINTIFF FAILS TO PLEAD THAT PARADIGM FORMED A PARTNERSHIP

Having failed to plead that Paradigm sold or solicited his purchase of LDO, Plaintiff tries to backdoor his Section 12 claim by alleging Paradigm is a "partner" in the Lido DAO "partnership" and thus liable for any sales or solicitations by any "partners." But Plaintiff admits that the Lido DAO lacks any formal legal structure (AC ¶ 20), and fails to plead the existence of an implied-by-law partnership or that Paradigm is a partner in it. Thus, his attempt to save his claim fails.

A partnership "exists where there is [1] an agreement between the parties under which they have a community of interest, that is, a joint interest, in a common business undertaking, [2] an understanding as to the sharing of profits and losses, and [3] a right of joint control." *Bank of Cal. v. Connolly*, 36 Cal. App. 3d 350, 364 (1973); Cal. Corp. Code § 16202(a) (partnership defined as "the association of two or more persons to carry on as coowners a business for profit").[11] "[T]he burden of proving the existence of a partnership *lies upon the party asserting its existence*." *Jones v. Goodman*, 57 Cal. App. 5th 521, 531 (2020). Plaintiff fails to meet its burden to allege these elements.

### A.  Plaintiff Does Not Allege Mutual Consent To Run A Business A Co-Owners

The formation of a partnership "depends primarily upon the intention of the parties ascertained from the terms of the agreement and from the surrounding circumstances." *Eng v. Brown*, 21 Cal. App. 5th 675, 694 (2018). An agreement to form a partnership "requires mutual consent, which cannot exist unless the parties 'agree upon the same thing in the same sense.'" *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 208 (2006). Here, Plaintiff fails to allege any agreement or mutual consent between

---

[11] Plaintiff does not allege which law applies to its partnership theory. For purposes of this Motion only, Paradigm assumes California law applies.

7

Paradigm and any of the other alleged "partners" to carry on a business as co-owners.

As best can be discerned, Plaintiff alleges "Lido DAO" is a general partnership in which the four "Partner Defendants" are the only "partners." (AC at 11; *id.* ¶¶ 5, 12, 117.) He does not include anyone else in this "partnership"—not the Lido Founders, employees (even the ones the AC quotes), developers, or other investors. (*Id.* ¶ 117.) And while the AC alleges the Lido Founders formed the "partnership" in 2020 (*id.* ¶¶ 5, 27), it does not plead that Paradigm or any other "Partner Defendant" was involved in the founding or a "partner" at the time. Rather, the first time a "Partner Defendant" comes on the scene is April 2021—a year *after* the "partnership" formed—when Lido sold LDO to Paradigm. (*Id.* ¶ 38.)[12] Plaintiff does not allege Paradigm entered any other agreement with Lido, much less to operate a business as a partner. Nor does Plaintiff allege the Lido Founders consented to admit Paradigm as a partner. Cal. Corp. Code § 16401(i) ("A person may become a partner *only* with the consent of all the partners."); *Rivlin v. Levine*, 195 Cal. App. 2d 13, 21 (1961) ("In all general partnerships, . . . [n]o partner is admitted without unanimous approval of every other partner.").[13]

A year later, a16z obtained "an undisclosed amount of LDO" and, at some later unspecified time, Lido sold LDO to Dragonfly. (AC ¶ 38.) Again, Plaintiff does not allege any agreement between a16z, Dragonfly, Paradigm, the Lido Founders, or anyone else to run a business as partners, nor does he allege any communication at all between or among these parties.[14] And yet again, Plaintiff does not allege that anyone consented to add a16z or Dragonfly to the alleged partnership. As to Robot, the AC pleads almost nothing. It alleges that, at some undefined time, Lido sold LDO to a number of unnamed entities *that included Robot*. (*Id.* ¶ 96.)[15] The AC does not plead any agreement or

---

[12] Further confusing Plaintiff's partnership theory, the third-party blog post he cites (AC ¶ 40), states that other entities invested in Lido in December 2020, long *before* any Defendant became involved. *See* Li Yuxuan, *Lido Finance-Decentralized Guardian of ETH2.0*, MINT VENTURES (Aug. 20, 2021), https://mint-ventures.medium.com/lido-finance-decentralized-guardian-of-eth2-0-bbd415060f85. While Paradigm disputes the blog's accuracy, the Court can consider it under the incorporation by reference doctrine. *In re Vaxart, Inc. Sec. Litig.*, 2023 WL 3637093, at *1 (N.D. Cal. May 25, 2023).

[13] To the extent Plaintiff's theory is that Paradigm first started the partnership alone in April 2021, "a one-person partnership . . . cannot exist." *Corrales v. Corrales*, 198 Cal. App. 4th 221, 224 (2011).

[14] Although a partnership agreement need not be in writing, *see* Cal. Corp. Code § 16101(a)(10), it belies common sense that the sophisticated investment firms here would agree to run a business together as co-owners without so much as a written (or even oral) agreement.

[15] Plaintiff's use of the term "strategic partner" (AC ¶¶ 6, 8, 9, 96) does not make Defendants partners in the Lido "partnership." *Azco Biotech, Inc. v. Qiagen, N.V.*, 2015 WL 12516024, at *7 (S.D. Cal.
*(cont'd)*

communications among Defendants. Nor does it plead when the Lido Founders, who formed the purported partnership in 2020, left the partnership or were replaced by Defendants as sole partners.

Taken as a whole, Plaintiff's theory is that four sophisticated competitors formed a partnership without any allegation that they even communicated with each other, much less agreed to run a business as partners. "[T]here can be no such thing as a partnership with a person who . . . does not manifest agreement to engage in a business enterprise with the other person." *In re Marriage of Geraci*, 144 Cal. App. 4th 1278, 1293 (2006). And courts are "disinclined" to find a "*de facto* partnership*" where, as here, the alleged partners affirmatively chose other corporate forms. *In re Hart*, 2014 WL 1018087, at *20 (Bankr. N.D. Cal. Mar. 14, 2014); (AC ¶¶ 6-9 (Paradigm and Robot formed limited partnerships; a16z and Dragonfly formed LLCs)). Plaintiff's ill-defined theory—based on a confusing tangle of allegations—does not plead the existence of a partnership. As a result, his claim against a Lido DAO "partnership" must be dismissed. *See Young Am.'s Found. v. Stenger*, 2023 WL 3559619, at *24 (N.D.N.Y. May 19, 2023) (plaintiff cannot maintain action against purported entity that lacks "legal existence"); *Beautiful Slides, Inc. v. Allen*, 2017 WL 3782304, at *5 (N.D. Cal. Aug. 31, 2017) (dismissing claim that lacked "adequate allegations as to the existence of a partnership").

### B.   Plaintiff Does Not Allege The Sharing Of Profits And Losses Among Partners

"Ordinarily the existence of a partnership is evidenced by the right of the respective parties to participate in the profits and losses and in the management of the business." *Eng*, 21 Cal. App. 5th at 694. Absent an express or implied agreement to share profits and losses, a partnership does not exist. *See Beautiful Slides*, 2017 WL 3782304, at *4 (no partnership where party did not allege "an express agreement to share profits" or facts to support an inference of "an agreement to enter into a contract . . . to share in the profits from the venture"). The AC does not allege that any Defendant agreed to share the profits or losses of Lido's business. Rather, it pleads that Lido collects a fee on its services, and "eventually token holders will vote to distribute the profits amongst themselves." (AC ¶¶ 1, 35.) That is not an agreement among *partners* to share profits and losses; it is speculation that *all token holders* may split certain proceeds in the future (and Plaintiff does not allege they ever voted to do so). The AC alleges no profits the "partners" keep for themselves, as distinct from what the

July 2, 2015) (references to "partnership" did not support the existence of one where there was "no indication that the term . . . was used in its legal sense").

9

thousands of token holders—including Plaintiff—could keep according to their proportionate holdings. Plaintiff's theory thus fails. *Beautiful Slides*, 2017 WL 3782304, at *4.

### C. Plaintiff Does Not Allege Any Agreement Or Right Of Joint Control

Finally, Plaintiff fails to allege that Defendants agreed to jointly manage or control Lido.[16] Notably, the AC does not allege that Paradigm participated in a single Lido governance proposal. Further, Plaintiff alleges Dragonfly *lacked* authority and control due to its comparatively small LDO holdings and sought to purchase more LDO so it could be "more active in governance." (*Id.* ¶ 46.) If Dragonfly were a "partner" in the Lido "partnership," then it would have already had the right of joint control and would not need to increase its managerial power. The AC thus negates a required element of implied partnership. *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1010 (N.D. Cal. 2018) (no joint control where party could "request[] desired features [and] approved changes," but had no "ability to hold [the controlling party] to actually implementing those changes"); *Schaffer Fam. Invs., LLC v. Sonnier*, 120 F. Supp. 3d 1028, 1046-47 (C.D. Cal. 2015) (no joint control where defendant was "not entitled to control" the properties at issue). Plaintiff's claim fails for this reason as well.[17]

### III. CONCLUSION

For the foregoing reasons, the Court should dismiss the AC with prejudice.

Dated:  May 2, 2024                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                                       */s/ Peter B. Morrison*
                                       Peter B. Morrison
                                       *Attorneys for Defendant Paradigm Operations LP*

---

[16] California partnership law is based on the Revised Uniform Partnership Act, the comments to which provide: "To state that partners are co-owners of a business is to state that they *each* have the power of ultimate control." Official Comments, Rev. Unif. P'ship Act § 202 (2023-24 ed.). Plaintiff does not allege that each (or any) Partner Defendant had "the power of ultimate control" over Lido. *Id.*

[17] Even if Lido were a general partnership (it is not), and even if Plaintiff stated a Section 12 claim against that "partnership" (it has not), Paradigm still is not derivatively liable because Section 12 liability "extends only to *the person* who successfully solicits the purchase." *Pinter,* 486 U.S. at 647; *see also Ackerman v. Schwartz*, 947 F.2d 841, 845 (7th Cir. 1991). Unlike Section 11, where Congress expressly extended liability to "*every* person who was a . . . *partner* in the issuer," 15 U.S.C. § 77k(a)(2), the same is not true of Section 12. *See Slack Techs., LLC v. Pirani*, 598 U.S. 759, 770 n.3 (2023) (Sections 11 and 12 "contain distinct language that warrants careful consideration"); *Schneider*, 1990 WL 169856, at *17 (defendant's "status as the Secondary General Partner does not make him, [b]y definition a seller of [the] securities").