Jason Harrow
(Cal. Bar No. 308560)
GERSTEIN HARROW LLP
3243B S. La Cienega Blvd.
Los Angeles, CA 90016
jason@gerstein-harrow.com
(323) 744-5293

Charles Gerstein
(*pro hac vice*)
Emily Gerrick
(*pro hac vice forthcoming*)
GERSTEIN HARROW LLP
1001 G Street NW, Suite 400E
Washington, DC 20001
charlie@gerstein-harrow.com
(202) 670-4809

James Crooks
(*pro hac vice*)
Michael Lieberman
(*pro hac vice*)
FAIRMARK PARTNERS, LLP
1001 G Street NW, Suite 400E
Washington, DC 20001
jamie@fairmarklaw.com
michael@fairmarklaw.com
(619) 507-4182

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREW SAMUELS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LIDO DAO, a general partnership; AH CAPITAL MANAGEMENT, LLC; PARADIGM OPERATIONS LP; DRAGONFLY DIGITAL MANAGEMENT LLC; ROBOT VENTURES LP,<br><br>Defendants. | Case No. 3:23-cv-06492<br><br>**EX PARTE MOTION FOR ENTRY OF DEFAULT AGAINST LIDO DAO OR, IN THE ALTERNATIVE, FOR ALTERNATIVE SERVICE ON LIDO DAO**<br><br>Hearing Date: June 27, 2024<br>Time: 10:00 a.m.<br>Place: Courtroom 4<br>Judge: Hon. Vince Chhabria |

**MOTION FOR ENTRY OF DEFAULT OR FOR ALTERNATIVE SERVICE**

Plaintiff Andrew Samuels hereby gives notice that a hearing on his Ex Parte Motion for Entry of Default Against Lido DAO, or in the Alternative, for Alternative Service On Lido DAO ("Motion") will take place on Thursday, June 27, 2024, at 10:00 a.m. at the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 4. The Motion requests that the Court direct the Clerk to enter a default against Defendant Lido DAO, which was properly served on December 22, 2023 but has not appeared or answered. In the alternative, the Motion requests that the Court order that Plaintiff may serve the summons and complaint on Lido DAO via the alternative methods detailed below; and, because Plaintiff provided Lido DAO the summons and complaint via those methods no later than February 6, 2024, order that Plaintiff effectively served Lido DAO on that date.

## INTRODUCTION

Defendant Lido DAO is a business that profitably manages over $30 billion dollars of customer funds at a time. Lido DAO has dozens of employees, a general counsel on retainer, and $150 million in funding from some of the world's biggest venture capital firms. In this case, Plaintiff alleges that Lido DAO illegally sold unregistered equity shares in its business. Lido DAO's general partners, some of whom are Defendants in this case, argue in their motions to dismiss that no one can be held accountable for Lido DAO's securities law violations. *See* ECF 60, 61, 62, 63. Lido DAO does them one better: it refuses to even show up. The last time a DAO tried this tactic, the crypto industry (including two Defendants here) rallied in support, filing multiple amicus briefs insisting that DAOs categorically cannot be sued or served. Judge Orrick emphatically rejected those arguments, holding that the defendant DAO could be, and had been, served with process. *Commodity Futures Trading Comm'n v. Ooki DAO*, No. 22-cv-05416, 2022 WL 17822445, at *13 (N.D. Cal. Dec. 20, 2022). This case is no different. Plaintiff served Lido DAO in multiple ways, including the method of service Judge Orrick approved in *Ooki DAO* and direct communication with Lido DAO's general counsel (who ignored the outreach). Accordingly, Plaintiff respectfully requests that the Court order the clerk to enter default against Lido DAO or authorize alternative service on Lido DAO and deem it served on February 6, 2024.

**STATEMENT OF ISSUES TO BE DECIDED**

This Motion presents the following issues to be decided by the Court:

1. Whether Plaintiff effected service on Lido DAO—a general partnership governed by certain holders of the crypto asset denominated "LDO"—by delivering the summons and complaint to Lido DAO c/o AH Capital Management, LLC, which is one of Lido DAO's general partners. *See* Cal. Code Civ. Proc. § 416.40.

2. In the alternative, whether Plaintiff may serve Lido DAO, which has no physical office address or designated service agent, through the same methods that other courts in this circuit have authorized for service on similarly situated organizations (e.g., those who have no known physical address or designated service agents)—namely, by (1) posting the summons and complaint on the online governance forum ("Governance Forum") on Lido DAO's website; (2) sending the summons and complaint to Lido DAO's general counsel via email and social media; (3) sending the summons and complaint to several of Lido DAO's major investors and tokenholders; and (4) mailing a copy of the summons and complaint to Lido DAO at an address associated with the entity that operates its user interface. *See* Cal. Corp. Code § 18220; Cal Code Civ. Proc. § 413.30.

**STATEMENT OF FACTS**

1. On December 17, 2023, Plaintiff filed a Complaint against Lido DAO and other defendants, alleging violations of Sections 5 and 12(a)(1) of the Securities Act of 1933. ECF 1. Plaintiff later filed an Amended Complaint against the same defendants and asserting the same claim. *See* Amended Complaint ("AC"), ECF 54.

2. The Amended Complaint alleges that Lido DAO runs a "staking" business on the Ethereum blockchain. AC ¶ 1. The details of that business are explained in the Amended Complaint, *id.* ¶¶ 15–26, but in short, Lido DAO pools users' money, pays third parties to "stake" that money in exchange for financial compensation, and distributes this compensation back to its users after taking a 5% cut for itself. *Id.* ¶ 1; *see also SEC v. Coinbase, Inc.*, No. 23-cv-4738, 2024 WL 1304037, at *26-*29 (S.D.N.Y. Mar. 27, 2024) (describing an identical staking service).

3.  To use this staking service, users typically navigate through a website operated by a Cayman Islands entity, which is accessible at https://lido.fi. The Caymans entity provides an interface allowing customers to interact with the Lido staking service, but the Caymans entity (as it repeatedly states in its legal documentation) does not control Lido DAO. *See* AC ¶¶ 28, 30; *see also* Welcome to lido.fi, https://lido.fi/terms-of-use (last visited May 20, 2024) ("The Interface maintainers do not own, operate or control the blockchain systems, wallets or devices, validator nodes, or the [Lido Smart Contract Systems].").

4.  Lido DAO is organized as a "decentralized autonomous organization," or "DAO." In a DAO, there is no formal corporate structure, no explicit liability protection, and no formalized distinction between, say, managers and directors. Instead, holders of specific tokens—such as the LDO token at issue here—have governance rights that allow them to suggest actions that the DAO will take. Those suggestions are then voted on and implemented if the required number of tokenholders support the actions. Holders of DAO governance tokens thus may participate in the governance of a business and have a potential claim on its profits. In short, a DAO is a business structure in which the people and entities that vote their governance tokens work collaboratively to carry out the DAO's business. *See* AC ¶ 20.

5.  Lido DAO's founders and its institutional investors (including Defendants AH Capital Management, LLC; Paradigm Operations LP; Dragonfly Digital Management LLC; and Robot Ventures LP (collectively, "Partners")), actively work together to run Lido DAO as a business for profit. The Amended Complaint alleges that Lido DAO "is a general partnership governed by large holders of LDO," AC ¶ 5, that Partners are all large holders of LDO who participate in governance, *id.* ¶¶ 6–9, and that Partners are among the general partners of the Lido DAO partnership, *id.*

6.  The Amended Complaint alleges that at least one reason Lido DAO organized itself as a DAO was to try to avoid regulatory scrutiny. As one Lido DAO contributor put it, there was an understanding that Lido could avoid "the potential of SEC enforcement action" because "[t]he Lido DAO is a fully-decentralized organization with no legal entities." *Id.* ¶ 29.

7. By choosing to organize itself as a DAO, Lido DAO has structured its business in a way that has erected significant obstacles to the kinds of service of process that limited-liability entities usually receive. Lido DAO has no headquarters or physical office location; no mailing address; is not registered in any jurisdiction; and does not have a listed president, secretary, treasurer, or agent appointed to accept service. *See* Declaration of Michael Lieberman ("Lieberman Declaration") (attached as Exhibit 1) ¶¶ 3–4.

8. Plaintiff's counsel took extensive steps to attempt to identify an individual authorized to accept service of process on Lido DAO's behalf or a physical location to which a summons and complaint could be mailed. Plaintiff's counsel searched the Lido DAO website and the internet for any information regarding a registered service agent for Lido DAO. Plaintiff's counsel also searched business registration websites for all 50 states, the District of Columbia, and the Cayman Islands for any registration information for Lido DAO and associated identification of authorized agents for service of process. Plaintiff's counsel found none of these things. *See id.* ¶ 4.

9. **Service on Lido DAO Partners.** On December 22, 2023, Plaintiff delivered the summons and Complaint to Lido DAO c/o AH Capital Management, LLC, through the registered service agent for AH Capital Management, LLC. *See* ECF 10.

10. Plaintiff also served the summons and Complaint directly on all Partners. *See* ECF 8, 9, 11, 12. No Partner disputes that it was properly served, and each has appeared and participated in this case.

11. Shortly after Plaintiff served Lido DAO c/o AH Capital Management, LLC, counsel for AH Capital Management, LLC sent correspondence to Plaintiff's counsel. That correspondence stated: "We write to inform you that [AH Capital Management, LLC] rejects any purported service on it or its agents for purposes of serving Lido DAO. [AH Capital Management, LLC] is not authorized to accept service on behalf of Lido DAO and any attempt to serve Lido DAO by means of service on [AH Capital Management, LLC] was and remains without legal effect." *See* Declaration of Jason Harrow ("Harrow Declaration") (Attached as Exhibit 2) at ¶ 5. The

correspondence did not provide any information regarding a method to serve Lido DAO that AH Capital Management, LLC would deem acceptable.

12. **Service on Lido DAO's General Counsel.** On January 9, 2024, counsel for Plaintiff sent an email to Eric Hill, who is the General Counsel of Lido DAO. *See* Harrow Declaration at ¶¶ 3–4. The email informed Mr. Hill of this lawsuit, provided him with a copy of the summons and Complaint, and asked Mr. Hill if he would accept service of a summons and complaint on Lido DAO's behalf. *See id.* ¶ 4. Mr. Hill never responded to the email. *Id.*

13. Three days after Plaintiff filed this lawsuit—which alleges that Lido DAO is a general partnership—Mr. Hill posted on X (formerly Twitter) his view that "There are many gaps in claims that DAOs are partnerships." *See* Lieberman Declaration at ¶ 5. On January 22, 2024, counsel for Plaintiff sent two replies to this message. In these replies, counsel for Plaintiff again notified Mr. Hill of this lawsuit, provided a link to a copy of the summons and Complaint, and asked Mr. Hill if he would accept service of a summons and complaint on Lido DAO's behalf. *See id*. Mr. Hill never responded to the messages. As of the time of this filing, the replies had been viewed 146 and 103 times, respectively. *See id*.

14. **Service by Mail.** On January 12, 2024, counsel for Plaintiff mailed a copy of the summons and Complaint to an address publicly associated with the Caymans entity described above. *See* Harrow Declaration at ¶ 6. While the Caymans entity disavows any control over Lido DAO, the entity's address is, as far as Plaintiff can determine, the only physical address associated with Lido DAO.

15. **Service Through Governance Forum.** Lido DAO maintains a public forum dedicated to the discussion of Lido DAO governance issues (the "Governance Forum"). The forum is accessible at https://research.lido.fi/. LDO tokenholders regularly post on this forum about governance issues related to Lido DAO, and all governance votes are associated with a specific post on the forum. *See* Lieberman Declaration at ¶ 6. On February 6, 2024, counsel for Plaintiff posted on the Governance Forum. The post notifies forum users, among other things, that "Lido DAO…has been named as a Defendant in the lawsuit *Samuels v. Lido DAO*, et al., docketed as

No. 23-cv-6492 in the U.S. District Court for the Northern District of California." The post also provides a URL leading to the summons and Complaint (the forum does not allow the posting of attachments or links). *See* Harrow Declaration at ¶ 7. As of the time Plaintiff's counsel last observed the forum, the post had been viewed 719 times. *See id.*

16. Lido DAO failed to answer or otherwise defend as instructed by the summons and as provided by the Federal Rules of Civil Procedure. *See* Docket for Civil Case No. 3:23-cv-06492.

## **ARGUMENT**

Lido DAO is a profitable business with dozens of employees, a general counsel, $150 million in equity funding, and a market capitalization in the billions. Yet it appears to believe it can avoid service by refusing to designate a service agent and declining to establish a formal headquarters. To the contrary, California law provides multiple ways to serve such a business, and Plaintiff followed that law to serve Lido DAO three times over.

First, a partnership may be served by delivering a copy of the summons and the complaint to a general partner. Cal. Code. Civ. Proc. § 416.40(a). Plaintiff did exactly that, serving the summons and complaint on AH Capital Management, which is a partner in Lido DAO. Because Lido DAO was properly served but has not answered or otherwise responded to the complaint, the Court should order the clerk to enter default against it.

Second, the Court may order that service be made on an unincorporated association (including a partnership) by delivering a copy of the process to a member of the association and mailing a copy to the partnership's last known address. Cal. Corp. Code § 18220. Plaintiff did that too, at least to the extent possible: he delivered the summons and complaint to four partners in the Lido DAO partnership and mailed a copy of the process to an address associated with the entity that operates Lido DAO's user interface.

Third, the Court may direct that the summons be served in any manner "reasonably calculated to give actual notice to the party to be served." Cal. Code Civ. Proc. § 413.30. Plaintiff unquestionably did so: he sent the summons and complaint to Lido DAO's general counsel, posted the summons and complaint on Lido DAO's Governance Forum, served the summons and

complaint on four of Lido DAO's partners, and mailed the summons and complaint to an address associated with the user interface for Lido DAO's business. Accordingly, in the alternative, the court should authorize service by either of these two alternative methods and deem Lido DAO served as of February 6, 2024.

### I. The Court Should Order The Clerk To Enter Default Because Plaintiff Served Lido DAO By Serving One Of Its General Partners.

Plaintiff properly served Lido DAO on December 22, 2023, yet Lido DAO has failed to answer or otherwise defend against the allegations in the Complaint. Accordingly, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, the Court should order the clerk to enter Lido DAO's default.

The Federal Rules of Civil Procedure ("FRCP") and California law make clear that a general partnership may be served by delivering a copy of the summons and of the complaint to a general partner of that partnership. In particular, FRCP 4(h)(1) states that a corporation, partnership, or other unincorporated association must be served in "(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process…." Here, none of the predicates to satisfy FRCP 4(h)(1)(B) exist—*i.e.*, Lido DAO does not have any officer, managing or general agent, or any other agent authorized by appointment or law to receive service of process. Thus, per FRCP 4(h)(1)(A), Plaintiff must serve Lido DAO in a manner prescribed by FRCP 4(e)(1). That provision, in turn, permits service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). And under California law, a partnership may be served "by delivering a copy of the summons and of the complaint … to a general partner … of the partnership." Cal. Code. Civ. Proc. § 416.40(a).

Plaintiff did exactly that. As noted above, and as explained more fully in Plaintiff's Response to Defendants' Motion to Dismiss (ECF No. 64), Lido DAO "is a general partnership

governed by large holders of LDO." AC ¶ 5; *see* Response to Defendants' Motion to Dismiss, ECF 64, at 5-10; *see also Sarcuni v. bZx DAO*, 664 F. Supp. 3d 1100, 1116 (S.D. Cal. 2023) (holding that a DAO with similar characteristics to Lido DAO was a general partnership). Furthermore, AH Capital Management is a general partner in that partnership, as it is a large holder of LDO that has participated in DAO decisionmaking. AC ¶¶ 7, 43; *see* Response to Defendants' Motion to Dismiss, ECF 64, at 19-24. Under federal and California law, then, Plaintiff was permitted to serve Lido DAO by "delivering a copy of the summons and of the complaint" to AH Capital Management. Cal. Code. Civ. Proc. § 416.40(a). He did so on December 22, 2023. ECF 10 (proof of service on Lido DAO made on service agent for AH Capital Management).

To be sure, AH Capital Management purported to "reject[] any purported service on it or its agents for purposes of serving Lido DAO." *See* Harrow Declaration at ¶ 5. AH Capital Management claimed that it "is not authorized to accept service on behalf of Lido DAO." *Id.* But as just explained, a general partner is, by operation of federal and California law, a proper recipient of process on behalf of the general partnership. Cal. Code. Civ. Proc. § 416.40(a). Accordingly, AH Capital Management's "rejection" has no legal effect—if a party could "reject" service properly made under federal and state law, no one could ever effect service on anyone.

Because Lido DAO was served on December 22, 2023, its answer or other responsive pleading was due on or before January 12, 2024.[1] Fed. R. Civ. P. 2(a)(1)(A)(i). Lido DAO, however, has not entered an appearance or otherwise responded to the Complaint. *See* Docket for Civil Case No. 3:23-cv-06492. Under FRCP 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Because Lido DAO has "failed to plead or otherwise defend," the Court should order the clerk to enter Lido DAO's default. *Id.*

---

[1] Plaintiff and the Partners filed a Joint Stipulation extending the time for responding to the Complaint and providing that "No Defendant *who is a party to this stipulation* is required to respond to the complaint previously filed in this Action." ECF 30 at 2 (emphasis added). Lido DAO was not a party to the stipulation. *Id.* at 1.

8
**MOTION FOR ENTRY OF DEFAULT OR FOR ALTERNATIVE SERVICE**

## II. In The Alternative, The Court Should Authorize Alternative Service.

If the Court is unable to presently rule that Lido DAO has been properly served through service on AH Capital Management, Plaintiff respectfully requests that the Court authorize alternative service on Lido DAO and deem it served as of February 6, 2024. This was the course Judge Orrick took in *Commodity Futures Trading Com'n v. Ooki DAO*, 2022 WL 17822445 (N.D. Cal. Dec. 20, 2022), in which he authorized the CFTC to serve a DAO by posting the complaint and summons on a "Chat Box" and "Online Forum" on the DAO's public website. *Id.* at *12. For the reasons Judge Orrick explained in *Ooki DAO*, and for reasons explained below, the Court should authorize alternative service here.

### A. Alternative Methods of Service under California Law

California law provides multiple options for serving unincorporated associations, including partnerships. *See* Cal. Code. Civ. Proc. § 416.40 ("A summons may be served on an unincorporated association (including a partnership) by…"). As noted above, one way to effect service is "by delivering a copy of the summons and of the complaint…to a general partner…of the partnership." *Id.* § 416.40(a). Assuming *arguendo* that this provision in unavailable here, California law permits service in two other ways. First, the "summons may be served on an unincorporated association (including a partnership) by delivering a copy of the summons and of the complaint … [w]hen authorized by Section 18220 of the Corporations Code, as provided by that section." *Id.* § 416.40(c). Under California Corporations Code § 18220, if an unincorporated association does not have a designated agent for service, the court may order "that service be made upon the unincorporated association by delivery of a copy of the process to one or more of the association's members designated in the order and by mailing a copy of the process to the association at its last known address. Service in this manner constitutes personal service upon the unincorporated association." Cal. Corp. Code § 18220.

If § 18220 cannot be satisfied—*e.g.*, if the unincorporated association does not have a "last known address"—then California's "alternative service provision governs." *Ooki DAO*, 2022 WL 17822445, at *10. That provision states: "Where no provision is made in this chapter or other law

for the service of summons, the court in which the action is pending may direct that summons be served in a manner which is reasonably calculated to give actual notice to the party to be served and that proof of such service be made as prescribed by the court." Cal. Code Civ. Proc. § 413.30.

The Court should authorize service under either Cal. Corp. Code § 18220 or Cal. Code Civ. Proc. § 413.30, and should deem service effective under either provision based on the actions Plaintiff has already taken.

### B. California Corporations Code § 18220

California Corporations Code § 18220 authorizes the Court to order that service be made by (1) delivering a copy of the process to a member of the unincorporated association, and (2) mailing a copy of the process to the association at its last known address." Cal. Corp. Code § 18220. With respect to (1), Judge Orrick held in *Ooki DAO* that "Token Holders … are identifiable members who comprise the [DAO] entity," and that service on one such member is constitutionally sufficient as long as the member served "was of sufficient rank and character within the [association] that it is reasonable to infer that service on him effectively apprised the [association] of the pendency of the legal proceeding." *Ooki DAO*, 2022 WL 17822445, at *9 & n.11. Here, Plaintiff delivered a copy of the summons and complaint to several members of Lido DAO—namely, the Partners—all of whom have been publicly identified as substantial investors in Lido DAO, all of whom hold substantial amounts of LDO tokens, and all of whom participate in DAO decisionmaking. AC ¶¶ 5–9, 37–47. The requirement of personal service on a member of the association is therefore satisfied. With respect to (2), it does not appear that the DAO has ever had a known address. *See* Lieberman Declaration ¶¶ 3-4. However, as noted above, the Caymans entity that operates the interface through which customers interact with Lido DAO's business does have an address. *See* Harrow Declaration at ¶ 6. On January 12, 2024, counsel for Plaintiff mailed a copy of the summons and complaint to the Caymans entity at that address. *Id.* Accordingly, if the Caymans entity's address is deemed to be the "last known address" of Lido DAO, then Plaintiff has satisfied the requirements of Cal. Corp. Code § 18220, and the Court should find service effective under that provision.

If, however, that address is not deemed to be the "last known address" of Lido DAO, then there is no way for Plaintiff to satisfy the requirements of Cal. Corp. Code § 18220, as Lido DAO has no known address. *See Ooki DAO*, 2022 WL 17822445, at *9 ("But ultimately, it seems that section 18220 cannot govern service in this case because it only applies when an unincorporated association has an address."). In that case, service would be governed by California's alternative service provision, Cal. Code Civ. Proc. § 413.30.

### C. California Code of Civil Procedure § 413.30

California's alternative service provision allows the Court to "direct that summons be served in a manner which is reasonably calculated to give actual notice to the party to be served and that proof of such service be made as prescribed by the court." Cal. Code Civ. Proc. § 413.30. This standard aligns with constitutional due process, which requires that service be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Ooki DAO*, 2022 WL 17822445, at *10 (quoting *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002)). Neither California law nor due process "require any particular means of service of process, only that the method selected be reasonably calculated to provide notice and an opportunity to respond." *Rio Props.*, 284 F.3d at 1017.

Courts in the Ninth Circuit have regularly upheld service under this provision by whatever means of electronic communication a business organization with no physical address makes available on its website to contact the organization—*e.g.*, via email. *See, e.g., Rio Props.*, 284 F.3d at 1018-19; *Ooki DAO*, 2022 WL 17822445; *Optima Direct, LLC v. Yageo America Corp.*, No. 21-cv-02823, 2021 WL 6051738, at *2-3 (N.D. Cal. Dec. 21, 2021). In *Ooki DAO*, for example, Judge Orrick ruled that the CFTC served the defendant DAO in a manner reasonably calculated to provide notice by posting the summons in a "Help Chat Box" and "an online discussion forum" on the DAO's public website. *Ooki DAO*, 2022 WL 17822445, at *3. Judge Orrick explained that these non-traditional means were appropriate because the DAO "structured its business…in such a way that it can only be contacted via its online website, or perhaps through its social media

accounts," and "has no easily discoverable address." *Id.* at *11. Judge Orrick further noted that "posting on the Chat Box and online Discussion Forum was reasonably calculated to apprise Ooki DAO of this litigation" because the DAO ran its business through governance proposals and votes on the Discussion Forum, making it "highly likely … that Ooki DAO saw a relatively provocative post" on that forum. *Id.* at *11.

Plaintiff has likewise taken steps "reasonably calculated to give actual notice" to Lido DAO—and, indeed, has taken several more steps than the CFTC did in *Ooki DAO*. First, Plaintiff followed the CFTC's lead and posted the summons and complaint on Lido DAO's Governance Forum. *See* Harrow Declaration at ¶ 7. Like Ooki DAO's Discussion Forum, Lido DAO's Governance Forum is dedicated to the discussion of governance issues, including governance proposals and other discussions about Lido DAO's operations. *See* Lieberman Declaration at ¶ 6. And as was true with Ooki, governance votes are "prompted by and directly acknowledge the [Governance Forum]." *Ooki DAO*, 2022 WL 17822445, at *11. It is thus clear that "at least some Token Holders are directly informed about what occurs in the [Governance] Forum." *Ooki DAO*, 2022 WL 17822445, at *11; *see also* Lieberman Declaration at ¶ 6. Accordingly, "posting notice of this litigation in [the Governance Forum] … is reasonably calculated to notify *at least some* Token Holders of the ongoing litigation." *Ooki DAO*, 2022 WL 17822445, at *11 (emphasis added). Indeed, "[p]osting in an online forum on the defendant's own website, at least under the facts of this specific case, seems even more likely to apprise the defendant of the ongoing litigation than would service by publication in the newspaper, which is a traditionally accepted—if last resort—method for service of process." *Id.* Sure enough, the Governance Forum reflects that Plaintiff's post with the summons and complaint has been viewed 719 times. *See* Harrow Declaration at ¶ 7.

Second, Plaintiff sent the summons and complaint to Eric Hill, Lido DAO's general counsel, via email and social media. *See id.* at ¶¶ 3–4; Lieberman Declaration at ¶ 5. Sending the summons and complaint to an entity's general counsel is "reasonably calculated" to give notice to the entity. *See, e.g.*, *Mediterranea Trading Co., LLC v. Armani*, No. 19-cv-24996, 2021 WL

9958572, at *1 (S.D. Fla. Mar. 5, 2021) ("Service by e-mailing copies of the summons and complaint to Defendant's general counsel is permissible in this case."); *Troll Busters LLC v. Roche Diagnostics GmbH*, No. 11-cv-56, 2011 WL 3859721, at *9 (S.D. Cal. Aug. 31, 2011) ("[I]t is reasonable to conclude service of process upon [an entity's general counsel] was reasonably calculated to provide notice to [a related entity]."). As Lido DAO's general counsel, Mr. Hill "would have known what to do with the summons and complaint." *Troll Busters*, 2011 WL 3853721, at *9. Indeed, as one would expect with a General Counsel, Mr. Hill's stated responsibilities include "[a]dvis[ing] on approaches to meet our short and long-term objectives in the case of a dispute" and "[a]dvis[ing] generally on legal and business pitfalls," Harrow Decl. ¶ 3, which plainly encompass advising on litigation against the DAO.

Third, as noted above, Plaintiff served the summons and complaint on multiple tokenholders and investors in Lido DAO, *i.e.*, all Partners. Even if service on those entities did not independently constitute service on Lido DAO under Cal. Code. Civ. Proc. § 416.40(a), *but see supra* Part I, serving the DAO's major tokenholders and investors—who together invested $150 million in the DAO and acquired at least 100 million LDO tokens and the associated governance rights, AC ¶ 38—surely is "reasonably calculated to give actual notice" to Lido DAO. Cal. Code Civ. Proc. § 413.30.

In sum, Plaintiff provided the summons and complaint to Lido DAO through the same method Judge Orrick approved in *Ooki DAO*, and then went beyond that method by also providing the summons and complaint to Lido DAO's general counsel and several of its major investors and tokenholders. Any one of those methods—and certainly all three together—was "reasonably calculated to give actual notice" to Lido DAO. Cal. Code Civ. Proc. § 413.30.

## **CONCLUSION**

For the foregoing reasons, Plaintiff requests that the Court order the clerk to enter default against Lido DAO. In the alternative, Plaintiff requests that the Court authorize service of process on Lido DAO through posting a copy of the summons and complaint on Lido DAO's Governance Forum, sending a copy of the summons and complaint to Lido DAO's general counsel via email

and social media, serving a copy of the summons and complaint on the Partners, and mailing a copy of the summons and complaint to an address associated with the entity that operates Lido DAO's user interface; and, because Plaintiff completed all of these steps on February 6, 2024, rule that Plaintiff effectively served Lido DAO on that date.

Respectfully submitted,

*/s/ Jason Harrow*
Jason Harrow
(Cal. Bar No. 308560)
GERSTEIN HARROW LLP
3243B S. La Cienega Blvd.
Los Angeles, CA 90016
jason@gerstein-harrow.com
(323) 744-5293

*/s/ Charles Gerstein*
Charles Gerstein
(*pro hac vice*)
Emily Gerrick
(*pro hac vice forthcoming*)
GERSTEIN HARROW LLP
810 7th Street NE, Suite 301
Washington, DC 20002
charlie@gerstein-harrow.com
(202) 670-4809

*/s/ James Crooks*
James Crooks
(*pro hac vice*)
Michael Lieberman
(*pro hac vice*)
FAIRMARK PARTNERS, LLP
1825 7th Street NW, #821
Washington, DC 20001
jamie@fairmarklaw.com
michael@fairmarklaw.com
(619) 507-4182

*Attorneys for Plaintiff*