1    PETER B. MORRISON (SBN 230148)
     peter.morrison@skadden.com
2    ZACHARY FAIGEN (SBN 294716)
     zack.faigen@skadden.com
3    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
     300 South Grand Avenue, Suite 3400
4    Los Angeles, California 90071-3144
     Telephone:   (213) 687-5000
5    Facsimile:    (213) 687-5600

6    ALEXANDER C. DRYLEWSKI (*pro hac vice*)
     alexander.drylewski@skadden.com
7    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
     One Manhattan West
8    New York, New York 10001-8602
     Telephone:   (212) 735-3000
9    Facsimile:    (212) 735-2000

10   *Attorneys for Defendant*
     *Paradigm Operations LP*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ANDREW SAMUELS, on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>LIDO DAO; AH CAPITAL MANAGEMENT, LLC; PARADIGM OPERATIONS LP; DRAGONFLY DIGITAL MANAGEMENT LLC; ROBOT VENTURES LP,<br><br>                Defendants. | Case No. 3:23-cv-06492-VC<br><br>**DEFENDANT PARADIGM OPERATIONS LP'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Hearing Date:    June 27, 2024<br>Time:              10:00 a.m.<br>Place:             Courtroom 4<br>Judge:            Hon. Vince Chhabria |

**TABLE OF CONTENTS**

Page

I. PLAINTIFF CONCEDES THAT PARADIGM DID NOT VIOLATE SECTION 12 ................................................................................................2

II. PLAINTIFF FAILS TO PLEAD THE EXISTENCE OF A LIDO PARTNERSHIP ..........................................................................................2

    A. Plaintiff's Partnership Theory Is Vague and Ever-Shifting ..........................2

    B. Plaintiff Fails to Plead the Essential Elements of a Partnership ..................3

III. PLAINTIFF FAILS TO PLEAD SOLICITATION OF HIS LDO PURCHASES ...............................................................................................5

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Brennan v. Brennan Associates*,
  No. X10NNHCV054015873S(CLD),
  2006 WL 1230089 (Conn. Super. Ct. Apr. 19, 2006) (unpublished table decision) .............. 4

*CFTC v. Ooki DAO*,
  No. 3:22-cv-05416-WHO,
  2022 WL 17822445 (N.D. Cal. Dec. 20, 2022) ...................................................................... 3

*Deeney v. Hotel & Office Employees' Union Local No. 283*,
  57 Cal. App. 2d Supp. 1023 (1943) ................................................................................. 4, 5

*In re Genius Brands International, Inc. Securities Litigation*,
  97 F.4th 1171 (9th Cir. 2024) .............................................................................................. 5

*Mahler v. BAGS, Inc.*,
  829 N.E.2d 1274 (Ohio Ct. App. 2005) .............................................................................. 4

*Pinter v. Dahl*,
  486 U.S. 622 (1988) ......................................................................................................... 5, 6

*Risley v. Universal Navigation Inc.*,
  No. 22 Civ. 2780,
  2023 WL 5609200 (S.D.N.Y. Aug. 29, 2023)
  *appeal filed*, No. 23-01340 (2d Cir. Sept. 28, 2023) ........................................................ 2, 6

*Rivlin v. Levine*,
  195 Cal. App. 2d 13 (1961) ....................................................................................... 1, 3, 4, 5

*Sarcuni v. bZx DAO*,
  664 F. Supp. 3d 1100 (S.D. Cal. 2023) ............................................................................... 3

*In re Schick*,
  235 B.R. 318 (Bankr. S.D.N.Y. 1999) ................................................................................ 4

*Solomont v. Polk Development Co.*,
  245 Cal. App. 2d 488 (1966) .......................................................................................... 4, 5

*Vestar Development II, LLC v. General Dynamics Corp.*,
  249 F.3d 958 (9th Cir. 2001) .............................................................................................. 5

*Wildes v. BitConnect International PLC*,
  25 F.4th 1341 (11th Cir. 2022) .......................................................................................... 5

**STATUTES**

Cal. Corp. Code § 16401(i) ................................................................................................... 1, 3

**OTHER AUTHORITIES**

Christine Hurt & D. Gordon Smith, *Bromberg & Ribstein On Partnership* § 6.03(D)
    (3d ed. 2024) ........................................................................................................... 4

*Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934:
    The DAO*, July 25, 2017 ........................................................................................ 4

Plaintiffs' Opposition marks a hasty retreat from the AC.[1] Despite alleging that all five Defendants—including Paradigm—are statutory sellers because they "sold LDO tokens to Plaintiff" (AC ¶ 137), the Opposition now *expressly abandons* these allegations as to Paradigm. (Opp. 5.) Plaintiff pretends he never asserted such a claim against Paradigm (*id.*), but the AC itself belies such pretense. (AC ¶¶ 137-38, 141; at p.32.) Regardless, because Plaintiff now concedes that Paradigm did not violate Section 12, the Court should dismiss his claim against Paradigm with prejudice.

The Court should equally reject Plaintiff's attempt to backdoor his Section 12 claim. Plaintiff seeks to allege that all Defendants formed a purported "partnership," and that each Defendant is liable derivatively as a partner for violations the "partnership" committed. This fails because Plaintiff does not plead the existence of any partnership, despite having the burden to do so. Instead, the Opposition posits several differing (and inconsistent) theories of what the partnership *might* be—all LDO holders, or all voting LDO holders, or some "large" LDO holders—and then leaves it to the Court and Defendants to guess. But none of these theories passes muster under California law, which holds that a "person may become a partner *only* with the consent of *all* the partners." Cal. Corp. Code § 16401(i); *Rivlin v. Levine*, 195 Cal.App.2d 13, 21 (1961). The AC fails to allege this unanimous consent among the so-called "Partner Defendants." Worse still, the Opposition now asserts that there are an untold number of additional, unidentified "partners" out there somewhere (Opp. 7-8), but does not even attempt to assert that any of these so-called partners—much less *all* of them—unanimously consented to co-own a business together, share its profits and losses, or exercise joint control. *Rivlin*, 195 Cal.App.2d at 21 ("[T]rue partnership is a relation of personal confidence and is a select closed group. Its memberships are *never* indiscriminately offered at random to the public at large."). Plaintiff's reliance on non-binding decisions (Opp. 5-6), which are contrary to California law and do not address partnership law or the unanimous consent requirement, does not save his claim.

Finally, in an implicit concession that he cannot defend the legal merit of his case, Plaintiff erects a strawman. He claims that Defendants believe "neither the DAO nor anyone else must answer for the DAO's conduct, and they all can go on issuing, promoting, and selling securities . . . in flagrant violation of U.S. law." (Opp. 2, 4.) No one claims anything of the sort. The issue is that Plaintiff

---

[1] Capitalized terms have the same meaning as in Paradigm's opening brief ("MTD" or "Motion"). *All emphases are added* and internal citations are omitted from quoted material, unless otherwise stated.

failed to plead that Paradigm sold or solicited his purchase of LDO, or that Paradigm is a partner of a partnership that did so. Plaintiff admits he made a *choice* about whom to sue (and *not* sue) (*id.* 8), and because of that choice, he is seeking to hold Paradigm liable for his LDO purchases despite not alleging that Paradigm created, sold or solicited the sale of any LDO, voted on any Lido governance, or had any contact with Plaintiff at all. These failures mandate dismissal, and Plaintiff's misleading policy arguments cannot justify contorting the law in his favor. *See Risley v. Universal Navigation Inc.*, 2023 WL 5609200, at *11 (S.D.N.Y. Aug. 29, 2023) (rejecting attempt to hold defendants liable for acts of non-defendants because doing so would impermissibly "stretch the federal securities laws" and "Plaintiffs' concerns are better addressed to Congress than to this Court").[2]

## I.  PLAINTIFF CONCEDES THAT PARADIGM DID NOT VIOLATE SECTION 12

Plaintiff now expressly disavows any allegation that Paradigm violated Section 12. (Opp. 5, 10-11, 23.) While Plaintiff's position contradicts what he pled (AC at 32, ¶¶ 137-42), his concession that Paradigm did not "commit[] the [sole] statutory violation" alleged in the AC is dispositive. (Opp. 23.) The Court should dismiss the AC as against Paradigm with prejudice on this basis alone.

## II.  PLAINTIFF FAILS TO PLEAD THE EXISTENCE OF A LIDO PARTNERSHIP

Despite conceding that Paradigm did not violate Section 12, Plaintiff insists he can maintain a Section 12 claim against Paradigm because it is a partner in the "Lido partnership" and thus "jointly and severally liable for partnership debts." (Opp. 5.) But Plaintiff does not cite a single case allowing a securities claim to proceed against a party whom Plaintiff *admits* did not violate the securities laws (MTD 10 n.17), and he fails to plead the existence of a partnership to support his theory, in any event.

### A.  Plaintiff's Partnership Theory Is Vague and Ever-Shifting

The Opposition argues that the Lido partnership includes "any person who holds LDO tokens" and/or all "on-chain holders of LDO tokens." (Opp. 5, 7, 21.) This is not what was pled. The AC does not even reference "on-chain" LDO holders. Rather, it contains a section titled: "Lido DAO Is Formed with Partner Defendants as General Partners." (AC at 11.) It never identifies a single partner other than the "Partner Defendants." And while the AC pleads that Lido is "governed by *large holders* of

---

[2] Plaintiff also asserts that Defendants "do not dispute" whether LDO tokens are "securities" and whether "Lido DAO" violated the law. (*E.g.*, Opp. 1, 4.) Wrong; they do. (*See* MTD 2 n.2.)

LDO" (AC ¶ 5), it never specifies who the "large holders" are or what that means.[3] The best clue is the AC's class definition: Plaintiff seeks to represent all LDO purchasers *except Defendants* (and their officers, directors or related entities). He does not exclude the Lido Founders or any other LDO holder from the class. The only inference is that the "Partner Defendants" are the only alleged partners.[4]

Despite what he pled, Plaintiff now says "[c]ourts and agencies have adopted three approaches to the question of who is a partner in a DAO partnership," and thus, the Court can take its pick because "Defendants are partners under any of them and Plaintiff is not." (Opp. 19.) Plaintiff is incorrect. First, in *Sarcuni v. bZx DAO*, the court let a non-securities claim proceed on the theory that "anyone holding a BZRX token is a partner." 664 F.Supp.3d 1100, 1118 (S.D. Cal. 2023). Applied here, Plaintiff would be a partner, which he denies. (Opp. 19.) Second, in *CFTC v. Ooki DAO*, the court authorized alternative service on an unincorporated association—not a partnership—alleged to consist of all token holders who voted their tokens. 2022 WL 17822445, at *2 (N.D. Cal. Dec. 20, 2022). But Plaintiff does not allege that Paradigm voted its LDO tokens and thus it is not a partner under that theory.[5] Lastly, Plaintiff concedes that *Houghton v. Leshner* did "not directly address[] whether defendants were partners." (Opp. 20.) Accordingly, none of these cases helps Plaintiff here.

### B. Plaintiff Fails to Plead the Essential Elements of a Partnership

Regardless of his working theory, Plaintiff fails to plead a partnership. Under California law (and in all other states adopting the Revised Uniform Partnership Act ("RUPA")), a "person may become a partner *only* with the consent of *all* the partners." Cal. Corp. Code § 16401(i). As *Rivlin* explains, bona fide partnerships confer "the right of *delectus personarum*, the right to determine membership. No partner is admitted without *unanimous approval* of every other partner." 195

---

[3] In a contradiction, the AC pleads the "DAO's governance is controlled by Defendants here and their collaborators" (apparently, the Lido Founders). (*Id.*) But it never alleges the Founders are partners.

[4] The distinction between "on-chain" holders and those who hold tokens in an account on a platform like Gemini does not make sense. A person can move tokens in and out of a Gemini account any time. Plaintiff offers no explanation for how a partnership, which as a matter of statute requires the consent of all partners to admit a new partner, Cal. Corp. Code § 16401(i), could be in a constant state of turnover based solely on where a token holder decides to hold tokens at any given moment.

[5] Plaintiff "does not plead specific votes" by Paradigm, but asks the Court to *infer* Paradigm voted its tokens because (i) it held tokens and (ii) third parties made statements about Paradigm's DeFi expertise. (Opp. 20-21.) But protocol votes are public. In *Houghton v. Leshner*, which Plaintiff cites and his lawyers filed, plaintiffs pled specific votes by defendants from public records. (Case No. 3:22-cv-07781-WHO, Dkt 76 ¶¶ 8-14.) The reason Plaintiff does not plead any votes by Paradigm here is that Paradigm did *not* vote. The Court should not infer a fact Plaintiff did not and cannot allege.

3

Cal.App.2d at 21; *Deeney v. Hotel & Office Emps.' Union*, 57 Cal.App.2d Supp. 1023, 1027 (1943); *Solomont v. Polk Dev. Co.*, 245 Cal.App.2d 488, 497 (1966). That right is crucial—and courts strictly construe it—because all new partners can "create partnership liabilities," "share equally in profits," and dilute other partners' interests. Christine Hurt & D. Gordon Smith, *Bromberg & Ribstein On P'ship* § 6.03(D) (3d ed. 2024).[6] Indeed, this case highlights that importance: Plaintiff ultimately seeks to hold Paradigm liable for the acts and statements of unaffiliated and unidentified "partners."

Fatally, the AC does not allege any communication at all—let alone mutual consent—among any "Partner Defendants." (MTD 7-8.) While Plaintiff now says the partnership consists of additional, unidentified "partners," none of them is alleged to have consented to anything. Undeterred, Plaintiff argues that Lido's Founders "necessarily consented to governance by *any person* who holds LDO tokens." (Opp. 21.) That assertion not only assumes its own conclusion (that simply owning tokens makes one a partner), but the AC contains no allegation that selling tokens "to venture capitalists to fund its operations" (AC ¶ 38) was consent by the Founders (or investors) to be admitted as partners. And even if the four Founders somehow consented to thousands of unknown LDO holders becoming partners, that does not equate to *all* partners mutually consenting to *each* new partner joining.

Plaintiff argues that "there is no requirement, and Partners point to no authority on this point, that all consent be individualized as to incoming and receiving partners." (Opp. 21.) Wrong. As *Rivlin* explained, a "partnership is a relation of personal confidence and is a select closed group. Its memberships are *never* indiscriminately offered at random to the public at large." 195 Cal.App.2d at 21. California law draws a stark line of distinction between "a select closed group" of partners on the one hand, and situations "where there is no element of mutual selection"—as in "a sale of securities to persons indiscriminately selected and having no bond of union other than the fact that they had money and the gambling instinct" (which is just what Plaintiff alleges here). *Id.* at 23; *see also Deeney*, 57 Cal.App.2d Supp. at 1027 (no partnership because "[i]t is well known that the membership of labor unions in many instances runs into the thousands; their members are widely scattered and have not the facilities and opportunities for daily collaboration"); *cf. Report of Investigation Pursuant*

---

[6] *See, e.g.*, *In re Schick*, 235 B.R. 318, 324 (Bankr. S.D.N.Y. 1999); *Brennan v. Brennan Assocs.*, 2006 WL 1230089, at *4 (Conn. Super. Ct. Apr. 19, 2006); *Mahler v. BAGS, Inc.*, 829 N.E.2d 1274, 1280 (Ohio Ct. App. 2005).

*to Section 21(a) of the Securities Exchange Act of 1934: The DAO*, July 25, 2017, https://www.sec.gov/litigation/investreport/34-81207.pdf, at 14 (a DAO with "thousands of individuals and/or entities that traded DAO Tokens" is "an arrangement that bears little resemblance to that of a genuine general partnership").

Plaintiff does not even mention this authority. Instead, he points to *Sarcuni* (Opp. 21)—a non-binding decision that did not address the unanimous consent requirement of Cal. Corp. Code § 16401(i), RUPA, or longstanding California law. Indeed, the word "consent" does not appear in the opinion. It thus cannot offer guidance on this "indispensable" element. *Deeney*, 57 Cal.App.2d Supp. at 1027.[7] Even if *Sarcuni* had addressed the issue, this Court is bound to follow California appellate precedent on California law. *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) ("[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts."). Plaintiff's theory contravenes California authority; thus, the Court should reject it. *Rivlin*, 195 Cal.App.2d at 21; *Deeney*, 57 Cal.App.2d Supp. at 1027; *Solomont*, 245 Cal.App.2d at 497.

Finally, Plaintiff also fails to plead the sharing of profits and losses or joint control. (MTD 9-10.) At most, Plaintiff speculates that *all* LDO holders—not just partners—*could* someday share profits (Opp. 7), but this falls short of what is required (MTD 9). Plaintiff also does not plead, as he must, that *each* Lido partner has "ultimate" control over the "partnership." (*Id.* 10.)

## III.     PLAINTIFF FAILS TO PLEAD SOLICITATION OF HIS LDO PURCHASES

Plaintiff also fails to plead the successful solicitation of his purchases. To start, he argues that he "need *not* allege statements expressly urging or persuading buyers to purchase LDO tokens." (Opp. 16.) Yes, he does. As the Ninth Circuit reiterated this year, a "person solicits the sale of a security where she petitions, entices, lures or urges another to purchase a security." *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1182 (9th Cir. 2024); *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341, 1346 (11th Cir. 2022) ("[A] person must urge or persuade another to buy a *particular security*.") (cited by *Genius Brands*). Plaintiff mischaracterizes *Pinter*, claiming that solicitation includes "all conduct directed at producing the sale." (Opp. 11.) It does not. *Pinter* holds that

---

[7] Plaintiff also relies on *Ooki DAO* but that case involved a motion for alternative service on an unincorporated association that did not appear. It did not address Cal. Corp. Code § 16401(i).

solicitation "is the first stage of a traditional securities sale to involve the buyer, and it is directed at producing the sale." 486 U.S. 622, 646 (1988). It does not say that *all conduct* directed at producing a sale is "solicitation." In fact, it rejected the "substantial factor" test that would encompass "many who are participants in the activities leading up to the sale." *Id.* at 650 & n.26.[8]

Regardless, Plaintiff cannot plead that "Lido" solicited his purchase of LDO because he does not allege he ever saw—or was even aware of—any of the alleged soliciting statements. (MTD 6.) Plaintiff mischaracterizes this argument as seeking to graft a "reliance" element onto Section 12. (Opp. 17-19.) The issue is not reliance; it is whether Plaintiff was successfully solicited in the first place, as *Pinter* requires. Plaintiff's own analogy makes the point: "If a defendant urges a neighbor to buy a security, and mentions it to no one else, he likely solicited only his neighbor." (*Id.* 18.) In other words, only those who are actually urged to buy a security are solicited. Those who are *not* urged to buy are *not* solicited. Because Plaintiff does not plead he was aware of any of the solicitations, he is not the neighbor; he is everyone else who was *not* solicited. Contrary to Plaintiff's claim (Opp. 11-12, 14, 18), *Pino* did not hold that a party may be "successfully solicited" by a statement they never saw. Nor could it, as doing so would overrule *Pinter*. It would also lead to the absurd result that anyone purchasing a security has standing to sue—and seek rescission from—anyone who made a solicitating statement, even if the purchaser had no inkling it was ever made. That is not the law. (MTD 6 & n.9.)[9]

Finally, Plaintiff fails to plead "Lido's" financial interest in his purchase. (MTD 6-7.) While he argues that Lido wanted LDO to be listed on platforms so that Lido could sell its tokens (Opp. 17), this fails. First, the financial interest must be in "the sale" at issue. *Pinter*, 486 U.S. at 654. Plaintiff does not allege that Lido had any interest in *his purchase* of 132 LDO tokens from an unnamed seller. Second, if Plaintiff is arguing that Lido's interest was in seeing the price of LDO increase, courts have rejected this argument, *Risley*, 2023 WL 5609200, at *19, and Plaintiff cites nothing in support.

Dated: June 6, 2024               SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                                  */s/ Peter B. Morrison*
                                  Peter B. Morrison

---

[8] The cases Plaintiff cites (Opp. 12) say nothing different. Per Plaintiff's own description, those cases involve social media promotions, a White Paper, a registration statement, and an initial coin offering—all communications that may urge people to purchase a particular alleged security. (*Id.*)

[9] A solicitation is not "successful" just because a sale occurs. (Opp. 18.) That would render *Pinter*'s "successful solicitation" language surplusage. Plaintiff's neighbor analogy again shows why.