**BROWN RUDNICK LLP**
Samuel A. Moniz (SBN: 313274)
smoniz@brownrudnick.com
2211 Michelson Drive
Seventh Floor
Irvine, CA 92612
Telephone:    (949) 752-7100
Facsimile:    (949) 252-1514

STEPHEN D. PALLEY (*pro hac vice* forthcoming)
spalley@brownrudnick.com
601 13th St NW #600
Washington, DC 20005
Telephone:    (202) 536-1766
Facsimile:    (202) 536-1701

SIGMUND S. WISSNER-GROSS (*pro hac vice* forthcoming)
swissner-gross@brownrudnick.com
JESSICA N. MEYERS (*pro hac vice* forthcoming)
jmeyers@brownrudnick.com
7 Times Square
New York, NY 10036
Telephone:    (212) 209-4800
Facsimile:    (212) 209-4801

**METALEX PRO, LLP**
ALEX GOLUBITSKY (SBN: 289236)
ag@agolubitsky.com
3013 Libby Ter
Richmond, VA 23223
Telephone: (206) 602-6045
Facsimile: (866) 301-2038

*Attorneys for Dolphin CL, LLC*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREW SAMUELS, on behalf of himself and all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>LIDO DAO; AH CAPITAL MANAGEMENT, LLC; PARADIGM OPERATIONS LP; DRAGONFLY DIGITAL MANAGEMENT LLC; ROBOT VENTURES LP<br><br>Defendants. | CASE NO. 3:23-CV-06492-VC<br><br>**DOLPHIN CL, LLC'S MOTION TO DISMISS PLAINTIFF ANDREW SAMUELS'S AMENDED COMPLAINT AS TO "LIDO DAO"** |

**NOTICE OF MOTION AND MOTION TO DISMISS TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 15, 2024 at 10:00 a.m. in Courtroom 4 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Dolphin CL, LLC ("Dolphin"), making a limited appearance for Defendant Lido DAO, will and hereby does move for an order dismissing Plaintiff Andrew Samuels' Amended Class Action Complaint ("AC") (ECF No. 54) as to Defendant Lido DAO.

This motion is made pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6) an dis based on Dolphin's Notice of Motion, Memorandum and Points and Authorities, and Request for Judicial Notice, as well as the motions to dismiss filed by Defendants AH Capital Management, LLC, Paradigm Operations LP, Dragonfly Digital Management LLC, and Robot Ventures LP, the pleadings and papers on file in this action, the arguments of counsel, and any other matter that the Court may properly consider.

DATED: July 11, 2024

**BROWN RUDNICK LLP**

By: */s/ Samuel A. Moniz*
        BROWN RUDNICK LLP
        Samuel A. Moniz (SBN: 313274)
        2211 Michelson Drive
        Seventh Floor
        Irvine, CA 92612
        Telephone:     (949) 752-7100
        Facsimile:     (949) 252-1514
        Email: smoniz@brownrudnick.com

        Stephen D. Palley (*pro hac vice* forthcoming)
        601 13th St NW #600
        Washington, DC 20005
        Telephone:     (202) 536-1766
        Email: spalley@brownrudnick.com

        Sigmund S. Wissner-Gross (*pro hac* vice forthcoming)
        Jessica N. Meyers (*pro hac* vice forthcoming)
        7 Times Square
        New York, NY 10036

Telephone:     (212) 209-4800
Email: swissner-gross@brownrudnick.com
        jmeyers@brownrudnick.com


METALEX PRO, LLP
ALEX GOLUBITSKY (SBN: 289236)
3013 Libby Ter
Richmond, VA 23223
Telephone: (206) 602-6045
Email: ag@agolubitsky.com


*Attorneys for Dolphin CL, LLC*

## <u>TABLE OF CONTENTS</u>

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.   STATEMENT OF ISSUES ............................................................................................... 2

II.  PRELIMINARY STATEMENT ........................................................................................ 2

III. RELEVANT STATUTORY BACKGROUND .................................................................. 3

ARGUMENT ............................................................................................................................ 8

    a.  This Court lacks Subject Matter Jurisdiction over any Claim Against Lido DAO under FRCP 12(b)(1). .................................................................................................................. 8

    b.  This Court Cannot Exercise Personal Jurisdiction over Lido DAO ................................ 12

    c.  Plaintiff Has Failed to State a Cause of Action Under Section 12(a)(1) of the Securities Act Against Lido DAO ............................................................................................................... 15

CONCLUSION ....................................................................................................................... 15

DOLPHIN CL, LLC'S MOTION TO DISMISS AMENDED COMPLAINT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Banks.com, Inc. v. Keery*,
    No. C 09-06039 WHA, 2010 U.S. Dist. LEXIS 17850 (N.D. Cal. Mar. 1, 2010) ............... 1, 8

*Beserra v. Allied Ins.*,
    No. CV 14–3325 DSF, 2014 WL 12610192 (C.D. Cal. June 6, 2014) ................................. 11

*DFSB Kollective Co. Ltd. v. Bourne*,
    897 F. Supp. 2d 871 (N.D. Cal. 2012) ............................................................................. 13, 14

*Direct Mail Specialists, Inc. v. Eclat Computerized Tech.* 840 F.2d 685, 688 (9th
    Cir. 1988) ................................................................................................................................. 14

*Doe v. Am. Nat'l Red Cross*,
    112 F.3d 1048 (9th Cir. 1997) ................................................................................................ 13

*Edmunds v. Asurion, LLC*,
    No. 22-cv-60361-CIV, 2024 WL 620932 (S.D. Fla. Feb. 14, 2024) ..................................... 12

*Florists' Mut. Ins. Co. v. Floricultura Pac., Inc.*,
    No. 19-cv-05793-WHO, 2020 U.S. Dist. LEXIS 208543 (N.D. Cal. Apr. 3,
    2020) ........................................................................................................................................ 11

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
    284 F.3d 1114 (9th Cir. 2002) ................................................................................................ 12

*Hong-Ming Lu v. Primax Wheel Corp.*,
    No. C 04–4170 JSW, 2005 WL 807048 (N.D. Cal. Apr. 7, 2005) ........................................... 3

*In re iPhone Application Litig.*,
    844 F.Supp.2d 1040 (N.D. Cal. 2012) ..................................................................................... 3

*McCulley v. City of Tucson*,
    No. CV 08-07-TUC-DCB (JM), 2010 U.S. Dist. LEXIS 149981 (D. Ariz. Mar.
    29, 2010) .................................................................................................................................... 8

*McNutt v. Gen. Motors Acceptance Corp. of Indiana*,
    298 U.S. 178 (1939) ............................................................................................................... 12

*Mocha Mill, Inc. v. Port of Mokha, Inc.*,
    No. 18-cv-02539-HSG, 2019 U.S. Dist. LEXIS 35218 (N.D. Cal. Mar. 5, 2019) ............ 8, 12

*Myers v. Bennett Law Offices*,
    238 F.3d 1068 (9th Cir. 2001) ................................................................................................ 14

*Nat'l Grange of the Order of Patrons of Husbandry v. Cal. Guild,*
    334 F. Supp. 3d 1057 (E.D. Cal. 2018) ................................................................. 8

*Omeluk v. Langsten Slip & Batbyggeri A/S,*
    52 F.3d 267 (9th Cir. 1995) .............................................................................. 12

*Rodenhurst v. Bank of Am.,*
    No. 10-00167 LEK, 2011 WL 4625696 (D. Haw. Sept. 30, 2011) ...................... 11

*Rogers v. S. Guar. Ins. Co.,*
    No. 1:08-CV-3204-MHS, 2009 WL 10670650 (N.D. Ga. Jan. 29, 2009) ............ 11

*Safe Air for Everyone v. Meyer,*
    373 F.3d 1035 (9th Cir. 2004) ............................................................................ 3

*Sarcuni v. bZx DAO,*
    664 F. Supp. 3d 1100 (S.D. Cal. 2023) ................................................................ 8

*Schell v. Nat'l Flood Insurers Ass'n,*
    520 F. Supp. 150 (D. Colo. 1981) ..................................................................... 14

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2004) ............................................................................ 12

*Sevits v. McKiernan-Terry Corp. (N.J.),*
    264 F. Supp. 810 (S.D.N.Y. 1966) ................................................................... 14

*Taylor v. Piggly Wiggly of Bay Minette,*
    No. 20-cv-07956-VKD, 2012 WL 3555576 (S.D. Ala. Aug. 16, 2012) .............. 12

*Universal Trading & Inv. Co. v. Dugsbery, Inc.,*
    No. C 08-03632 CRB, 2009 WL 10695077 (N.D. Cal. Jan. 16, 2009) .............. 14

*Warren v. Fox Family Worldwide, Inc.,*
    328 F.3d 1136 (9th Cir. 2003) ............................................................................ 3

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
    433 F.3d 1199 (9th Cir. 2006) .......................................................................... 12

**California Cases**

*Auditorium Co. v. Barsotti,*
    40 Cal. App. 592 (1919) ..................................................................................... 9

*Bustamante v. Intuit, Inc.,*
    141 Cal. App. 4th 199 (2006) ........................................................................... 10

*Castaneda v. Garden Grove Police Dep't,*
    No. C 04–4170 JSW, 2022 WL 3137926 (June 27, 2022) .................................... 3

*Eng v. Brown*,
    21 Cal. App. 5th 675 (2018) ............................................................................. 11

*Holmes v. Lerner*,
    74 Cal. App. 4th 442 (1999) ............................................................................. 10

*Jones v. Goodman*,
    57 Cal. App. 5th 521 (2020) ............................................................................. 10

*In re Marriage of Geraci*,
    144 Cal. App. 4th 1278 (2006) ......................................................................... 11

*Oliver v. Swiss Club Tell*,
    222 Cal. App. 2d 528 (1963) ............................................................................. 8

*Smith v. Grove*,
    47 Cal. App. 2d 456 (1941) ............................................................................... 9

**Federal Statutes**

FRCP 4(h) ................................................................................................................ 14

FRCP 12(b)(1) ..................................................................................................... 3, 8

FRCP 12(b)(2) ................................................................................................ 2, 3, 14

FRCP 12(b)(5) ................................................................................................ 2, 3, 14

FRCP 12(b)(6) ................................................................................................... 3, 15

FRCP 17(b) ....................................................................................................... 3, 12

FRCP 17(b)(1) ......................................................................................................... 12

FRCP 17(b)(2) ......................................................................................................... 12

FRCP 17(b)(3) ......................................................................................................... 12

Revised Uniform Partnership Act ............................................................................. 9

Securities Act of 1933
    § 12(a)(1) ........................................................................................................... 2

**California Statutes**

Cal. Corp. Code
    § 16101(9) ..................................................................................... 9
    § 16202(a) ..................................................................................... 8
    § 16202(c)(2) ................................................................................. 9
    § 16401(i) ..................................................................................... 10
    §§ 16601, 16701 .......................................................................... 10

## MEMORANDUM OF POINTS AND AUTHORITIES

Dolphin CL, LLC ("Dolphin") is a Delaware limited liability company. Dolphin was formed for the purpose of making this limited appearance with respect to "Lido DAO," an alleged general partnership, to prevent entry of a default judgment, following this Court's Order of June 27, 2024 (ECF No. 75). Lido DAO is not a general partnership or any other legal person with capacity to sue or be sued. It is a decentralized autonomous software system on the Ethereum blockchain.[1] Lido DAO has the function of setting the parameters of another software system, the Lido liquid staking system on Ethereum (*see* https://github.com/lidofinance/lido-dao). "Lido DAO"'s failure to respond to the complaint, however, could result in a default judgment being entered that could have an adverse impact on holders of the LDO token throughout the world. These holders could then potentially (and incorrectly) be characterized as either holders or issuers of an alleged unregistered security (with no contract terms) issued by the purported entity, as well as members of a California general partnership with no clear admission or dissolution criteria or governance rules. The law does not require this Hobson's choice. In *Banks.com, Inc. v. Keery*, No. C 09-06039 WHA, 2010 U.S. Dist. LEXIS 17850, at *19 (N.D. Cal. Mar. 1, 2010), this Court acknowledged that, when a plaintiff sued a domain name, a person besides that domain name could appear and move to dismiss the plaintiff's complaint. A lawsuit against software is similar to a lawsuit against a domain name: software cannot appear in this Court and deny its legal personhood. A legal person must so act. To this end, Dolphin was created after this Court's Order permitting alternative service, and following a vote open that was open to all LDO token holders.[2] Dolphin makes this limited appearance to

---

[1] A blockchain is a decentralized distributed database to which data can be written but not deleted. *See* Adam Hayes, *Blockchain Facts: What Is It, How It Works, and How It Can Be Used*, INVESTOPEDIA (June 29, 2024), https://www.investopedia.com/terms/b/blockchain.asp.

[2] *See* https://research.lido.fi/t/appoint-entity-to-respond-to-pending-class-action-litigation-against-lido-dao/7791. Plaintiff may argue that this vote is evidence of Lido DAO's legal personhood. As set forth below in greater detail in this brief, a vote by unaffiliated LDO token holders would not and could not create a RUPA general partnership, and this vote did not in fact obtain the votes, or even come to the attention of, all LDO token holders, and as such, Dolphin does not purport to speak for all LDO token holders. This is to be expected given the decentralized nature of DAOs in general, and this one in particular in which a billion tokens are held in more than 45,000 wallets (see *infra* at p. 13). The token holders, nonetheless, may have an interest in not being deemed part of a general partnership simply because they own tokens.

challenge this Court's jurisdiction over Lido DAO, a non-person, and submits this Memorandum of Law in support of Dolphin's Motion to Dismiss Plaintiff Andrew Samuels's ("Plaintiff") amended complaint ("Complaint" or "AC") (ECF No. 54).

## I.    STATEMENT OF ISSUES

1.    Whether Plaintiff's claim against Lido DAO should be dismissed pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) because this Court lacks subject matter jurisdiction over a non-existent defendant.

2.    Whether Plaintiff's claim against Lido DAO should be dismissed pursuant to FRCP 12(b)(2) for lack of personal jurisdiction over Lido DAO, and for ineffective service under FRCP 12(b)(5), which also deprives the court of personal jurisdiction.

3.    Whether Plaintiff's claim against Lido DAO should be dismissed pursuant to FRCP12(b)(6) because the Plaintiff fails to sufficiently state a claim against Lido DAO under Section 12(a)(1) of the Securities Act of 1933 ("Securities Act").

## II.    PRELIMINARY STATEMENT

This is a putative securities class action.  The Court is asked to find that a decentralized autonomous global software system is a legal person that can be sued in a U.S. court.  While the technology is novel, the legal principles at issue are not.  Lido DAO is not a legal person that can sue or be sued.  It should be dismissed from this case with prejudice.

Plaintiff alleges that he bought LDO tokens on Gemini.  He says those tokens were unregistered securities, and that he was damaged when he sold the tokens for less than the purchase price.  Plaintiff alleges that LDO was issued by a general partnership called "Lido DAO."  Four alleged general partners (the "VC Defendants") of this alleged general partnership are named in this lawsuit.

In California, a general partnership requires an agreement between all partners to jointly carry on a business.  The AC identifies no agreement between the purported Lido DAO general

partners to jointly carry on a business. The AC also does not specify the threshold number of tokens that qualifies someone as a Lido DAO partner, or a mechanism for how they can join or depart from the partnership. Nor can it. Lido DAO is software. Anyone can buy an LDO token. Software cannot be sued under FRCP 17(b) as it does not have "capacity" in any one of three enumerated categories within the rule – it is not an "individual" (that is, a natural person), a corporation, or a California general partnership. For these reasons, the AC should also be dismissed as to Lido DAO under FRCP 12(b)(1) for lack of subject matter jurisdiction. The Court should not extend legal personhood to a global software system.

Even if the Lido DAO were a person that could be sued and served, the Court lacks personal jurisdiction over Lido DAO, warranting FRCP 12(b)(2) dismissal as well as FRCP 12(b)(5) dismissal for ineffective service, and the AC fails to state a claim against the Lido DAO, warranting dismissal under FRCP 12(b)(6).

## III.    RELEVANT FACTUAL BACKGROUND[3]

The "Lido DAO" as referred to in the AC is a set of executable software programs (aka "smart contracts") immutably stored at and openly accessible on a specific set of public addresses on the Ethereum blockchain (*See* https://docs.lido.fi/deployed-contracts and AC ¶ 30).[4] This system enables any person to "stake" their ETH (the native token of Ethereum) with "node

---

[3] The Court may consider evidence beyond the pleadings for a jurisdictional challenge under FRCP 12(b)(1) or a challenge to service under FRCP 12(b)(5). *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1052 (N.D. Cal. 2012); The same is so for a 12(b)(5) challenge on service. *See Hong-Ming Lu v. Primax Wheel Corp.*, No. C 04–4170 JSW, 2005 WL 807048, at *4–5 (N.D. Cal. Apr. 7, 2005); *Castaneda v. Garden Grove Police Dep't*, No. C 04–4170 JSW, 2022 WL 3137926, at *1–2 (June 27, 2022). In the alternative, Dolphin is filing a separate Motion asking for the Court to take judicial notice of certain evidence referenced herein

[4] Movant expects that Plaintiff will respond by pointing to public statements about Lido DAO on the Internet from the large and diverse group of people who use and contribute to Lido, including community forums. Lido DAO does not and cannot control the statements of this broad group and, therefore, not every public statement regarding Lido on its forums is an accurate statement regarding its function and organization.

DOLPHIN CL, LLC'S MOTION TO DISMISS AMENDED COMPLAINT

operators"[5] that run "validators," which are a special type of network node responsible for effectuating and recording transactions on Ethereum, including the operation of smart contract systems such as Lido. To make validator operation secure, each validator must be backed by a deposit of 32 ETH that may be forfeited (in a process called "slashing") if the validator violates Ethereum's "protocol rules." (*See https://ethereum.org/en/staking/*). Likewise, each validator is paid additional ETH autonomously by Ethereum and through user transaction fees as a reward for operating in compliance with Ethereum's protocol rules. *Id.* Staking ETH with a validator through Lido benefits the node operators who own the validator by lowering their cost of capital (they can use this staked ETH toward the 32 ETH minimum deposit) and benefits the staker by allowing the staker to receive a portion of the node operator's validation service revenues. (*See* Vasiliy Shapovalov, *How Lido Works* (Nov. 6, 2020), https://blog.lido.fi/how-lido-works).

The Lido system identified in the Complaint is not owned or operated by any particular entity or group and is not authoritative or exclusive. The source code for Lido is made up of the "Lido protocol," which is available under a free open source license and publicly hosted on GitHub. (*See* 2024 GitHub, Inc., *Lido Finance: Liquid Staking for All*, https://github.com/lidofinance). Anyone can deploy copies of this source code to Ethereum or any similar blockchain systems, and each such deployment would constitute an instance of Lido similar to the one alleged in the complaint. There is no single authority or "owner" entitled to create Lido systems on Ethereum or other blockchains. Although the Complaint alleges a particular Lido deployment is a business run by Lido DAO, the Complaint does not allege who deployed this system, nor that Lido DAO did such deployment. Lido DAO could not have done this, as Lido DAO is another smart contract system, not a legal entity or natural persons.

Although immutably stored on Ethereum, Lido nevertheless has configurable parameters. As Plaintiff alleges (*see* AC ¶¶ 30–31), these parameters include a current list of Ethereum node operators who have opted into receiving deposits of ETH from users through Lido to assist with the operation of their validators. (*See https://research.lido.fi/t/validator-admission-process/20*). Lido

---

[5] 2024 GitHub, Inc., *General Overview*, https://docs.lido.fi/guides/node-operators/general-overview/.

DAO (in fact, rather than as alleged in the AC) is a smart contract system that polls LDO users on their views about potential Lido parameter changes. This is similar to an agency doing surveys on the street and asking consumers about their preference for a product. (*See Regular Process*, https://lido.fi/governance#regular-process).[6] For this reason, LDO tokens were initially distributed widely to users of Lido (*i.e.*, persons who staked ETH in Lido) through a free public software-based distribution known as an "airdrop," placing the power to determine parameter settings into the hands of Lido's users (*see https://docs.lido.fi/guides/early-staker-airdrop/*). Subsequently, secondary markets developed for trading LDO tokens and users may buy and sell them in such markets. Contrary to Plaintiff's contention during oral argument in this case on June 27, 2024, any LDO holder—whether having received LDO in an airdrop or bought LDO on an exchange—can vote. (*See and compare* June 27, 2024 Ct. Hr'g Tr. at 14:18–20 *with* https://learn.bybit.com/altcoins/what-is-lido-dao-token-ldo/) ("Anyone holding LDO has the right to vote in any decision-making process, with the amount of LDO they stake determining their voting power."). Voting is not based on any voting "right," but rather on usage of the Lido DAO software system on Ethereum. People with the capability to vote their LDO includes those, like Plaintiff, who purchase their LDO on crypto exchanges like Gemini. All that such a LDO user would need to do to vote with their token is transfer it from Gemini to their own Ethereum "wallet." (*See id* at 26:21–22).

The stETH token is a receipt token in a self-executing software system for an equivalent amount of ETH staked with participating validators. In contrast, an LDO token holder is able to participate in public polls regarding parameter changes and upgrades in the Lido protocol. A person may hold both stETH and LDO, but is not required to do so, and the two tokens are not directly related. (*See, e.g.*, https://docs.lido.fi/guides/lido-tokens-integration-guide/).

Lido is different than a "Web2" model where a customer interacts with a centralized website like amazon.com, and the website owner (*e.g.*, Amazon, Inc.) is a contract counterparty. In contrast,

---

[6] In theory, just like Lido systems themselves, multiple Lido DAOs could be deployed by absolutely anyone, each with their own LDO token and governing a different Lido system instance on that particular blockchain.

Lido is hosted "autonomously" by over a million uncoordinated, independent nodes and (unlike Amazon) no particular person or persons (including node operators) owns the Lido system.  (*See Staking Modules*, https://docs.lido.fi/staking-modules/csm/intro#-tldr).

LDO holders may include people with many different interests, such as, and without limitation:  (1) Lido ETH depositors who wish to ensure only secure, responsible Node Operators who will not get "slashed" are eligible to potentially receive their deposits; (2) Node Operators whose validators are assigned deposits through Lido and wish to ensure that their individual business models do not get undercut by parameter changes made by a Lido DAO software upgrade; (3) people who have a general interest in the security of Ethereum itself, since parameter changes made by Lido DAO could affect the incentives of all the validators who participate in this system, and thus also effect Ethereum's broader security model (https://research.lido.fi/t/is-lido-good-for-ethereum/5520).[7]  (*See* AC ¶¶ 41–45).

LDO holders' interests are often adverse to one another and Lido's staking users.  For example, a person staking ETH using Lido may prefer parameters that pay stakers more than validators.  On the other hand, validators might prefer parameters that pay stakers less.  Existing Lido validators may prefer that Lido's admission criteria for new validators is very restrictive so that they do not need to compete, whereas their competitors may prefer that Lido's admission criteria are looser so that they can get in on the action.  (*See* https://www.coindesk.com/tech/2023/12/20/lido-tests-of-distributed-validator-technology-portend-2024-decentralization-push/).  Participants with more of an interest in Ethereum itself may prefer to cause Lido to "self-limit" its usage, as dominance of a single staking solution can threaten Ethereum security.  (*See* Department of Decentralisation, *Should Lido on Ethereum be Limited to Some Fixed % of Stake?* (May 2022), https://research.lido.fi/t/should-lido-on-ethereum-be-limited-to-some-fixed-of-stake/2225).  As a result of this adversarial contest among LDO holders, one may also hold LDO speculatively, as a bet that LDO's ability to influence these parameters will drive demand on the part of validators, depositors or others to buy and hold the LDO in order to influence

---

[7] The VC Defendants may fall into the third group, as they make widespread investments throughout the Ethereum ecosystem.

Lido parameters to the holders' disparate respective advantages. (*See* https://jacob.energy/hyperstructures.html).

In addition to validators, depositors, and LDO holders, there are a variety of other Lido contributors and users. These include people who write new Lido code, engage in research and education, prepare statistical reports, as well as other ancillary and ministerial activities. (*See,* Lido Docs, *https://docs.lido.fi/multisigs/lido-contributors-group*). These individuals can be paid by polling Lido DAO on whether they can receive funds out of the fees collected automatically by the system for connecting depositors to validators. (*See* 2024 GitHub, Inc., *Easy Track Guide*, https://docs.lido.fi/guides/easy-track-guide/).[8] These contributors may all have different understandings of what Lido and Lido DAO mean to them–for example, they may consider Lido something like a business and may portray themselves as getting paid for "business development activities." This does not make Lido a business. It makes Lido DAO a polling mechanism that queries LDO holders on whether they an applicant should receive a grant in the form of cryptoassets (which are not a legal tender). There is no ongoing employer-style supervision or control of grant recipients; they operate on a decentralized volunteer basis. (*See id.*)[9]

Indeed, as described by various Lido contributors, Lido is far from a business, and is instead a coordination tool among various participants in Ethereum who might otherwise be more rivalrous or uncoordinated – its purpose is not to create some independent enterprise, but to make Ethereum itself run better: "We think of Lido stETH as a triangle connecting node operators, stETH holders and LDO token holders through Lido stETH software. This software runs autonomously and is designed to align cryptoeconomic incentives to further the purpose of decentralizing Ethereum validation. stETH is a mission-driven software tool with a proven track-record of decentralizing the network of Ethereum validators through 1) permissionless software and 2) market forces (cf. HHI graph below, source: Grandjean, Heimbach, Wattenhofer 12)." (*See Lido Alliance*, https://research.lido.fi/t/lido-alliance-an-ethereum-aligned-ecosystem/7475).

---

[8] Easy Track is the Lido DAO system to, *inter alia*, approve payments.
[9] Once an Easy Track motion is passed, it cannot be revoked.

<u>**ARGUMENT**</u>

a.   <u>**This Court lacks Subject Matter Jurisdiction over any Claim Against Lido DAO**</u>
     <u>**under FRCP 12(b)(1).**</u>

FRCP 12(b)(1) prohibits this Court from hearing a claim when it lacks subject matter jurisdiction.  Subject matter jurisdiction does not exist over claims against non-persons like Lido DAO.  *Banks.com, Inc. v. Keery*, No. C 09-06039 WHA, 2010 U.S. Dist. LEXIS 17850, at *19 (N.D. Cal. Mar. 1, 2010) ("A non-entity is incapable of suing or being sued, putting aside the exceptional case of in rem jurisdiction.") (internal citations omitted).  Plaintiff has the burden of proving that Lido DAO is a legal person that can be sued.  *Nat'l Grange of the Order of Patrons of Husbandry v. Cal. Guild*, 334 F. Supp. 3d 1057, 1065 (E.D. Cal. 2018); *Mocha Mill, Inc. v. Port of Mokha, Inc.*, No. 2019 WL 1048252 (N.D. Cal. Mar. 5, 2019); *see also Oliver v. Swiss Club Tell*, 222 Cal. App. 2d 528, 537 (1963) ("A civil action can be maintained only against a legal person, i.e., a natural person or an artificial or quasi-artificial person; a nonentity is incapable of suing or being sued.").

Whether a Lido DAO is a partnership is a California law question.  *See McCulley v. City of Tucson*, No. CV 08-07-TUC-DCB (JM), 2010 U.S. Dist. LEXIS 149981, at *9 (D. Ariz. Mar. 29, 2010).  The "association of two or more persons to carry on as coowners a business for profit forms a partnership, whether or not the persons intend to form a partnership."  Cal. Corp. Code § 16202(a).  "A plaintiff can plead the existence of a partnership by making specific factual allegations demonstrating: (1) the right of the purported partners to participate in the management of the business; (2) the sharing of profits and losses among the purported partners; and (3) contributions of money, property, or services by the purported partners to the partnership."  *Sarcuni v. bZx DAO*, 664 F. Supp. 3d 1100, 1115 (S.D. Cal. 2023).

In *Sarcuni*, the Court found that a DAO constituted a general partnership between all holders of governance tokens for that DAO.  *See id.* at 1116.  The facts here are different.  The AC pleads that only a narrow subset of LDO token holders constitute the general partnership and, moreover, it is not their ownership of LDO tokens which makes them members of the general partnership.  (*See* AC ¶ 5).  In contrast, of the *Sarcuni* token holders were alleged members of the bZx DAO, which

was alleged to be in the business of conducting governance. *See Sarcuni* 664 F. Supp. 3d at 1116. Unlike in *Sarcuni*, Lido DAO's alleged business is not "DAO governance." *See id.* In fact, the AC goes to great lengths to distinguish participation in LDO token voting from membership in the alleged general partnership. (*See* AC ¶ 33).[10] The AC alleges that the purported general partners all profit from the alleged Lido staking business. This is untrue. (*See supra* § II Relevant Factual Background).

Nor does the LDO token confer upon a holder the right or ability to receive any income. Mere ownership of that token does not give a holder the right to share in profits and losses. But even if LDO token holders were entitled to profit sharing, that does not create a California general partnership. It has been California law for over a century that "the mere agreement between two or more persons to divide the profits of an undertaking is not sufficient to constitute them partners, but that **it is 'the association of two or more persons for the purpose of carrying on business together,' which is the distinguishing feature of a partnership**." *Auditorium Co. v. Barsotti*, 40 Cal. App. 592, 595–96 (1919) (emphasis added). No such agreement exists here and none is pleaded.

But even if there were an agreement to share profits and losses, this would be insufficient to demonstrate the existence of a partnership. A partnership requires an agreement "for the purpose of jointly carrying on the business." *Smith v. Grove*, 47 Cal. App. 2d 456, 461–62 (1941). The Revised Uniform Partnership Act (Cal. Corp. Code §§ 16100 *et. seq.* or the "RUPA") adopted this common law feature of partnerships. A partnership is "an association of two or more persons to carry on as coowners a business for profit." Cal. Corp. Code § 16101(9). The mere sharing of gross returns does not create a partnership. Cal. Corp. Code § 16202(c)(2). As set forth below, the RUPA also establishes rules regarding partnerships which are incompatible with the allegations in the AC that Lido DAO is a general partnership for California state law purposes.

The Complaint is silent as to the business the partners, being an association of two or more persons, intend to carry on as co-owners and for profit in the Lido DAO, *i.e*, the "large" LDO token holders agreed to jointly carry on. This alone is fatal to a claim that Lido DAO is a partnership: a

---

[10] LDO tokens represent ownership of the Lido "business," not partnership, which is restricted to the "large tokenholders" described as partners in the Complaint. *See* AC ¶ 5.

9

partnership cannot exist without a business jointly conducted by the partners. This requires some type of agreement. In *Holmes v. Lerner*, 74 Cal. App. 4th 442, 457 (1999), the California Appellate Court held that when parties "expressly agree to associate as co-owners," the UPA (predecessor statute to the RUPA) could fill in the details of the partnership. However, without an "expression of mutual consent to create a company," or conduct a business together, a partnership cannot exist. *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 213 (2006). The Complaint fails to even articulate who the partners in the partnership are, let alone how these parties manifested an intent to conduct a business together, or share the profits or losses of that business.

Additionally, according to the AC, a person could become a member of the Lido DAO alleged general partnership by acquiring some threshold amount of tokens (the AC is silent as to the threshold at which a token holder becomes a "large" token holder but, presumably, the difference between a "large" token holder and a regular token holder is a number of tokens). (*See* AC ¶ 5). This means that, under Plaintiff's theory, a person could join the Lido DAO general partnership without the consent of any of the other partners; they could just buy LDO tokens until they acquire enough tokens to be a "large" token holder. RUPA, however, requires that "a person may become a partner [in a partnership] **only with the consent of all of the partners**." Cal. Corp. Code § 16401(i) (emphasis added).

Likewise, the AC alleges that a person could dissociate as a partner in the Lido DAO general partnership by simply selling their LDO tokens (or, presumably, *some* of their LDO tokens—enough to cease to be a "large" holder). (*See* AC ¶ 5). This is also inconsistent with a RUPA partnership. Under the RUPA a person may only dissociate from a partnership by giving notice to the partnership of their intent to dissociate and giving the *partnership* the opportunity to buy out their interest. *Jones v. Goodman*, 57 Cal. App. 5th 521, 531 (2020); Cal. Corp. Code §§ 16601, 16701. The AC also does not explain why holding a "large number" of LDO creates profit/loss sharing but holding a lesser number of LDO does not. In fact, neither large numbers nor small numbers of LDO carry any profit distribution rights.

Furthermore, a general partnership cannot exist when the parties to it have opted to use a

different type of entity to conduct their business. *Eng v. Brown*, 21 Cal. App. 5th 675, 695 (2018). Here, the AC alleges that multiple, unnamed, entities were formed for the purposes of facilitating the Lido DAO software (*see* AC ¶ 28), and this Court should view with skepticism Plaintiff's assertion that these entities can be eschewed in favor of calling the entire software protocol a partnership.

Plaintiff may point to RUPA provisions which allow for unintentional partnership creation. This argument fails. While partners need not utter the word "partnership" as a magical incantation to form a partnership, "the undisclosed or subjective intent of one person is legally insufficient to alone create a legally recognizable partnership." *In re Marriage of Geraci*, 144 Cal. App. 4th 1278, 1292 (2006). There must be some manifestation of an intent to be in business together. *Id.* at 245–46. As set out above, the relationship between LDO token holders and stETH token holders runs through autonomous software known as the Lido protocol, and a particular deployment of this protocol on Ethereum has parameters set by the Lido DAO. However, neither the owners of LDO tokens nor the owners of stETH tokens manifest an intent to conduct a business with any other token holder; they are manifesting an intent to own their respective token and use the software.

Finally, the public use of "Lido DAO" as a name to describe a software system does not create a legal person. *Florists' Mut. Ins. Co. v. Floricultura Pac., Inc.*, No. 19-cv-05793-WHO, 2020 U.S. Dist. LEXIS 208543, at *21 (N.D. Cal. Apr. 3, 2020); *see also Beserra v. Allied Ins.*, No. CV 14–3325 DSF, 2014 WL 12610192, at *1 (C.D. Cal. June 6, 2014) (dismissing claims against purported insurance companies because the named defendants are "merely trade names and not actual legal entities"); *Rogers v. S. Guar. Ins. Co.*, No. 1:08-CV-3204-MHS , 2009 WL 10670650, at *1 (N.D. Ga. Jan. 29, 2009) (dismissing claims against defendants because the named defendants were "trade name[s] and not [legal entities] subject to suit").[11]

---

[11] *See Rodenhurst v. Bank of Am.*, No. 10-00167 LEK, 2011 WL 4625696, at *6 (D. Haw. Sept. 30, 2011) (dismissing complaint with prejudice against Bank of America because "'Bank of America' is a trade name, not a legal entity") (citing *Duarte v. Bank of Am.*, No. 10–00372 JMS BM, 2011 WL 1399127, at *3 (D. Haw. Apr. 12, 2011)); *Taylor v. Piggly Wiggly of Bay Minette*, No. 20-cv-07956-VKD, 2012 WL 3555576, at *6 (S.D. Ala. Aug. 16, 2012) ("There is plainly no possibility the plaintiffs can establish a cause of action against a defendant . . . [that] is not an existing corporate

1

Lido DAO is not a legal person.  It cannot be sued under FRCP 17(b) as it lacks capacity to

2

be sued.  It is not an individual under FRCP 17(b)(1).  It is not a corporation under FRCP 17(b)(2).

3

It is not (as Plaintiff alleges) a California general partnership capable of being sued under FRCP

4

17(b)(3).  Thus, the Court should dismiss the Complaint for lack of subject matter jurisdiction.  *See,*

5

*e.g.*, *Mocha Mill, Inc. v. Port of Mokha, Inc.*, No. 2019 WL 1048252, at \*4 (N.D. Cal. Mar. 5, 2019)

6

(dismissing complaint because the defendant was not a legal entity capable of being sued).

7

b.  **This Court Cannot Exercise Personal Jurisdiction over Lido DAO.**

8

9

Even if the Court were to determine Lido DAO is a partnership, personal jurisdiction cannot

10

be established.  *See McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1939);

11

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  The standards for

12

this are well-established.  *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433

13

F.3d 1199, 1205 (9th Cir. 2006) (*citing Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

14

The law of the state where the district court sits typically governs personal jurisdiction.

15

*Schwarzenegger*, 374 F.3d at 800.  A plaintiff can invoke the forum state's long-arm statute to

16

demonstrate district court jurisdiction over a non-resident defendant.  *See Glencore Grain*

17

*Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002).  The plaintiff

18

carries the initial burden of establishing the Ninth Circuit's three prong personal jurisdiction test,

19

which derives from long-standing Supreme Court precedent.  *See Schwarzenegger*, 374 F.3d at 802.

20

Failure to satisfy any of these three requirements deprives the defendant of due process.  *See Omeluk*

21

*v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 270 (9th Cir. 1995).

22

First, Plaintiff fails to establish that Lido DAO's actions adequately show "purposeful

23

availment" of California or the United States.  A website accessible in California in not enough.  *See*

24

*DFSB Kollective Co. Ltd. v. Bourne*, 897 F. Supp. 2d 871, 879–85 (N.D. Cal. 2012) ("[i]f the

25

defendant merely operates a [online platform], even a highly interactive [one], *that is accessible*

26

27

entity"); *Edmunds v. Asurion, LLC*, No. 22-cv-60361-CIV, 2024 WL 620932, at \*3 (S.D. Fla. Feb.

28

14, 2024) (dismissing with prejudice all claims against defendant "for the simple reason [the defendant] doesn't exist and "that [the plaintiff] cannot sue a non-existent entity").

DOLPHIN CL, LLC'S MOTION TO DISMISS AMENDED COMPLAINT

*from, but does not target, the forum state*, then the defendant may not be [hauled] into court in that state without offending the Constitution.") (emphasis added). Defendant's purported operation is passive and accessible from anywhere in the world. Even if Lido DAO were a general partnership, ownership of the approximately 1,000,000,000 LDO tokens is within 45,956[12] of wallets, worldwide. (*See* https://etherscan.io/token/0x5a98fcbea516cf06857215779fd812ca3bef1b32).

While some token holders may be from California and purchased tokens from California, Lido DAO (if it was an entity) has never purposely targeted Californians. Any website content, posted and maintained by third parties, does not directly relate to California. Aside from the conclusory (and baseless) allegation that Defendant "list[ed] and promot[ed] its illegal securities for trading on California-based exchanges and other U.S. exchanges and to California persons," Plaintiff provides no other facts to show purposeful availment of California or the United States. (*See* AC ¶¶ 11–14).

Next, Plaintiff's Complaint fails to demonstrate that his claim arises out of or relates to Defendant's forum-related activities. *See DFSB Kollective Co. Ltd.*, 897 F. Supp. 2d at 879–85. The Ninth Circuit uses a "but for" analysis to determine this. *See Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1051–52 (9th Cir. 1997). This means "but for" the defendant's forum-related conduct, the plaintiff's injuries would not have occurred. *See id.* Plaintiff's alleges Lido DAO "has U.S.-based employees and contractors and has entered into business relationships with multiple U.S.-based entities [ . . .] from which the subject matter of this action arises." But Defendant is not a legal person (much less an operating business). Thus, it does not have the legal capacity to have no employees, contractors, or business partners anywhere in the world. Moreover, "Lido DAO" didn't sell Plaintiff tokens (he bought them on Gemini). Further, Plaintiff has failed to allege that Defendant successfully solicited his purchase or financially benefited from his purchases. Accordingly, in short, Plaintiff has not sufficiently alleged that "but for" Defendant's California-related conduct and fails prong two of the Ninth Circuit's personal jurisdiction test.

---

[12] This number constantly fluctuates.

Last, Plaintiff fails to show that this Court's exercise of jurisdiction comports with fair play and substantial justice (*i.e.*, reasonableness). *See DFSB Kollective Co. Ltd.*, 897 F. Supp. 2d at 879–85. To determine the reasonableness of exercising jurisdiction, the Ninth Circuit balances seven factors:

> (1) the extent of the defendants' purposeful interjections into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendants' state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001). As set forth above, none of these factors is satisfied. Plaintiff has not and cannot demonstrate that personal jurisdiction can be constitutionally asserted over Lido DAO. Thus, the AC should be dismissed as to Lido DAO under FRCP 12(b)(2).

Dolphin respectfully submits that, notwithstanding this Court's Order of June 27, 2024 allowing for alternative service, service on Lido DAO was an impossibility and, for this additional reason, the Court lacks personal jurisdiction over Lido DAO. Federal courts only have personal jurisdiction over a defendant if the defendant has been properly served under FRCP 4(h). Under FRCP 12(b)(5), a complaint should be dismissed if there is inadequate service of process. *See Direct Mail Specialists, Inc. v. Eclat Computerized Tech.*, Inc., 840 F.2d 685, 688 (9th Cir. 1988); *Universal Trading & Inv. Co. v. Dugsbery, Inc.*, No. C 08-03632 CRB, 2009 WL 10695077, at *3 (N.D. Cal. Jan. 16, 2009) (citing *Direct Mail Specialists*, 840 F.2d at 688); FRCP 4(h); *see also Schell v. Nat'l Flood Insurers Ass'n*, 520 F. Supp. 150, 156 (D. Colo. 1981) (non-existent entity could not be properly served); *Sevits v. McKiernan-Terry Corp. (N.J.)*, 264 F. Supp. 810, 812 (S.D.N.Y. 1966) (same). As set forth above in section a, the Lido DAO is not a legal person, thus could be served, and personal jurisdiction over Lido DAO does not exist.

**c. Plaintiff Has Failed to State a Cause of Action Under Section 12(a)(1) of the Securities Act Against Lido DAO**

Dolphin joins several portions of the VC Defendants' FRCP 12(b)(6) Motions to Dismiss,

which apply with equal force to Dolphin if the Court were to conclude that subject matter and personal jurisdiction over Lido DAO exist. First, Dolphin joins Paradigm and AH Capital Management's argument that Plaintiff fails to allege a Section 12 Claim. *See* ECF No. 60 at 3–7 (arguing Plaintiff fails to allege Paradigm is a statutory seller under 12(a)(1) because Plaintiff does not plead Paradigm passed title to him or directly solicited Plaintiff's purchases); ECF No. 61 at 3–8 (arguing same as to AH Capital Management). Second, Dolphin joins AH Capital Management, Dragonfly, and Robot's argument that Plaintiff's Section 12 Claim fails because he does not allege that he purchased securities in a public offering, as required by the statute. *See* ECF No. 61 at 10–12 (AH Capital Management arguing Plaintiff fails to allege a Section 12(a)(1) claim because he claims he purchased securities in a secondary sale, not a public offering); ECF No. 62 at 5 (Dragonfly adopting and incorporating same by reference); ECF No. 63 at 5 (same). Third, Lido DAO joins Dragonfly and Robot's argument that the *in pari delicto* doctrine bars Plaintiff's Section 12 claims. *See* ECF No. 62 at 9 (arguing Plaintiff's theory that "by purchasing LDO, an individual 'thereby join[s] the Lido DAO" also makes him liable partner and therefore, the *in pari delicto* doctrine bars his Section 12 claim); ECF No. 63 at 9 (same).

## CONCLUSION

For the foregoing reasons, Dolphin respectfully requests that this Motion to Dismiss as to "Lido DAO" be granted.

**BROWN RUDNICK LLP**

By: /s/ Samuel A. Moniz
        Samuel A. Moniz (SBN: 313274)
        2211 Michelson Drive
        Seventh Floor
        Irvine, CA 92612
        Telephone:    (949) 752-7100
        Facsimile:     (949) 252-1514
        Email: smoniz@brownrudnick.com


BROWN RUDNICK LLP
Stephen D. Palley (*pro hac vice* forthcoming)
601 13th St NW #600
Washington, DC 20005
Telephone:    (202) 536-1766
Email: spalley@brownrudnick.com

Sigmund S. Wissner-Gross (*pro hac* vice forthcoming)
Jessica N. Meyers (*pro hac* vice forthcoming)
7 Times Square
New York, NY 10036
Telephone:    (212) 209-4800
Email: swissner-gross@brownrudnick.com
        jmeyers@brownrudnick.com


METALEX PRO, LLP
ALEX GOLUBITSKY (SBN: 289236)
3013 Libby Ter
Richmond, VA 23223
Telephone: (206) 602-6045
Facsimile: (866) 301-2038


*Attorneys for Dolphin CL, LLC*