# EXHIBIT A

PETER B. MORRISON (SBN 230148)
Peter.Morrison@skadden.com
ZACHARY FAIGEN (SBN 294716)
Zack.Faigen@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:     (213) 687-5000
Facsimile:     (213) 687-5600

ALEXANDER C. DRYLEWSKI (*pro hac vice*)
alexander.drylewski@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone:     (212) 735-3000
Facsimile:     (212) 735-0411

Attorneys for Defendant Paradigm Operations LP

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ANDREW SAMUELS, on behalf of himself and all others similarly situated,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>LIDO DAO; AH CAPITAL MANAGEMENT, LLC; PARADIGM OPERATIONS LP; DRAGONFLY DIGITAL MANAGEMENT LLC; ROBOT VENTURES LP,<br><br>　　　　　　　　　Defendants. | Case No. 3:23-cv-06492-VC<br><br>**INVESTOR DEFENDANTS' SUPPLEMENTAL REPLY TO PLAINTIFF'S RESPONSE TO DOLPHIN CL, LLC'S MOTION TO DISMISS** |

Defendants AH Capital Management, L.L.C. ("a16z"), Paradigm Operations LP ("Paradigm"), Dragonfly Digital Management LLC ("Dragonfly"), and Robot Ventures LP ("Robot Ventures") (collectively, the "Investor Defendants") submit this Supplemental Reply to address three arguments raised for the first time in Plaintiff's Response (ECF 97 ("Response" or "Resp.")) to Dolphin CL, LLC's Motion to Dismiss (ECF 82 ("Dolphin MTD")).

### A. Plaintiff's New Attempt To Avoid The Mutual Selection Test Is Unavailing

Plaintiff argues the Investor Defendants "conjured something they call the 'mutual selection test,'" which provides that a partner can be admitted into a general partnership only with the unanimous approval of every other partner. (Resp. at 7.) Plaintiff is wrong. The "mutual selection" test is embodied in Section 16401(i) of the California Corporations Code and applied by the California Court of Appeal's binding decision in *Rivlin v. Levine*, 195 Cal.App.2d 13 (1961). *Rivlin* held in no uncertain terms that "[i]n all general partnerships, . . . [n]o partner is admitted without unanimous approval of every other partner." *Id.* at 21. The Court of Appeal explained that, because of this requirement, "[a] true partnership is a relation of personal confidence and is a select closed group. Its memberships are never indiscriminately offered at random to the public at large." *Id.*; *see also Solomont v. Polk Dev. Co.*, 245 Cal.App.2d 488, 497 (1966) (rejecting theory of partnership on ground that "*Rivlin* is applicable, and this is so because ***the 'mutual selection' requirement test***, upon which that case turned, is simply declarative of ***established partnership law***" (emphases added)).

Plaintiff's partnership theory fails to satisfy the mutual selection requirement because he does not plead mutual consent among the alleged partners of the "Lido DAO partnership." (*See* ECF 60 at 7-9; ECF 66 at 3-5.) Indeed, Plaintiff does not plead any communication, let alone consent, among the four Investor Defendants to admit one another as "partners." (*Id.*) And while Plaintiff argues that consent can be *inferred* simply based on the acquisition of LDO tokens, that argument is circular (it *presumes* the tokens are already "partnership interests") and is belied by Plaintiff's own position that acquiring LDO tokens does *not* necessarily make one a "partner." (*See* Resp. 6-7 ("The *Sarcuni* court concluded that . . . every holder of a governance token" is a partner, but "Plaintiff doesn't think this is necessarily so."); ECF 64 at 21-22 (excluding Plaintiff and thousands of other LDO holders from the "partnership" (citing Amended Complaint ("AC") ¶¶ 10, 65)); *cf.* June 27, 2024 Oral Argument

1  Transcript ("Tr.") at 22 ("THE COURT: And it seems like right now you're not -- maybe you've
2  committed in your complaint, but you're no longer committing to the idea that all of the token holders
3  are general partners. MR. GERSTEIN:  Committing -- yeah, I guess it's hard to know whether we
4  commit to that or not, because it's not presented on this motion.")).

5  Unable to satisfy the mutual selection test, Plaintiff asks the Court to fashion a new exception
6  to it. Plaintiff suggests that *Rivlin's* requirements should only apply to "distinguish[] *bona fide*
7  partnerships . . . from '*sham partnerships*,' either general or limited, which masquerade[] as such to
8  exploit investors." (Resp. at 7.) Plaintiff provides no support for this "distinction," which appears
9  nowhere in California statute, *Rivlin* or any other case of which Investor Defendants are aware. To
10 the contrary, *Rivlin* recited foundational partnership principles under California law; it did not create
11 new law or announce a new set of principles that apply only to "sham" partnerships. (*Id.*) Indeed, the
12 mutual selection requirement is a longstanding fixture of California statutory law and has been
13 codified in California for a century. Today, it is part of California's Revised Uniform Partnership Act,
14 Cal. Corp. Code § 16401(i). Moreover, California courts applied this rule both before and after *Rivlin*.
15 *See, e.g.*, *Deeney v. Hotel & Off. Emps.' Union Local No. 283*, 57 Cal. App. 2d Supp. 1023, 1026-27
16 (1943) (analyzing a labor union—not a "sham" partnership—and concluding it was not a partnership
17 in part because "[n]o person can become a member of a partnership without the consent of all the
18 partners"); *Solomont*, 245 Cal. App. 2d at 497 ("[T]he 'mutual selection' requirement test, upon which
19 [*Rivlin*] turned, is simply declarative of established partnership law. . . . 'Partnership being a relation
20 of trust, confidence and mutual agency, it follows that it must be founded on contract and that no
21 person can become a partner except by the consent of all the others.'" (citation omitted)).

22 Plaintiff's attempt to evade this requirement lacks merit.

23 **B.     Plaintiff's New Request For Leave To Amend Should Be Denied**

24 Plaintiff argues that "if this Court becomes the first to conclude as to a DAO that literal,
25 person-by-person, individualized selection of partners—rather than consent to admit partners who
26 buy enough tokens by agreeing to a governance structure in which this is possible—is a *sine qua non*
27 of a general partnership, Plaintiff would respectfully request leave to amend the complaint to allege
28 that Lido DAO is an unincorporated association in the alternative." (Resp. at 7.)

2

INVESTOR DEFENDANTS' SUPPLEMENTAL REPLY                                CASE NO. 3:23-cv-06492-VC

To start, this Court would not be the "first to apply" the mutual selection test to an alleged partnership. To the contrary, ignoring that test would be the aberration. (*See supra* Part A.)

Next, Plaintiff's statement implies that he adequately pled some lesser level of consent—"consent to admit partners who buy enough tokens by agreeing to a governance structure in which this is possible." (Resp. at 7.) It is not clear what that means or what Plaintiff thinks he pled. But his AC unquestionably does not plead any consent (by anyone) to admitting partners "who buy enough tokens," or what it means to "buy enough tokens" such that a purchaser thereafter becomes a partner and thus becomes jointly and severally liable for the acts of other partners. (*Cf.* Tr. at 18 ("THE COURT: Right. You can't just say it's governed by large holders. You can't just say it's governed by large holders of the token. Right? I mean, you have to -- if you -- if you are saying that only certain token holders are general partners, then you have to articulate what it is that they are doing that makes them general partners, as distinction from the, you know, random token holder. Right?").)[1]

Finally, Plaintiff provides no basis for the Court to conclude that his proposed amendment (which would be his second in this case) would not be futile. To the contrary, such amendment would suffer from the same flaws as the current pleading—including that Plaintiff fails to allege what this purported implied-by-law entity is, or what facts or circumstances render someone a member of it. Having failed to address those flaws and many others, Plaintiff's request to amend should be denied.[2]

### C.      Plaintiff's New Attempt To Rebut The Public Offering Requirement Fails

Dolphin's motion includes one sentence joining a16z's public offering argument. (*See* Dolphin MTD at 15 (citing ECF 61 at 10-12).) Plaintiff responds with nearly three pages of new

---

[1] Because LDO tokens can be bought by anyone in any quantity at any time, Plaintiff's theory means anyone can unilaterally and anonymously become a "partner" in the supposed partnership. This is not the law. *See In re Marriage of Geraci*, 144 Cal. App. 4th 1278, 1293 (2006) (a party cannot unilaterally and secretly create a partnership relationship, as "there can be no such thing as a partnership with a person who . . . does not manifest agreement to engage in a business enterprise with the other person"). And Plaintiff's theory likewise means that anyone who *exits* the alleged partnership by selling LDO tokens commits a prima facie violation of the federal securities laws.

[2] Plaintiff is incorrect that defense counsel "conceded that [the] 'mutual selection test' does not apply to unincorporated associations." (Resp. at 7.) Counsel merely acknowledged that Cal. Corp. Code § 16401(i) applies to partnerships, not unincorporated associations, without taking a position as to what Plaintiff would have to hypothetically plead if he tried to allege an unincorporated association (which he has not done). (Tr. at 42:3-22.) If Plaintiff is allowed to amend, the Investor Defendants reserve all rights and arguments to challenge any alleged unincorporated association theory, including whether the Investor Defendants can be properly named as defendants under such a theory.

argument. (Resp. at 13-15.) But Plaintiff again misunderstands the Securities Act's text and structure.

Start with the text. Section 5—and by extension 12(a)(1)—imposes liability on persons who "sell" or "offer to sell" an unregistered "security through the use or medium of any prospectus or otherwise." 15 U.S.C. § 77e(a), (c). Plaintiff says this text "has no limitation at all." (Resp. at 13-14.) Supreme Court precedent is to the contrary. *Gustafson v. Alloyd Co.* defines "the term 'prospectus'" as "a document soliciting the public to acquire securities" in "public offerings by issuers" or "their controlling shareholders." 513 U.S. 561, 574-77 (1995). And *Fischer v. United States* instructs that when "a general term" such as "or otherwise" "accompanies" "specific text," that general term cannot be read to "render[] meaningless the specific text," but instead is "given a more focused meaning" by "'the company it keeps.'" 144 S. Ct. 2176, 2184 (2024) (quoting *Gustafson*, 513 U.S. at 575). Taken together, these two lines of precedent limit Section 5 (and 12(a)(1)) liability to sales in public offerings by an issuer or its controlling shareholders via a prospectus or prospectus-like document. *See Handron v. Sec'y Dep't of Health & Hum. Servs.*, 677 F.3d 144, 152 (3d Cir. 2012) (holding that "or otherwise" in clause providing that "'the position of the United States [is] represented by counsel or otherwise'" means "the government's position is represented in a manner akin to the representation counsel would provide" (citation omitted)). This reading, unlike Plaintiff's, "give[s] effect . . . to every clause and word of [the] statute." *United States v. Menasche*, 348 U.S. 528, 538-39 (1955).

According to Plaintiff, *Gustafson* is distinguishable because it interpreted "the word 'prospectus' in Section 12(a)(2)" ***only***. (Resp. at 14-15.) But that ignores what *Gustafson* said. The Supreme Court was explicit that a "term" like prospectus "should be construed, if possible, to give it a consistent meaning throughout the Act," *Gustafson*, 513 U.S. at 568, and that "the word 'prospectus' is a term of art referring to a document that describes a public offering of securities by an issuer or controlling shareholder," *id.* at 584. Thus, Plaintiff "gets the presumption backwards" by suggesting that "prospectus" has "a different meaning" in Section 5 than in Section 12(a)(2). *Id.* at 573.

Moving to structure, Plaintiff is wrong that limiting Section 5 "to public offerings would render Section 4's exemption for 'transactions by an issuer not involving any public offering' entirely superfluous." (Resp. at 14 (quoting 15 U.S.C. § 77d(a)(2)).) The SEC has the burden to plead a "prima facie violation of Section 5" by alleging an issuer or controlling shareholder's public offering

4

sale—*i.e.*, an offer or sale through a prospectus or document akin to a prospectus—and then a defendant can assert that their "transactions qualified for an exemption" under Section 4. *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1085 (9th Cir. 2010) (recognizing that the parties did not dispute that "the chain of transactions leading to the sale to the public of 17.45 million unregistered Platforms securities" violated Section 5 and holding transactions not exempt under Section 4). Under Section 4(a)(2), an issuer whose sales are plausibly alleged to be part of a public offering can qualify for an exemption by proving the distribution was "limited" to "highly sophisticated investors." *Id.* at 1090-91. But not even the SEC can plead a Section 5 claim without alleging any connection between the defendant's sales and a public offering by an issuer or its controlling shareholders. That explains why every Section 5 case Plaintiff cites involves a public offering. *SEC v. Phan*, 500 F.3d 895, 898 (9th Cir 2007) (SEC alleged defendant sought to "raise capital from the public"); *SEC v. Cavanagh*, 155 F.3d 129, 132-33 (2d Cir. 1988) (finding prima facie violation of Section 5 where controlling shareholder resold stock to the public).[3]

Seeking to salvage his pleading, Plaintiff attempts to divide the world of securities sales into "*public* offerings" and "*private* offerings." (Resp. at 13, 15.) That is a false dichotomy. It does not matter how widely available an alleged security may ultimately be if the plaintiff has not purchased it in an *offering*, *i.e.*, a distribution by the issuer or a controlling shareholder. Here, Plaintiff's allegations that he "obtained [his] LDO tokens on the secondary market," AC ¶ 90, preclude him from showing that he purchased in any offering, much less a public offering. Alleging that LDO tokens are available for purchase on the secondary market is not sufficient to create Section 12(a)(1) liability—or Section 5 liability—for selling alleged securities "through the use or medium of any prospectus or otherwise," 15 U.S.C. § 77e(a), (c), with respect to any and every sale of LDO tokens.[4]

Plaintiff's claim should be dismissed in its entirety on this ground alone. *See Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*, 1998 WL 2016634, at *6-7 (N.D. Cal. Sept. 14, 1998) (dismissing Section 12(a)(1) claim for failure to allege sale "pursuant to a public offering").

---

[3] *Phan* thus provides no support for the proposition it is cited for in *Fukuda v. Nethercott*, namely, that Section 5 is not limited to "public offerings." 2016 WL 3920176, at *3 (D. Utah July 15, 2016).

[4] Plaintiff also argues that Section 5 is not limited to initial distributions and that a defendant cannot prevail on a Section 4 exemption at the pleading stage. (Resp. at 13.) Neither argument is responsive to the Investor Defendants' public offering argument.

| | |
|---|---|
| Dated:  August 20, 2024 | Respectfully submitted,<br><br>SKADDEN, ARPS, SLATE, MEAGHER &<br>  FLOM LLP<br><br>*/s/ Peter B. Morrison*<br>Peter B. Morrison (CA Bar No. 230148)<br>Zachary M. Faigen (CA Bar No. 294716)<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, California 90071<br>peter.morrison@skadden.com<br>zack.faigen@skadden.com<br>(213) 687-5000<br><br>Alexander C. Drylewski (dmitted *pro hac vice*)<br>One Manhattan West<br>New York, New York 10001<br>alexander.drylewski@skadden.com<br><br>*Attorneys for Defendant Paradigm Operations LP*<br><br>-and-<br><br>MORRISON COHEN LLP<br><br>*/s/ Jason Gottlieb*<br>Jason Gottlieb (dmitted *pro hac vice*)<br>Michael Mix (admitted *pro hac vice*)<br>Rachel Fleder (admitted *pro hac vice*)<br>909 Third Avenue<br>New York, New York 10022<br>jgottlieb@morrisoncohen.com<br>mmix@morrisoncohen.com<br>rfleder@morrisoncohen.com<br>(212) 735-8600<br><br>LONDON & STOUT P.C.<br>Ellen London<br>1999 Harrison St., Suite 655<br>Oakland, California 94612<br>elondon@londonstoutlaw.com<br>(415) 862-8494<br><br>*Attorneys for Defendants*<br>*Dragonfly Digital Management LLC and*<br>*Robot Ventures LP*<br><br>-and- |

| | |
|---|---|
| 1 | LATHAM & WATKINS LLP |
| 2 | */s/ Susan E. Engel* |
|   | Susan E. Engel (Admitted *pro hac vice*) |
| 3 | susan.engel@law.com |
|   | 555 Eleventh Street, N.W., Suite 1000 |
| 4 | Washington, D.C., 20004-1304 |
|   | (202) 637-2200 |

Douglas K. Yatter (CA Bar No. 236089)
douglas.yatter@lw.com
Benjamin A. Naftalis (Admitted *pro hac vice*)
benjamin.naftalis@lw.com
1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200

Matthew Rawlinson (CA Bar No. 231890)
matt.rawlinson@lw.com
140 Scott Drive
Menlo Park, California 94025
(65) 328-4600

Morgan E. Whitworth (CA Bar No. 304907)
morgan.whitworth@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111
(415) 391-0600

*Attorneys for Defendant AH Capital Management, L.L.C.*

7