**BROWN RUDNICK LLP**
ARJUN SIVAKUMAR (SBN: 297787)
asivakumar@brownrudnick.com
2211 Michelson Drive
Seventh Floor
Irvine, CA 92612
Telephone:   (949) 752-7100
Facsimile:   (949) 252-1514

STEPHEN D. PALLEY (*pro hac vice*)
spalley@brownrudnick.com
601 13th St NW #600
Washington, DC 20005
Telephone:   (202) 536-1766
Facsimile:   (202) 536-1701

SIGMUND S. WISSNER-GROSS (*pro hac vice*)
swissner-gross@brownrudnick.com
HAYDEN A. MILLER (*pro hac vice* forthcoming)
hmiller@brownrudnick.com
7 Times Square
New York, NY 10036
Telephone:   (212) 209-4800
Facsimile:   (212) 209-4801

**METALEX PRO, LLP**
ALEX GOLUBITSKY (SBN: 289236)
ag@agolubitsky.com
3013 Libby Ter
Richmond, VA 23223
Telephone: (206) 602-6045
Facsimile:   (866) 301-2038

*Attorneys for Dolphin CL, LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ANDREW SAMUELS, on behalf of himself and all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>LIDO DAO; AH CAPITAL MANAGEMENT, LLC; PARADIGM OPERATIONS LP; DRAGONFLY DIGITAL MANAGEMENT LLC; ROBOT VENTURES LP<br><br>Defendants. | CASE NO. 3:23-CV-06492-VC<br><br>**DOLPHIN CL, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT** |

## **TABLE OF CONTENTS**

**Page**

I.    FACTUAL BACKGROUND ...................................................................................................1

II.   ARGUMENT ..........................................................................................................................3

       A.    Plaintiff's AC Should Be Dismissed for Lack of Subject Matter Jurisdiction...........3

            (1)    Plaintiff Fails to Plead the Existence of a Partnership .................................3

            (2)    Lido DAO Is Not an Unincorporated Association. ......................................7

       B.    Plaintiff's Fails to Make a Prima Facie Showing of Personal Jurisdiction ...............9

       C.    Plaintiff's Fails to State a Section 12(a)(1) Securities Act Claim .............................9

III.  CONCLUSION ....................................................................................................................10

**TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*In re AGS, Inc. Sec. Litig.*,
   2022 WL 17406100 (D. Nev. Dec. 2, 2022) ........................................................................... 10

*Arias v. Universal Music Grp.*,
   640 F. Supp. 3d (D. D.C. 2022) ............................................................................................... 9

*Baker v. Seaworld Ent., Inc.*,
   No. 14cv2129-MMA (KSC), 2016 WL 2993481 (S.D. Cal. Mar. 31, 2016) ......................... 10

*Banks.com, Inc. v. Keery*,
   No. C 09-06039 WHA, 2010 U.S. Dist. LEXIS 17850 (N.D. Cal. Mar. 1, 2010) ................... 7

*Beserra v. Allied Ins.*,
   2014 WL 12610192 (C.D. Cal. June 6, 2014) ......................................................................... 8

*Brown v. Fifth Judicial Dist. Drug Task Force*,
   255 F.3d 475 (8th Cir. 2001) .................................................................................................... 7

*CFTC v. Ooki Dao*,
   2023 WL 5321527 (N.D. Cal. June 8, 2023) ........................................................................... 9

*Charas v. Sand Tech. Sys. Int'l, Inc.*,
   1992 WL 296406 (S.D.N.Y. Oct. 7, 1992) .............................................................................. 9

*Cox v. CoinMarketCap OPCO, LLC*,
   2024 WL 3748982 (9th Cir. Aug. 12, 2024) ............................................................................ 9

*EcoHub, LLC v. Recology Inc.*,
   2023 WL 3852700 (N.D. Cal. June 6, 2023) ....................................................................... 3, 6

*Hollifield v. Resolute Cap. Partners Ltd., LLC*,
   2023 WL 4291524 (C.D. Cal. May 12, 2023) ....................................................................... 10

*Jones v. Medtronic Inc.*,
   411 F.Supp.3d 521 (D. Ariz. 2019) .......................................................................................... 9

*Mocha Mill, Inc. v. Port of Mokha, Inc.*,
   2019 WL 1048252 (N.D. Cal. Mar. 5, 2019) ........................................................................... 3

*Niantic, Inc. v. Global*,
   2019 WL 8333451 (N.D. Cal. Sept. 26, 2019) ......................................................................... 8

*Ochoa v. J.B. Martin & Sons Farms, Inc.*,
   287 F.3d 1182 (9th Cir. 2002) .................................................................................................. 9

*Ou-Young v. Roberts*,
    2013 WL 6732118 (N.D. Cal. Dec. 20, 2023) ................................................................... 7

*In re PFA Ins. Mktg. Litig.*,
    696 F. Supp. 3d. 822 (N.D. Cal. 2022) ................................................................... 3, 4

*S.E.C. v. Alexander*,
    2003 WL 21196852 (S.D.N.Y. May 20, 2003) ................................................................... 9

*S.E.C. v. Schooler*,
    2014 WL 3858257 (S.D. Cal. July 30, 2014) ................................................................... 5

*Sarcuni v. bZx DAO*,
    664 F. Supp. 3d 1110 (S.D. Cal. 2023) ................................................................... 7

*Senne v. Kan. City Royals Baseball Corp.*,
    105 F. Supp. 3d 981 (N.D. Cal. 2015) ................................................................... 9

*Stack v. Lobo*,
    903 F. Supp. 1361 (N.D. Cal. 1995) ................................................................... 10

*Unknown Parties v. Google LLC*,
    No. 23-cv-05523-VC, 2024 WL 1892291 (N.D. Cal. Apr. 29, 2024) ................................................................... 4

*In re Violin Memory Sec. Litig.*,
    No. 13–CV–5486 YGR, 2014 WL 5525946 (N.D. Cal. Oct. 31, 2014) ................................................................... 10

*In re Westville Distribution & Transp.*,
    293 B.R. 101 (Bank. D. Conn. 2003) ................................................................... 7

**California Cases**

*Farnsworth v. Nevada-Cal Mgmt., Ltd.*,
    188 Cal. App. 2d 382, 10 Cal. Rptr. 531 (1961) ................................................................... 5

*Founding Members of the Newport Beach Country Club v. Newport Beach Country
    Club, Inc.*,
    109 Cal. App. 4th 944 (Cal. Ct. App. 2003) ................................................................... 8

*People v. Park*,
    87 Cal. App. 3d 550, 151 Cal. Rptr. 146 (Ct. App. 1978) ................................................................... 6

*Pinter v. Dahl*, 486 U.S. 622, 635–36 (1988) ................................................................... 4, 10

*Solomont v. Polk Dev. Co.*,
    245 Cal. App. 2d 488, 54 Cal. Rptr. 22 (1966) ................................................................... 5

**Other State Cases**

*Juhl v. Airington*,
    936 S.W.2d 640 (Tex. 1996) ................................................................... 8

**Federal Statutes**

15 U.S.C.
  § 77v(a) ............................................................................................................................... 9

**California Statutes**

Cal. Corp. Code
  § 16202(a) ........................................................................................................................... 3
  § 16401(i) ............................................................................................................................ 5
  § 18035(a) ........................................................................................................................... 8

**Other Authorities**

FED. R. CIV. P. 4(m) ..................................................................................................................... 10

FED. R. CIV. P. 15 .......................................................................................................................... 8

Frizell, *Sale of Limited Partnership Interests: Rivlin v. Levine*, 14 Hastings L.J. 176
  (1962) .................................................................................................................................. 5

Higgins, *Comment, Is a Limited Partnership Interest a Security: The Current State
  of the California and Federal Definitions Add a Legal Dimension to Economic
  Speculation*, 16 Santa Clara L. Rev. 311 (1976) ................................................................. 5

https://research.lido.fi/t/activate-lido-protocol-governance-with-revenue-share-
  staking/6738 ....................................................................................................................... 2

https://research.lido.fi/t/activate-lido-protocol-governance-with-revenue-share-
  staking/6738/31 .................................................................................................................. 2

https://research.lido.fi/t/proposal-introducing-ldo-staking/4636/37 ............................................. 2

https://research.lido.fi/u/Lidosaviour/summary .............................................................................. 2

https://snapshot.org/#/lido-
  snapshot.eth/proposal/0x739fbe56425d355b5e41c22bb346b7a8217afd
  9e84aa49863648b1c641a482e3 ........................................................................................ 8

*Rivlin v. Levine*, 14 HASTINGS L.J. 176 (1962) ............................................................................. 5

Plaintiff's Response to Dolphin's Motion to Dismiss (the "Opposition" or "Opp.") fails to cure the deficiencies of his amended complaint ("AC"). Plaintiff's entire case against "Lido DAO" rests on a fundamental equivocation about what Lido DAO is, how it is governed, and who is part of it (including Plaintiff). But if Lido DAO is not an entity, this court has no subject matter jurisdiction over Plaintiff's claims. Lido DAO cannot be a partnership because the only alleged partnership admission criterion is the purchase of an (unspecified and undeterminable) number of LDO tokens. This means that the existing "partners" have no right to admit or exclude others from entering the partnership. This is fatal to partnership formation. In his Opposition, Plaintiff effectively concedes the deficiency of his partnership theory and argues for the first time that Lido DAO is an "unincorporated association." This theory is not supported in the AC as Plaintiff has not alleged the rules, agreements, or membership criteria that govern it. In short, Plaintiff has not properly pled that Lido DAO is any type of entity. Thus, all of the claims against Lido DAO must be dismissed.

Even if Lido DAO was an entity (and it is not), the AC and Opposition are fatally flawed. Personal jurisdiction is lacking because Plaintiff has not alleged minimum contacts of "Lido DAO" with *any* jurisdiction. Likewise, his Securities Act claim fails because his purchase of LDO Tokens was not related to statements by Lido DAO, since (1) membership in this supposed entity is based on holding LDO tokens, (2) all LDO tokenholders have identical voting powers, and (3) Plaintiff was an LDO tokenholder, and thus would be a member of the very entity he is suing, barring his claim under the *in pari delicto* doctrine. Third, Plaintiff's claims against this supposed entity under Section 12(a)(1) of the Securities Act fail because his purchase of LDO Tokens was not related to statements by Lido DAO.

## I.     FACTUAL BACKGROUND

As set forth in further detail in Dolphin's Motion to Dismiss, ECF No. 82 ("Mot.") and Request for Judicial Notice ("RJN"), "Lido DAO" is a set of executable software programs accessible under a free-open-source license and publicly available on GitHub. (Mot. at 3) It is a smart contract system that polls LDO users on their views about potential Lido parameter changes. (*Id.* at 3–4.) No group or entity owns or operates Lido. (*Id.* at 4.) Anyone can deploy copies of this

source code to Ethereum or similar blockchain systems. (*See id.*) Initially, LDO tokens were widely distributed through a free public software-based distribution. (*Id.*) Individuals, such as Plaintiff, can now purchase LDO tokens through cryptocurrency exchanges and other secondary markets. (*Id.*)

In his Opposition, Plaintiff reiterates several out-of-context objectively false allegations. For instance, Plaintiff alleges that "[a]s Defendant Andreesen Horowitz put it, after 'focus[ing] on growth and product technical development, they plan to explore 'token buyback mechanisms' and other ways to distribute the profits." (AC ¶ 35.) To the contrary, the post quoted in AC ¶ 35 states, in full, that "Given where Lido is in their overall trajectory and the overall state of the market, **we tend to agree** with @money-supply and @steakhouse's sentiment **to focus on growth and product technical development versus token buyback mechanisms**."[1]

Similarly, Plaintiff alleges that Lido DAO was "set up as a DAO, with the explicit goal of avoiding regulatory scrutiny for its fundamentally illegal business" and that a founder stated "there was an understanding that Lido could avoid 'the potential of SEC enforcement action.'" (AC ¶ 29; Opp. at 5.) This partial quotation, characterization, and attribution to a founder is misleading and inaccurate. Plaintiff does not allege that the "founder" is even an LDO tokenholder or otherwise part of the Plaintiff's invented "partnership." This was the "founder's" sole post about Lido DAO (*see* https://research.lido.fi/u/Lidosaviour/summary). The cited language was contained in a revenue share staking proposal *that was rejected* by LDO tokenholder votes. (*See* https://research.lido.fi/t/activate-lido-protocol-governance-with-revenue-share-staking/6738/31).
In relevant part, it states, "Q: Is this proposal likely to increase the potential of SEC enforcement action?  A: The Lido DAO is a fully decentralized organization with no legal entities [. . .] Lido has not received any enforcement or warning communication from any US-based regulatory body to date."      (https://research.lido.fi/t/activate-lido-protocol-governance-with-revenue-share-staking/6738).  In the same post, the user acknowledged that his revenue sharing proposal could "perhaps" result in "additional regulatory scrutiny." (*Id.*)

/ / /

---

[1] https://research.lido.fi/t/proposal-introducing-ldo-staking/4636/37 (emphasis added).

## II. ARGUMENT

### A. Plaintiff's AC Should Be Dismissed for Lack of Subject Matter Jurisdiction

Plaintiff has not plausibly alleged that Lido DAO possesses the legal characteristics of either a partnership or an unincorporated association. Accordingly, he has not met his burden to establish subject matter jurisdiction. *See Mocha Mill, Inc. v. Port of Mokha, Inc.*, 2019 WL 1048252, at *4 (N.D. Cal. Mar. 5, 2019) (determining that only legal entities can be sued).

#### (1) Plaintiff Fails to Plead the Existence of a Partnership

Plaintiff's opposition fails to explain what Lido DAO *is*, much less whether it qualifies as a partnership under California law.[2] On the one hand, Plaintiff argues that "Lido DAO is the crypto equivalent of the company 'Microsoft'—the one with tens of thousands of employees and investors—not Microsoft Excel, a piece of software that the company produces." (Opp. at 5.) He further contends "Lido DAO" was "created by three people" who also incorporated entities to "run Lido DAO's website[.]" (Opp. at 6.) Those people are all identified by name in the AC. (AC at ¶ 5.) To advance his forum shopping agenda, Plaintiff sued the venture capital ("VC") firms who allegedly acted in concert with the founders:

> As initially distributed, Silicon Valley venture capitalists and Lido's founders controlled 64% of the tokens, giving them full control of the business. AC ¶ 32; see generally RJN (citing nothing to contest this proposition). **The insiders controlling Lido DAO use that control to run a business** where users have, so far, staked more than $30 billion of Ether and where Lido DAO charges a 5% fee that is kept in the DAO treasury.

(Opp. at 6–7) (emphasis added). If this theory is to be credited, Lido DAO is a centralized business controlled by a small group of insiders known to and identified by Plaintiff, and either named in the

---

[2] A partnership is "the association of two or more persons to carry on as co-owners a business for profit." Cal. Corp. Code § 16202(a)). For pleading purposes, Plaintiff must assert specific factual allegations demonstrating that: (1) members of the partnership manifested an *intention* "to carry on a definite business as co-owners"; *In re PFA Ins. Mktg. Litig.*, 696 F. Supp. 3d 822, 856 (N.D. Cal. 2022) (internal citations omitted); (2) the partners participated in "the management of the business;" *EcoHub, LLC v. Recology Inc.*, 2023 WL 3852700, at *7 (N.D. Cal. June 6, 2023) ("To participate to some extent in the management of a business is a primary element in partnership organization, and it is virtually essential to a determination that such a relationship existed." (quoting *Fredianelli v. Jenkins*, 931 F. Supp. 2d 1001, 1020 (N.D. Cal. 2013)) and (3) the partners "either explicitly agree to share profits or engage in conduct from which an agreement to do so may be assumed." *In re PFA Ins. Mktg. Litig.*, 696 F. Supp. 3d. at 856.

3
DOLPHIN CL, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT

AC or sued.

On the other hand, and in direct contradiction to the claim that Lido DAO was nothing more than a centralized business created by three founders and the four "Silicon Valley venture capitalists," Plaintiff argues that Lido DAO is a general partnership "jointly operated by 'large' holders of LDO voting those tokens to cause the DAO to make business decisions." (Opp. at 6.) What "large" means here is undefined. And it is squarely at odds with the argument that Lido DAO is a centralized business controlled by the VC defendants and "founders."

In short, Plaintiff has already filed a lawsuit against people it claims created Lido DAO as a centralized business and has identified the people it claims created that centralized business. But for strategic reasons, Plaintiff seeks to extend liability connected with this purported centralized business to an amorphous class of "large" LDO holders. This makes no sense as a matter of corporate law. If Lido DAO's creators are analogous to Microsoft, as Plaintiff advances, then his focus on large tokenholders is akin to suing Microsoft's stockholders for alleged wrongful conduct by management. This theory is untenable for Microsoft because stockholders do not bear such liabilities. Imposing liability on tokenholders is nonsensical because tokens are equally fungible assets. The only reason Plaintiff asks this Court to stretch the bounds of corporate law is to avoid application of the *in pari delicto* doctrine. Under the *in pari delicto* doctrine, Plaintiff cannot assert a claim under Section 12 of the Securities Act if he "bears at least substantially equal responsibility for the underlying illegality." *Pinter v. Dahl*, 486 U.S. 622, 635–36 (1988). That is exactly the case here, as Plaintiff acknowledges that he was a tokenholder and sold LDO tokens. (AC ¶ 10.)

Plaintiff's Opposition and AC offer no plausible allegation that any group of Lido DAO tokenholders consented to create a company or conduct business together. The ordinary manner by which a partnership is established is by written or oral agreement. *See In re PFA Ins. Mktg. Litig.*, 696 F. Supp. 3d. at 856. Here, no such agreement exists in any form. Instead, Plaintiff asserts it is sufficient to allege that certain unidentified tokenholders "have the capacity to meaningfully participate in Lido DAO's business." (*See* Opp. at 6.) Not so. Even assuming a group of tokenholders could be distinguished by such a criterion (they cannot) it would nonetheless fail to establish a common understanding among co-owners of a business. *See, e.g.*, *Unknown Parties v.*

4

*Google LLC*, 2024 WL 1892291, at *1 (N.D. Cal. Apr. 29, 2024) (finding that there was no partnership between media platform and content creator because plaintiff did not allege a common understanding to be "co-owners" for a business).

More fundamentally, Plaintiff cannot establish an intent to form a partnership because LDO tokens are freely transferable and can be purchased by anyone, with no approval by purported existing partners. Plaintiff's unprecedented theory is that partners may unilaterally enter and exit a partnership without anyone else's consent, or knowledge, and thereby become jointly and severally liable. (Opp. at 7.) This runs contrary to the mutual selection doctrine and blackletter law that "[a] person may become a partner only with the consent of all of the partners." Cal. Corp. Code § 16401(i). Plaintiff offers no authority for the proposition that a partnership may swell in its ranks without affirmative consent among existing partners. Instead, Plaintiff argues (for the first time) that LDO tokenholders "consent to admit partners who buy enough tokens by agreeing to a governance structure in which this is possible." (Opp. at 7.) Of course, no such governance structure exists. And an implied consent argument fails because default corporate law, such as Cal. Corp. Code § 16401(i), can only be modified by express written agreement. *See S.E.C. v. Schooler*, 2014 WL 3858257, at *5 (S.D. Cal. July 30, 2014) ("[W]ithout a written agreement, such a partnership would be governed by the default rules of California's Corporations Code."); *In re Marriage of Geraci*, 144 Cal. App. 4th 1278, 1293 (2006).

Plaintiff also mischaracterizes the well-established "mutual selection" doctrine. In *Rivlin v. Levine*, the court held that no partnership was formed through the indiscriminate sale of securities because "all general partnerships, and also in bona fide limited partnerships, there is the right of *delectus personarum*, the right to determine membership." 195 Cal. App. 2d 13, 25 (1961). The mutual selection doctrine is well-recognized by both the judiciary and academia.[3] No court has

---

[3] *See, e.g.*, *Solomont v. Polk Dev. Co.*, 245 Cal. App. 2d 488, 54 Cal. Rptr. 22 (1966); *Farnsworth v. Nevada-Cal Mgmt.t, Ltd.*, 188 Cal. App. 2d 382, 10 Cal. Rptr. 531 (1961). Dahlquist, *Regulation and Civil Liability Under the California Corporate Securities Act*, 33 Calif. L. Rev. 343, 357 (1947); Frizell, *Sale of Limited Partnership Interests: Rivlin v. Levine*, 14 Hastings L.J. 176 (1962); Higgins, *Comment, Is a Limited Partnership Interest a Security: The Current State of the California and Federal Definitions Add a Legal Dimension to Economic Speculation*, 16 Santa Clara L. Rev. 311 (1976).

5

DOLPHIN CL, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT

adopted the illusory distinction proposed by Plaintiff that an entity can be treated as a partnership, absent *delectus personarum*, if the partnership is a phony partnership. (*See* Opp. at 4–10.) Such a "phoniness" test would run contrary to *Rivlin*'s holding. *See* 195 Cal. App. 2d at 25.

*Second*, Plaintiff fails to plausibly allege that LDO tokenholders exercised "management of the business." The Lido DAO software sets limited parameters of the broader Lido smart contract system on Ethereum. (*See* [https://github.com/lidofinance/audits/blob_/main/Statemind%20Lido%20roles%20analysis%2010-2023.pdf](https://github.com/lidofinance/audits/blob_/main/Statemind%20Lido%20roles%20analysis%2010-2023.pdf)). The fact that these software users set parameters through voting is not functionally equivalent to managing a business. Lido DAO has no other powers than software parameter-setting, and lacks the ability to write new software, manage "offchain software"—including, *e.g.*, web portals likehttps://lido.fi , hire or fire workers, or otherwise engage in business activities. However, there is a community of individuals that independently own separate businesses and conduct the above activities as they embrace the romantic and philanthropic philosophy of Lido DAO to "keep Ethereum decentralized, accessible to all, and resistant to censorship." It is only natural for individuals in this community to seek alignment with this philosophy by seeking input from the Lido protocol community in the form of advisory "signaling votes" open to any LDO token holder like Plaintiff. This sort of illusory *input* does not support the formation of a partnership. *See, e.g.*, *EcoHub, LLC v. Recology Inc.*, 2023 WL 3852700, at *7 (N.D. Cal. June 6, 2023) (no partnership where "[t]he allegations related to EcoHub's participation in the planning and proposal process indicate input, but not a right to control or manage the process").

*Third*, Plaintiff fails to plausibly allege a *for-profit* business because there is no express or implied agreement as to how profits and losses are distributed. *People v. Park*, 87 Cal. App. 3d 550, 564 (Ct. App. 1978) (finding no partnership where "parties agreed only with respect to the sharing of profits, but made no provisions as to the distribution of losses"). The ownership of an LDO token does not grant the holder a right to share in profits and losses. Plaintiff claims that AH Capital Management "publicly stated its desire to earn money from the enterprise." (Opp. at 10 (citing AC ¶ 35).) But, as discussed above (*supra* § I), the cited proposal disclaimed a profit motive and encouraged a "focus on growth and product technical development."

While irrelevant, Plaintiff's suggestion that Lido DAO is a partnership because tokenholders

1  voted to appoint Dolphin to appear on its behalf" (Opp. at 4 n.2) is without merit. It is Plaintiff's
2  confused definition of Lido DAO which necessitates this limited appearance. Plaintiff has not
3  articulated *who* is a member of the Lido DAO partnership or *how* they can be determined. This coy
4  pleading theory deprives the ostensible defendant from knowing whether it has been sued. In any
5  event, Plaintiff mischaracterizes the nature of Dolphin's limited appearance. Dolphin is making a
6  limited appearance "with respect" to Lido DAO at the behest of certain Lido DAO tokenholders to
7  avoid a default judgment against Lido DAO for which they might be held liable. These tokenholders
8  do not purport to be Lido DAO or represent *all* LDO tokenholders. It is common practice for a
9  third-party to make a limited appearance to challenge that the wrong party, or a nonexistent party,
10 has been sued. *See, e.g.*, *Banks.com, Inc. v. Keery*, 2010 U.S. Dist. LEXIS 17850, at *19 (N.D. Cal.
11 Mar. 1, 2010); *Ou-Young v. Roberts*, 2013 WL 6732118, at *3 (N.D. Cal. Dec. 20, 2023) *In re
12 Westville Distribution & Transp.*, 293 B.R. 101, 101 (Bank. D. Conn. 2003) (permitting limited
13 purpose appearance to file a motion to dismiss against a non-existent defendant).

14       Plaintiff's central authority is clearly distinguishable. In *Sarcuni v. bZx DAO*, 664 F. Supp.
15 3d 1110 (S.D. Cal. 2023), the court held that *all tokenholders* in bZx DAO had formed a partnership
16 because they could each "suggest and vote on governance proposals," "chang[e] organizational
17 goals and policies" and "distribut[e] treasury assets to tokenholders." 664 F. Supp. 3d at 1116.
18 Here, by contrast, Plaintiff alleges that only a small subset of LDO tokenholders can meaningfully
19 participate in governance (Opp. at 6), and that voting rights (which would implicate Plaintiff) are
20 not sufficient to create a partnership (AC ¶¶ 5, 33). *Sarcuni* is further distinguishable because Lido
21 DAO did not adjust its corporate form to evade regulation when it formed the DAO. *See Sarcuni*,
22 664 F. Supp. 3d at 1118. Plaintiff's suggestion to the contrary is based on a mischaracterization of
23 a statement by an alleged Lido DAO founder. (AC ¶ 29; Opp. at 5.) As discussed above (*supra* §
24 I), the language (partially) quoted by Plaintiff was made by a one-time user who acknowledged
25 potential regulatory scrutiny and whose proposal was rejected.

26              **(2)     Lido DAO Is Not an Unincorporated Association.**

27       Plaintiff argues *for the first time* in his Opposition that Lido DAO is an "unincorporated
28 association." (Opp. at 7.) This unpled theory cannot be considered on a motion to dismiss. *See*

FED. R. CIV. P. 15.  In any event, leave to amend should not be granted because this new theory is futile.  Lido DAO is not an unincorporated association.  An unincorporated association is "an unincorporated group of two or more persons joined by mutual consent for a common lawful purpose, whether organized for profit or not."  Cal. Corp. Code § 18035(a).  Neither mutual consent nor common purpose can be established here, and Lido DAO "is not automatically an unincorporated association" by default.  *See Brown v. Fifth Judicial Dist. Drug Task Force*, 255 F.3d 475, 477 (8th Cir. 2001).

*First*, there is no indicia of any consent, implied or otherwise, to the formation of an unincorporated association.  An organic assembly of individuals is not sufficient to imply consent.  *See, e.g.*, *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 963 (Cal. Ct. App. 2003) (finding that members who had never done anything as a group or even met were not an unincorporated association); *Juhl v. Airington*, 936 S.W.2d 640, 641, 643 n.2 (Tex. 1996) (An unincorporated association was not formed where protestors met together the night before a demonstration and reconvened the next morning for the demonstration).  Here, Plaintiff has not coherently defined any group of purported members but, assuming the sole association is among purchasers of LDO Tokens, it is insufficient to imply consent.  (*Supra* § II(A)(1).)

*Second*, nothing about owning and voting a token on its own implies a "common purpose."  For instance, in cases where a common purpose could be derived, the putative members shared some aim and active collaboration, *e.g.*, hackers working together to create and distribute unauthorized derivative versions of mobile applications.  *See Niantic, Inc. v. Global*, 2019 WL 8333451, at *1, 3 (N.D. Cal. Sept. 26, 2019).  Here, the putative association is formed by tokenholders with disparate and adverse objectives.  (*See* Mot. at 7.)  The adversity among them does not represent mere competing views as to the same common goal:  *e.g.*, a difference among directors as to what represents a profit maximizing business plan.  It goes to the fundamental purpose of what, if anything, is the operative enterprise.  Lido DAO's mission statement as reflected in a public proposal is to "keep Ethereum decentralized, accessible to all, and resistant to censorship."  (*See* https://snapshot.org/#/lido-snapshot.eth/proposal/0x739fbe56425d355b5e41c22bb346b7a8217afd

8

9e84aa49863648b1c641a482e3.)  As such, the only common goal is to afford parties neutrality to pursue disparate (and rivalrous) goals, which is reflected in practice.  (*See* Mot. at 3 n.4.)

    **B.**  **Plaintiff's Fails to Make a Prima Facie Showing of Personal Jurisdiction**

    Plaintiff has not met his burden to establish personal jurisdiction because: (1) Lido DAO is not a legal entity capable of maintaining minimum contacts with the United States and (2) even if Lido DAO were a legal entity, it does not have minimum contacts with the United States.  15 U.S.C. § 77v(a); *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182 (9th Cir. 2002) (plaintiff bears burden of making *prima facie* showing of personal jurisdiction).

    *First*, Lido DAO does not exist as a legal entity because it is mere software.  (*Supra* at § II(A); Mot. at 3).  This means that it cannot engage in forum-related activities that would give rise to personal jurisdiction.  *See Jones v. Medtronic Inc.*, 411 F.Supp.3d 521, 528 (D. Ariz. 2019) (finding no personal jurisdiction where defending parties "are not legal entities"); *Beserra v. Allied Ins.*, 2014 WL 12610192, at *1 (C.D. Cal. June 6, 2014) (dismissing claims because "trade names and not actual legal entities"); *Arias v. Universal Music Grp.*, 640 F. Supp. 3d, 89 (D. D.C. 2022) (same for division of company); *Senne v. Kan. City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 995 (N.D. Cal. 2015) (finding association's contacts were not expressly aimed at forum).

    *Second*, even if Lido were a partnership, its conduct was not directed to the United States. Conclusory assertions regarding acts of non-parties such as Jacob Blish (*see* AC ¶ 52) do not establish that Lido DAO "has regularly and intentionally engaged in online cryptocurrency transactions with United States."  *Cox v. CoinMarketCap OPCO, LLC*, 2024 WL 3748982, at *10 (9th Cir. Aug. 12, 2024); *see also S.E.C. v. Alexander*, 2003 WL 21196852, at *3 (S.D.N.Y. May 20, 2003) (owning a foreign brokerage account used by others to trade U.S. securities is fails to demonstrate purposeful availment).  Likewise, *CFTC v. Ooki Dao*, 2023 WL 5321527 (N.D. Cal. June 8, 2023) is distinguishable.  There, the "Token Holders voted their tokens *while in the United States*" and "advertis[ed] Ooki DAO on Twitter *while they were in the United States*."  (*Id.* at *4.) Conduct alleged here did not occur in the United States.  (AC ¶¶ 5, 55, 59.)

    **C.**  **Plaintiff's Fails to State a Section 12(a)(1) Securities Act Claim**

    Plaintiff's claim under Section 12(a)(1) of the Securities Act fails because he does not allege

9

that Lido DAO is a statutory seller or that he acquired LDO tokens in a public offering.

Lido DAO is not a statutory seller because it did not solicit Plaintiff's purchase of tokens.[4] The solicitations discussed in the AC are not attributable to Lido DAO—whose alleged business is staking and not selling securities— and were never encountered by Plaintiff. A solicitation claim must specifically assert how the defendant "actively and directly solicited, communicated with, or negotiated with [p]laintiffs in connection with their stock purchases." *See In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *19 (N.D. Cal. Oct. 31, 2014); *see also Baker v. Seaworld Ent., Inc.*, 2016 WL 2993481, at *18 (S.D. Cal. Mar. 31, 2016); *In re AGS, Inc. Sec. Litig.*, 2022 WL 17406100, at *4 (D. Nev. Dec. 2, 2022). Here, the purported solicitations consist of tweets from non-parties Gemini, Kraken, Crypto.com, and Jacob Blish. (*See* AC 54.) Lido DAO is not equivalent to those non-parties. *See* FED. R. CIV. P. 4(m). Plaintiff also fails to allege that he viewed the tweets. *See, e.g., Hollifield v. Resolute Cap. Partners Ltd., LLC*, 2023 WL 4291524, at *6 (C.D. Cal. May 12, 2023) (dismissing claim where plaintiff did "not allege that [he] attended any seminars or dinners or listened to any radio shows").

Plaintiff also fails to plead a purchase in a *public offering*. (*See* ECF No. 67.) Section 5 bars sales or offers through a "prospectus or *otherwise*" without a registration statement in effect. The phrase "prospectus or otherwise" indicates that scope of liability is limited to offerings similar to a prospectus, *i.e.*, public offerings. *See Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*, 1998 WL 2016634, at *6-7 (N.D. Cal. Sept. 14, 1998) (dismissing Section 12(a)(1) claim for failure to allege sale "pursuant to a public offering"); *Stack v. Lobo*, 903 F. Supp. 1361, 1375 (N.D. Cal. 1995) ("Section 12(2) applies only to initial public offerings, not secondary transactions.").

### III. CONCLUSION

For the foregoing reasons, Dolphin respectfully requests that the Motion be granted.

---

[4] Section 12(a)(1) claims under *Pinter* can proceed against two types of defendants: (1) one who "passed title, or other interest in the security, to the buyer for value; or (2) one who "successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve his own financial interest or those of the securities owner." 486 U.S at 642, 647. Here, there is no dispute that Lido DAO did not pass title to Plaintiff.

1 | DATED: August 22, 2024

**BROWN RUDNICK LLP**

By: */s/ Arjun Sivakumar*
Arjun Sivakumar (SBN: 297787)
2211 Michelson Drive
Seventh Floor
Irvine, CA 92612
Telephone:     (949) 752-7100
Facsimile:     (949) 252-1514
Email: asivakumar@brownrudnick.com


BROWN RUDNICK LLP
Stephen D. Palley (*pro hac vice*)
601 13th St NW #600
Washington, DC 20005
Telephone:     (202) 536-1766
Email: spalley@brownrudnick.com

Sigmund S. Wissner-Gross (*pro hac vice*)
Hayden A. Miller (*pro hac vice* forthcoming)
7 Times Square
New York, NY 10036
Telephone:     (212) 209-4800
Email: swissner-gross@brownrudnick.com
            hmiller@brownrudnick.com


METALEX PRO, LLP
ALEX GOLUBITSKY (SBN: 289236)
3013 Libby Ter
Richmond, VA 23223
Telephone: (206) 602-6045
Facsimile: (866) 301-2038

*Attorneys for Dolphin CL, LLC*