**LATHAM & WATKINS LLP**
Morgan E. Whitworth (CA Bar No. 304907)
 *morgan.whitworth@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

Susan E. Engel (Admitted *pro hac vice*)
 *susan.engel@lw.com*
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant AH Capital
Management, L.L.C.*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREW SAMUELS, on behalf of himself and all others similarly situated,<br><br>                              Plaintiff,<br><br>              v.<br><br>LIDO DAO, a general partnership; AH CAPITAL MANAGEMENT, LLC; PARADIGM OPERATIONS LP; DRAGONFLY DIGITAL MANAGEMENT LLC; ROBOT VENTURES LP,<br><br>                              Defendants. | Case No. 3:23-cv-06492-VC<br><br>**DEFENDANT AH CAPITAL MANAGEMENT, L.L.C., DRAGONFLY DIGITAL MANAGEMENT LLC, AND PARADIGM OPERATIONS LP'S NOTICE OF MOTION AND MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: Jan. 23, 2025<br>Time: 10:00 a.m.<br>Court: Courtroom 4 – 17th Floor<br>Judge: Hon. Vince Chhabria |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 23, 2025, at 10:00 a.m. in Courtroom 4 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Defendants AH Capital Management, L.L.C. ("a16z"), Dragonfly Digital Management LLC ("Dragonfly"), and Paradigm Operations, LP ("Paradigm") will and hereby do move for an order certifying this Court's November 18, 2024 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

This motion is based on a16z, Dragonfly, and Paradigm's Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the pleadings and papers on file in this action, the arguments of counsel, and any other matter that the Court may properly consider.

## STATEMENT OF ISSUES TO BE DECIDED

Pursuant to 28 U.S.C. § 1292(b), Defendants move for certification of this Court's November 18, 2024 Order denying their motions to dismiss on the following grounds:

1. The November 18, 2024 Order resolves controlling questions of law regarding the requirements for pleading a solicitation claim under Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77*l*(a)(1), including whether a plaintiff must allege that he (1) was aware of a defendant's alleged solicitation and (2) purchased in a public offering.

2. There is a substantial ground for difference of opinion on these questions.

3. An immediate appeal from the November 18, 2024 Order may materially advance the termination of this litigation.

DATED: December 18, 2024          LATHAM & WATKINS LLP

                                  */s/ Susan E. Engel*
                                  Susan E. Engel (Admitted *pro hac vice*)
                                    susan.engel@lw.com
                                  555 Eleventh Street, N.W., Suite 1000
                                  Washington, D.C. 20004-1304
                                  Telephone: +1.202.637.2200

                                  Douglas K. Yatter (SBN 236089)
                                    douglas.yatter@lw.com
                                  Benjamin Naftalis (Admitted *pro hac vice*)
                                    benjamin.naftalis@lw.com

1                         Samir Deger-Sen (Admitted *pro hac vice*)
     samir.deger-sen@lw.com

2                         Peter Trombly (Admitted *pro hac vice*)
     peter.trombly@lw.com

3                         1271 Avenue of the Americas
New York, NY 10020

4                         Tel: +1 (212) 906-1200

5                         Morgan E. Whitworth (CA Bar No. 304907)
     morgan.whitworth@lw.com

6                         505 Montgomery Street, Suite 2000
San Francisco, CA 94111

7                         Telephone: +1.415.391.0600

8                         *Attorneys for Defendant AH Capital Management, L.L.C.*

9

10                         MORRISON COHEN LLP

11                         */s/ Jason Gottlieb*

12                         Jason Gottlieb (Admitted *pro hac vice*)
Michael Mix (Admitted *pro hac vice*)

13                         Rachel Fleder (Admitted *pro hac vice*)
909 Third Avenue

14                         New York, New York,10022
jgottlieb@morrisoncohen.com

15                         mmix@morrisoncohen.com
rfleder@morrisoncohen.com

16                         (212) 735-8600

17                         LONDON & NAOR P.C.

18                         Ellen London
1999 Harrison St., Suite 655

19                         Oakland, CA 94612
elondon@londonnaor.com

20                         (415) 862-8494

21                         *Attorneys for Defendant*

22                         *Dragonfly Digital Management LLC*

23                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

24                         */s/ Alexander C. Drylewski*

25                         Alexander C. Drylewski (Admitted *pro hac vice*)
alexander.drylewski@skadden.com

26                         One Manhattan West

27                         New York, NY 10001
Tel: +1 (212) 735-3000

28

Peter B. Morrison (SBN 230148)
peter.morrison@skadden.com
Zachary M. Faigen (SBN 294716)
zack.faigen@skadden.com
2000 Avenue of the Stars, Suite 200N
Los Angeles, CA 90067
Tel: +1 (213) 687-5000

*Attorneys for Defendant Paradigm Operations LP*

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF THE ISSUES ...................................................................................... 1

II.   INTRODUCTION ........................................................................................................... 1

III.  BACKGROUND .............................................................................................................. 2

IV.   ARGUMENT .................................................................................................................... 5

    A.   The Solicitation Question Warrants Certification ................................................ 5

        1.   The Solicitation Question Is A "Controlling Question Of Law" ............................................................................................................... 5

        2.   There Is "Substantial Ground For Difference Of Opinion" On The Solicitation Question .................................................................... 6

        3.   Resolving The Solicitation Question May "Materially Advance The Ultimate Termination Of The Litigation" ......................... 11

    B.   The Public Offering Question Warrants Certification ........................................ 11

        1.   The Public Offering Question Is A "Controlling Question Of Law" .......................................................................................................... 11

        2.   There Is "Substantial Ground For Difference Of Opinion" On The Public Offering Question ............................................................. 12

        3.   An Immediate Appeal "May Materially Advance The Ultimate Termination Of The Litigation" ................................................ 15

V.    CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

## CASES

*Ballay v. Legg Mason Wood Walker, Inc.*,
    925 F.2d 682 (3d Cir. 1991)................................................................................................... 13

*Brickman v. Facebook, Inc.*,
    2017 WL 1508719 (N.D. Cal. Apr. 27, 2017) ...................................................................... 6, 12

*City of Oakland v. Wells Fargo Bank, N.A.*,
    2018 WL 7575537 (N.D. Cal. Sept. 5, 2018) .......................................................................... 5

*Clark v. Rameker*,
    573 U.S. 122 (2014)............................................................................................................... 15

*Dalie v. Pulte Home Corp.*,
    636 F. Supp. 2d 1025 (E.D. Cal. 2009).................................................................................. 15

*Doe 1 v. Github, Inc.*,
    2024 WL 4336532 (N.D. Cal. Sept. 27, 2024) ............................................................... passim

*Emp'rs Ins. of Wausau v. Musick, Peeler, & Garrett*,
    948 F. Supp. 942 (S.D. Cal. 1995) ........................................................................................ 15

*Ferrie v. Woodford Rsch., LLC*,
    2020 WL 3971343 (W.D. Wash. July 14, 2020) ..................................................................... 8

*Finder v. Leprino Foods Co.*,
    2016 WL 4095833 (E.D. Cal. Aug. 1, 2016), *aff'd*, 2022 WL 2167791 (9th
    Cir. June 12, 2022)................................................................................................................. 11

*Fischer v. United States*,
    603 U.S. 480 (2024)...................................................................................................... 4, 13, 14

*Gibson v. Vanisi*,
    2005 WL 165382 (D. Utah Jan. 25, 2005)............................................................................ 13

*Gustafson v. Alloyd Co.*,
    513 U.S. 561 (1995)........................................................................................... 4, 13, 14, 15

*Holland v. GEXA Corp.*,
    161 F. App'x 364 (5th Cir. 2005) .......................................................................................... 13

*Hollifield v. Resolute Capital Partners Ltd.*,
    2023 WL 4291524 (C.D. Cal. May 12, 2023) .............................................................. 2, 4, 5, 7

*Houghton v. Leshner*,
    2023 WL 6826814 (N.D. Cal. Sept. 20, 2023) .................................................................... 8, 9

*In re Cement Antitrust Litig. (MDL No. 296)*,
 673 F.2d 1020 (9th Cir. 1981) ..................................................................... 5, 6, 11

*In re Kia Hyundai Vehicle Theft Litig.*,
 2024 WL 1135736 (C.D. Cal. Jan. 29, 2024) ................................................... 5, 12

*In re Tezos Sec. Litig.*,
 2018 WL 4293341 (N.D. Cal. Aug. 7, 2018) ............................................................ 8

*J.B. v. G6 Hosp., LLC*,
 2021 WL 6621068 (N.D. Cal. Dec. 16, 2021) ....................................................... 12

*Kainos Laboratories, Inc. v. Beacon Diagnostics, Inc.*,
 1998 WL 2016634 (N.D. Cal. Sept. 14, 1998) ............................................. 2, 5, 13

*Kerrigan v. Visalus, Inc.*,
 2016 WL 892804 (E.D. Mich. Mar. 9, 2016) ....................................................... 2, 8

*Lewis v. Fresne*,
 252 F.3d 352 (5th Cir. 2001) ............................................................................. 2, 13

*Marx v. Gen. Revenue Corp.*,
 568 U.S. 371 (2013) ............................................................................................... 14

*Mills v. Target Corp.*,
 2021 WL 12300105 (C.D. Cal. Oct. 15, 2021) ...................................................... 12

*Murray v. UBS Sec., LLC*,
 601 U.S. 23 (2024) ................................................................................................. 15

*Nat'l Ass'n of Afr.-Am. Owned Media v. Charter Commc'ns, Inc.*,
 2016 WL 10647193 (C.D. Cal. Dec. 12, 2016) ....................................................... 6

*Owen v. Elastos Found.*,
 2021 WL 5868171 (S.D.N.Y. Dec. 9, 2021) .......................................................... 12

*Pino v. Cardone Capital, LLC*,
 55 F.4th 1253 (9th Cir. 2022) ..................................................................... 2, 3, 7, 10

*Pinter v. Dahl*,
 486 U.S. 622 (1988) ........................................................................................ passim

*Reese v. BP Exploration (Alaska) Inc.*,
 643 F.3d 681 (9th Cir. 2011) .................................................................................... 6

*Rensel v. Centra Tech, Inc.*,
 2019 WL 2085839 (S.D. Fla. May 13, 2019) .......................................................... 8

*United States v. Naftalin*,
 441 U.S. 768 (1979) ............................................................................................... 14

*Wilton Miwok Rancheria v. Salazar*,
    2010 WL 693420 (N.D. Cal. Feb. 23, 2010) ............................................................... 9

*Wisconsin Cent. Ltd v. United States*,
    585 U.S. 274 (2018) ................................................................................................... 15

*Zakinov v. Ripple Labs, Inc.*,
    2020 WL 922815 (N.D. Cal. Feb. 26, 2020) ............................................................. 12

## STATUTES

15 U.S.C. § 77d(a)(2) .......................................................................................................... 15

15 U.S.C. § 77e(a)(1) ................................................................................................... 13, 15

15 U.S.C. § 77*l*(a)(1) ............................................................................................................ 9

28 U.S.C. 1292(b) ...................................................................................................... 1, 5, 15

## TREATISES

16 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Juris.* (3d ed.,
    June 2024 update) ........................................................................................................ 6

## OTHER AUTHORITIES

H.R. Rep. No. 85, 73d Cong., 1st Sess. (1933) ................................................................. 13

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     STATEMENT OF THE ISSUES**

3

      1.      Whether a defendant can be liable to a plaintiff as a "statutory seller" under Section

4

12(a)(1) of the Securities Act of 1933 for soliciting the plaintiff's purchase of an alleged security

5

where the plaintiff does not plead that he ever saw, heard, or was aware of, the alleged solicitation

6

(the "Solicitation Question").

7

      2.      Whether plaintiffs who fail to plead that they purchased an alleged security in a

8

public offering by an alleged issuer or its controlling shareholders have stated a claim under

9

Section 12(a)(1) of the Securities Act of 1933 (the "Public Offering Question").

10

**II.     INTRODUCTION**

11

      Defendants respectfully request that the Court certify its November 18, 2024 Order denying

12

several Defendants' motions to dismiss ("Order") for interlocutory review pursuant to 28 U.S.C.

13

§ 1292(b) on two questions, both of which are "controlling question[s] of law" for which there is

14

"substantial ground for difference of opinion," and an immediate appeal with respect to those

15

questions "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

16

      *First*, the Court should certify the Solicitation Question for immediate appellate review.

17

Plaintiff seeks to hold Defendants liable as alleged partners of "Lido DAO" based on a theory that

18

Lido DAO acted as a "statutory seller" under Section 12(a)(1) by soliciting his purchase of LDO

19

tokens. But Plaintiff does not plead that he saw, heard, or was aware of any of the alleged

20

solicitations before he acquired his tokens. The Court permitted Plaintiff's claim to proceed,

21

reasoning that "if solicitation can be achieved through mass communications, and individual

22

plaintiffs do not need to have relied on or had their purchases caused by these communications, it

23

is unclear why a plaintiff would need to have seen them." Dkt. 115, Order at 21. Defendants submit

24

that holding a defendant liable as a "statutory seller" for an alleged solicitation the buyer never

25

saw, heard, or was aware of would contravene the plain language of Section 12, the ordinary and

26

commonly understood meaning of "solicitation" (as distinct from reliance or causation), and the

27

Supreme Court's holding in *Pinter v. Dahl*, 486 U.S. 622, 643-44 (1988), all of which require

28

some connection between the buyer and seller in order to permit Section 12(a)(1)'s remedy of

rescission. At a minimum, there is "substantial ground for difference of opinion" on this issue given that district courts—both before and after *Pino v. Cardone Capital, LLC*, 55 F.4th 1253 (9th Cir. 2022), both inside and outside the Ninth Circuit—have agreed with Defendants' position, indicating that this important issue requires clarification. *See, e.g.*, *Hollifield v. Resolute Cap. Partners Ltd.*, 2023 WL 4291524, at *6 (C.D. Cal. May 12, 2023); *Kerrigan v. Visalus, Inc.*, 2016 WL 892804, at *17 (E.D. Mich. Mar. 9, 2016). Further, this controlling issue of law would foreclose Plaintiff's claim and dispose of the litigation entirely, if decided in Defendants' favor. Therefore, Defendants request the opportunity to present this threshold legal question to the Ninth Circuit now.

*Second*, the Public Offering Question also warrants certification. Plaintiff purchased LDO tokens from an unidentified seller on Gemini, a secondary-market cryptocurrency exchange. The Court concluded that "the purchase of a security in a public offering is" not "an element of a Section 12(a)(1) claim" because "the sale of *any* unregistered security is covered by Section 5(a)(1)." Order at 23, 26. That holding regarding the essential elements of a Section 12(a)(1) claim is a controlling question of law; if Defendants are correct, Plaintiff's failure to plead a public-offering purchase would require dismissal and impose a more stringent pleading and proof burden. There are also substantial grounds for disagreeing with the Court's conclusion, which is inconsistent with the holdings of another court in this District and the Fifth Circuit on the same issue, *Kainos Laboratories, Inc. v. Beacon Diagnostics, Inc.*, 1998 WL 2016634, at *6-7 (N.D. Cal. Sept. 14, 1998); *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001), as well as with the Supreme Court's Securities Act and statutory-interpretation precedent. And as with the Solicitation Question, an immediate appeal to the Ninth Circuit would provide valuable guidance in this case.

This Court should certify either or both issues for appeal pursuant to Section 1292(b).

## III.    BACKGROUND

Lido is a novel software protocol that permits individuals to participate in Ethereum staking—a process by which users can enhance the security of the Ethereum network by validating transactions on the system. Dkt. 54 ("Amended Complaint" or "AC") ¶ 27.[1] The Lido system is a

---

[1] For purposes of this motion only, Defendants accept as true the facts pled in the AC.

collection of decentralized and autonomous smart contracts (*i.e.*, software) deployed to a blockchain, with certain parameters of those smart contracts governed by the Lido DAO—a term that refers to all holders of the "LDO" token. Holders of the LDO token can make proposals and vote to alter those parameters of the Lido protocol, subject to limits enshrined in the protocol's code, which were established by the protocol's creators. AC ¶¶ 20, 33.

On January 5, 2021, LDO tokens were distributed to "early stakers across Lido" through an airdrop. Dkt. 61-4 at 2-3. In April and May 2023, Plaintiff Andrew Samuels bought 132 LDO tokens from an unidentified third party on a secondary digital-asset platform. AC ¶ 10. In June 2023, Plaintiff sold his tokens for a loss, and six months later, he filed this action alleging that LDO is an unregistered security and "Lido DAO, GP" is liable as his "statutory seller" under Section 12(a)(1). Plaintiff does not allege that any Defendant directly sold LDO to him by passing title. Rather, he alleges that "Lido DAO" "successfully solicit[ed]" his purchase and thus should be liable to him for rescissionary damages. *Pinter*, 486 U.S. at 646. Plaintiff alleged that four other holders of LDO tokens, AH Capital Management, L.L.C., Paradigm Operations LP, Dragonfly Digital Management LLC, and Robot Ventures ("Investor Defendants"), should be held jointly and severally liable as alleged partners in the Lido DAO. AC ¶¶ 5-10.

In April 2024, the Investor Defendants moved to dismiss the AC, arguing, among other things, that Plaintiff failed to state a Section 12(a)(1) claim because he failed to plead (1) that he saw, heard, or was aware of any statement soliciting the purchase of LDO tokens, and (2) that he purchased LDO tokens in a public offering. Dkt. 60 at 6; Dkt. 61 at 5-7, 10-12; Dkt. 62 at 4-5.

On June 27, 2024, the Court heard argument on the Investor Defendants' motions. In response to the argument that Plaintiff did "not plead anywhere that [he] saw any of the solicitations at issue," the Court suggested that question should be presented to "the en banc [Ninth Circuit] or the Supreme Court," Dkt. 78, June 27, 2024 Hr'g Tr. 44:14-22, based on the Ninth Circuit's holding that "mass communications, directed to multiple potential purchasers at once" can constitute solicitations, *Pino*, 55 F.4th at 1258, 1260. The argument that Plaintiff must plead a purchase in a public offering also "gave [the Court] pause." June 27, 2024 Hr'g Tr. at 28:17-21.

The Court held further argument on September 5, 2024, and revisited "the public offering issue" because it was "very interested in the statutory interpretation argument." Dkt. 108, Sept. 5, 2024 Hr'g Tr. 30:13, 21-22. The Court concluded that Section 12(a)(1) is not limited to purchases in public offerings but acknowledged it was a "hard" and "very difficult issue" that the Court resolved "after staring at the statute for a rather long period of time." *Id.* at 32:21-23, 50:22-24.

On November 18, 2024, the Court issued the Order, denying the motions filed by each Investor Defendant except for Robot Ventures. Dkt. 115. As relevant here, the Court held Plaintiff adequately alleged that Lido DAO successfully solicited Plaintiff's LDO purchase, and thus was a statutory seller under Section 12(a)(1), because "alleged statements" by Lido DAO "about LDO's price and availability on exchanges and about participation in DAO governance are plausibly encouragements to purchase LDO." *Id.* at 20. The Court held that it did not matter that Plaintiff did not "allege that he saw any of Lido DAO's" statements because "if solicitation can be achieved through mass communications" and "individual plaintiffs do not need to have relied on or had their purchases caused by these communications, it is unclear why a plaintiff would need to have seen them." *Id.* at 20-21. The Court declined to follow *Hollifield*, which held that the plaintiffs had not pled "solicitation because they did not allege that they attended any of the seminars or dinners, or listened to any of the radio shows, through which some of the defendants allegedly engaged in solicitation." *Id.* at 21 n.6 (citing 2023 WL 4291524, at *6).

The Court also held that Section 12(a)(1) liability extends beyond sales "in a public offering." *Id.* at 23. Section 12(a)(1) "imposes liability on a person who 'offers or sells' a security in violation of Section 5," which prohibits selling unregistered securities "'through the use or medium of any prospectus or otherwise.'" *Id.* at 23 (citations omitted). The Court acknowledged that the Supreme Court has held, in the context of claims under Section 12(a)(2), that the term "'prospectus' . . . is 'confined to documents related to public offerings by an issuer or its controlling shareholders.'" *Id.* at 24 (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995)). And the Court recognized "as a general matter that 'otherwise' must be interpreted in light of the words preceding it." *Id.* at 26 (citing *Fischer v. United States*, 603 U.S. 480, 484-91 (2024)). But the Court held that "the phrase 'prospectus or otherwise' seems designed to ensure that the sale of

*any* unregistered security is covered by Section 5(a)(1)," "no matter what medium [a defendant is] using to sell" it. *Id.* at 23-24. After noting that it was "not clear whether the approach to statutory interpretation employed by the majority roughly thirty years ago in *Gustafson* is consistent with the [Supreme] Court's current approach," the Court concluded that "any prospectus *or otherwise*" in Section 5(a)(1) gives Section 12(a)(1) a "broader scope" than Section 12(a)(2), which "covers sales 'by means of a prospectus or oral communication.'" *Id.* at 24-26 (citation omitted). The Court also asserted that it would be "irrational" for Congress to make "purchase in a public offering . . . an element of [a Section 12(a)(1)] claim" pursuant to Section 5 and exempt "transactions by entities other than issuers, underwriters, and dealers" and "transactions by issuers 'not involving any public offering'" from liability under Section 4. *Id.* (citation omitted). The Order acknowledged that this ruling conflicted with *Kainos*, which "held that Section 12(a)(1) is limited to public offerings." *Id.* at 27 (citing 1998 WL 2106634, at *6-7).

## IV.    ARGUMENT

An order may be certified for interlocutory appeal where it (1) "involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion" and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Two distinct issues resolved by the Order satisfy all three requirements and provide independent grounds for certifying the Order for interlocutory appeal.

### A.    The Solicitation Question Warrants Certification

#### 1.    The Solicitation Question Is A "Controlling Question Of Law"

A question of law is controlling when resolving it "on appeal could materially affect the outcome of litigation." *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981). "A controlling question of law 'generally is a purely legal one that can be resolved quickly without delving into a particular case's facts.'" *Doe 1 v. Github, Inc.*, 2024 WL 4336532, at *1 (N.D. Cal. Sept. 27, 2024) (citation omitted). A dispute about the "contours" of an "element" is "a dispositive question of law and therefore controlling." *City of Oakland v. Wells Fargo Bank, N.A.*, 2018 WL 7575537, at *1 (N.D. Cal. Sept. 5, 2018); *In re Kia Hyundai Vehicle Theft Litig.*, 2024 WL 1135736, at *4 (C.D. Cal. Jan. 29, 2024) (question concerning requirements for establishing

1    "an essential element of negligence" was "controlling"). "[R]eversal of the underlying order need

2    not terminate the litigation in order" for a question to be "controlling." *Nat'l Ass'n of Afr.-Am.*

3    *Owned Media v. Charter Commc'ns, Inc.*, 2016 WL 10647193, at *4 (C.D. Cal. Dec. 12, 2016).

4    That standard is readily met here. The Solicitation Question "is a purely legal one that can

5    be resolved quickly without delving into a particular case's facts." *Github*, 2024 WL 4336532, at

6    *1 (citation omitted). Plaintiff does not plead that he ever saw, heard, or was aware of any

7    Defendant's alleged solicitation before he acquired LDO tokens. As explained below, Defendants

8    maintain that, as a result, Plaintiff was not "solicited" by Defendants in any sense of the word, let

9    alone "successfully solicited" as *Pinter* requires, and thus may not seek rescissionary damages

10   from Defendants under Section 12(a)(1). If Defendants are correct, then resolving this "issue on

11   appeal could materially affect the outcome of litigation," *In re Cement*, 673 F.2d at 1026, and

12   likely end it.

13                    **2.    There Is "Substantial Ground For Difference Of Opinion" On The**

14                    **Solicitation Question**

15   A "substantial ground for difference of opinion" exists if "reasonable jurists might disagree

16   on an issue's resolution." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). "One

17   of the best indications that there are substantial grounds for disagreement on a question of law is

18   that other courts have, in fact, disagreed." *Github*, 2024 WL 4336532, at *2 (citation omitted). But

19   even without "cases directly conflicting with the district court's construction of the law," "novel

20   and difficult questions of first impression" may warrant interlocutory review. *Reese*, 643 F.3d at

21   688 (citation omitted). "[T]he level of uncertainty required to find a substantial ground for

22   difference of opinion should be adjusted to meet the importance of the question in the context of

23   the specific case." *Brickman v. Facebook, Inc.*, 2017 WL 1508719, at *3 (N.D. Cal. Apr. 27, 2017)

24   (citation omitted). Where the answer to "an initial question" will determine if a litigation continues,

25   certification "may be justified at a relatively low threshold of doubt." 16 Charles Alan Wright &

26   Arthur R. Miller, *Fed. Prac. & Proc. Juris.* § 3930 (3d ed., June 2024 update).

27   The Solicitation Question presents a "novel and difficult question" as to which "reasonable

28   jurists might disagree." *Reese*, 643 F.3d at 688 (citation omitted). The Court held that Lido DAO's

1   "alleged statements about LDO's price and availability on exchanges and about participation in

2   DAO governance are plausibly encouragements to purchase LDO," given that "solicitation does

3   not need to be 'direct or personal to a particular purchaser.'" Order at 20 (quoting *Pino*, 55 F.4th

4   at 1259-60). But "[d]etermining that the activity in question falls within the definition of 'offer' or

5   'sell' in § 2(3) . . . is only half of the analysis. The second clause of § 12(1), which provides that

6   only a defendant *'from' whom* the plaintiff 'purchased' securities may be liable, narrows the field

7   of potential sellers" who may be subject to liability for a given plaintiff's purchase. *Pinter*, 486

8   U.S. at 643 (emphasis added). The Solicitation Question is directed to that second-clause analysis.

9   It asks: even assuming that the defendant engaged in solicitation, can the defendant be liable to a

10  plaintiff who never saw, heard, or was aware of that alleged solicitation?[2] That is a question about

11  which reasonable jurists not only *might* disagree, but already have. Given that, the Ninth Circuit

12  should address this threshold legal issue now, since it will materially impact the litigation.

13                    a.    Courts Already Disagree on the Solicitation Question

14        "One of the best indications that there are substantial grounds for disagreement on a

15  question of law is that other courts have, in fact, disagreed." *Github*, 2024 WL 4336532, at *2

16  (citation omitted). In contrast to the Order, district courts inside and outside the Ninth Circuit and

17  before and after *Pino* have held that a defendant cannot be liable for soliciting a plaintiff who never

18  saw, heard, or was aware of the solicitation. In a post-*Pino* case in California, Judge Blumenfeld

19  held that plaintiffs failed to plead a Section 12(a)(1) claim against the defendants because they "do

20  not allege that they attended any seminars or dinners or listened to any radio shows" where the

21  alleged solicitations occurred. *Hollifield*, 2023 WL 4291524, at *6. While this Court noted that

22  "*Hollifield* did not discuss or distinguish *Pino* in reaching this conclusion," Order at 21 n.6, Judge

23  Blumenfeld did cite *Pino* for the legal standard on "statutory seller" liability, and thus was clearly

24  aware of the case. *Hollifield*, 2023 WL 4291524, at *6.

25        Other district courts have reached the same conclusion as *Hollifield*. For example:

26

27

28   _____
     [2] For the avoidance of doubt, Defendants do not agree that the solicitations alleged in this case constitute solicitations under the first part of the analysis pursuant to the Securities Act and *Pinter*.

- *Rensel v. Centra Tech, Inc.,* 2019 WL 2085839, at *4 (S.D. Fla. May 13, 2019) ("In order to be considered a seller under Section 12, *Pinter* requires the Court to look at the defendant's relationship with the plaintiff-purchaser . . . Mayweather has no relationship with the Plaintiffs. The complaint does not allege that Plaintiffs follow Mayweather's twitter account or that they saw his posts or video with Centra Tech.");

- *Ferrie v. Woodford Rsch., LLC*, 2020 WL 3971343, at *9 (W.D. Wash. July 14, 2020) (distinguishing *Rensel* but accepting its premise, explaining that "*Rensel*'s holding was based on the plaintiffs' failure to allege they ever saw the promotional tweets or were motivated by them," whereas "Ferrie alleges that he purchased his 1% Club subscription and began investing after viewing the Webinar");

- *Kerrigan*, 2016 WL 892804, at *17 ("[W]hile Plaintiffs allege that the certain individual Defendants engaged in solicitation activities, they do not allege that they actually saw and/or were aware [of] the specific activities by the individual Defendants. Thus, even under the broader view of 'solicitation' urged by Plaintiffs, the individual Defendants do not qualify as Section 12(2) 'sellers.'").

The Court relied on two cases on this issue: *In re Tezos Securities Litigation*, 2018 WL 4293341 (N.D. Cal. Aug. 7, 2018), and *Houghton v. Leshner*, 2023 WL 6826814 (N.D. Cal. Sept. 20, 2023). Order at 20-21. The existence of conflicting authority supports certifying the question, *Github*, 2024 WL 4336532, at *1, and neither decision forecloses Defendants' position.

*Tezos* underscores the need for clarity on the Solicitation Question. In *Tezos*, the plaintiff's claim against a venture capitalist failed because there were no "averments that [plaintiff] was cognizant of, or influenced by, [the venture capitalist's] involvement in the Tezos project" and plaintiff cited no "authority . . . holding *Pinter* applicable in the absence of any buyer-seller contact whatsoever." 2018 WL 4293341, at *9. As to another defendant, however, *Tezos* held that alleging "comprehensive involvement" in an Initial Coin Offering in which plaintiff purchased sufficed to state a claim. *Id.* at *1, *3. These two holdings can be reconciled only because the former addresses solicitation, and the latter is best understood as addressing a passing-title theory of "statutory seller" liability. But the confusion in *Tezos* shows the Solicitation Question is subject to reasonable dispute.

In *Houghton*, the court misconstrued defendants' solicitation argument as being directed toward causation or reliance, which are not elements of a Section 12(a)(1) claim. 2023 WL 6826814, at *4 n.5. But the Solicitation Question does not ask whether a plaintiff relied on a solicitation; it asks if the plaintiff was "solicited" in the first place (or "successfully" solicited, as

1    *Pinter* requires), and thus had a connection to the defendant such that one could conclude "in any

2    meaningful sense" that he "purchase[d] the security from" the defendant. *Pinter*, 486 U.S. at 647,

3    651. Further, the plaintiffs in *Houghton* alleged that defendants "encourage[d] investors to invest

4    in COMP through 'education videos'" that defendants "created" and plaintiffs watched, thus at

5    least plausibly alleging a plaintiff-defendant relationship. 2023 WL 6826814, at *3 n.4; *see also*

6    *id.* at *4.

7            While Defendants believe they have the better argument and that the weight of district

8    court authority supports their position, it is clear that "reasonable jurists" can disagree, which

9    merits certifying the question. Moreover, with the increasing (and now near-ubiquitous) use of

10   online platforms to communicate and disseminate information, the Solicitation Question is sure to

11   arise in future cases. This, too, supports certifying the question. *See Wilton Miwok Rancheria v.*

12   *Salazar*, 2010 WL 693420, at *13 (N.D. Cal. Feb. 23, 2010) (certifying question because the "issue

13   is important not only for the Parties but to future litigants who may be similarly situated").

14                              b.    <u>There Are Good Arguments That a Defendant Cannot Be Liable for</u>
                                      <u>Soliciting a Plaintiff Who Did Not See or Hear the Solicitation</u>

15

16          The reason for the disagreement among district courts is that there are strong arguments

17   under the plain language of Section 12 and *Pinter* that a defendant cannot be liable to a plaintiff

18   for solicitation if the plaintiff did not hear, see, or have any awareness of the solicitation.

19          Under Section 12(a)(1), "any person who offers or sells [an unregistered] security . . . shall

20   be liable . . . to the person purchasing such security *from him*." 15 U.S.C. § 77l(a)(1) (emphasis

21   added). In *Pinter*, the Supreme Court explained "that the class of those from whom the buyer

22   'purchases' extend[s] to persons who solicit him." 486 U.S. at 645. But because Section 12

23   "provides that only a defendant 'from' whom the plaintiff 'purchased' securities may be liable,"

24   merely engaging in solicitation does not mean a defendant is liable to all subsequent purchasers.

25   *Id.* at 643. *Pinter* explains that the "'purchase from' requirement of § 12 focuses on the defendant's

26

27

28

relationship with the plaintiff-purchaser." *Id.* at 651. This relationship is required.[3] Otherwise, the "buyer does not, in any meaningful sense, 'purchase the security from' such a person." *Id.*

Here, Plaintiff does not allege that he saw, heard or was aware of any alleged solicitation by any Defendant before he acquired LDO tokens. Thus, the required "relationship" between Plaintiff and Defendants did not exist, and it cannot be said "in any meaningful sense" that Plaintiff purchased the alleged security at issue "from" any Defendant.

The Ninth Circuit's decision in *Pino* does not change the analysis. *Pino* addressed a single question: "The only issue we decide here is whether [defendants] count as persons who 'offer[] or sell[]' securities under § 12(a) based on their social media communications to prospective investors." 55 F.4th at 1257; *see also id.* at 1258 ("The question, then, is whether [defendants] 'engaged in solicitation.'"). Thus, *Pino* concerned the first "half of the analysis" under *Pinter*, *i.e.*, whether "the activity in question falls within the definition of 'offer' or 'sell'" and thus constitutes solicitation. *Pinter*, 486 U.S. at 643. The Court answered that question affirmatively. It held that "indirect, mass communications to potential investors through social media posts and online videos counts as 'engaging in solicitation' under *Pinter*." *Pino*, 55 F.4th at 1258, 1260. But *Pino* did not address the Solicitation Question: whether a defendant can be liable to a plaintiff who has no "relationship" with a defendant because the plaintiff never saw, heard, or had any awareness of the alleged solicitation. Nor did *Pino* have any reason to address it. Unlike here, the *Pino* plaintiff alleged he "attend[ed] a marketing presentation hosted by" defendant where defendant promoted the alleged security. *Id.* at 1256. Thus, the *Pino* plaintiff alleged he was, in fact, solicited by the defendants, thereby at least arguably pleading the required plaintiff-defendant relationship. That relationship having been pled, the Court did not require the plaintiff to allege that he specifically relied on any false statement to assert a misrepresentation claim under Section 12(a)(2). *Id.* at 1261.

Not only does Defendants' position faithfully apply the language of Section 12 and *Pinter*, expanding Section 12 liability in the way Plaintiff seeks to do would lead to results that contravene

---

[3] Indeed, without it, there is not even a causal connection between the defendant's alleged conduct and the plaintiff's alleged injury to support Article III standing.

1  *Pinter*. The Supreme Court made clear that "§ 12(1) imposes liability on only the buyer's

2  immediate seller; remote purchasers are precluded from bringing actions against remote sellers.

3  Thus, a buyer cannot recover against his seller's seller." *Pinter*, 486 U.S. at 643-44 n.21. Thus, if

4  a defendant passes title of an unregistered security, only the person who purchased that security

5  from him can hold him liable. If the purchaser later resells the security, the defendant is not liable

6  to that downstream buyer. But under Plaintiff's theory, *Pinter*'s "remote purchaser" limitation of

7  liability would disappear. In Plaintiff's view, a defendant who tweets a single solicitation about an

8  unregistered security is liable for rescission to every person who later purchases that security, even

9  if the same security is resold downstream, and even if none of the purchasers saw or was aware of

10  the defendant's tweet. Such unbounded liability is incompatible with *Pinter*, and nothing in Section

11  12 contemplates such vastly different liability for a defendant who passes title and one who solicits.

12

13  **3.    Resolving The Solicitation Question May "Materially Advance The Ultimate Termination Of The Litigation"**

14  Finally, the Solicitation Question involves an issue that, if Defendants are correct, will

15  resolve the litigation in its entirety. "[R]esolution of a question materially advances the termination

16  of litigation if it 'facilitate[s] disposition of the action by getting a final decision on a controlling

17  legal issue sooner, rather than later [in order to] save the courts and the litigants unnecessary

18  trouble and expense." *Github, Inc.*, 2024 WL 4336532, at *2 (quoting *Finder v. Leprino Foods

19  Co.*, 2016 WL 4095833, at *4 (E.D. Cal. Aug. 1, 2016), *aff'd*, 2022 WL 2167791 (9th Cir. June

20  12, 2022) (alterations in original)). The Solicitation Question meets that standard because Plaintiff

21  does not plead any passing-title theory and instead relies solely on the theory that Lido DAO

22  successfully solicited his sale and is thus a statutory seller.

23  **B.    The Public Offering Question Warrants Certification**

24  **1.    The Public Offering Question Is A "Controlling Question Of Law"**

25  The Court's conclusion that "the purchase of a security in a public offering is" not "an

26  element of a Section 12(a)(1) claim," Order at 26, "could materially affect the outcome of [this]

27  litigation," *In re Cement*, 673 F.2d at 1026. Plaintiff does not allege that he purchased LDO tokens

28  in a public offering from any Defendant or control person; instead, Plaintiff alleges that he

purchased on the secondary market using the cryptocurrency exchange Gemini. AC ¶¶ 10, 60. If Defendants' reading of Section 12(a)(1) is correct, Plaintiff has failed to plead an "essential element" of the cause of action. *In re Kia Hyundai Vehicle Theft Litig.*, 2024 WL 1135736, at *4. The "purely legal" question of whether a public-offering purchase is an element of a Section 12(a)(1) claim is well-suited to certification. *Github, Inc.*, 2024 WL 4336532, at *1.

Plaintiff suggests he can establish that "his purchase of the tokens *was* in a public offering," Order at 24 n.7, but that does not cure his existing pleading failure. And regardless, setting a "higher pleading and proof burden could materially affect the viability of Plaintiff's claim." *J.B. v. G6 Hosp., LLC*, 2021 WL 6621068, at *3 (N.D. Cal. Dec. 16, 2021). If Plaintiff "must plead" a public offering-purchase, he would have to "prove" such a purchase at summary judgment or trial—and no such burden exists under the Order. *Id.* Thus, if the Ninth Circuit "appl[ies] a different standard and reverse[s]" on the Public Offering Question, "the litigation could completely end or take a decidedly different path." *Brickman,* 2017 WL 1508719, at *2.

### 2. There Is "Substantial Ground For Difference Of Opinion" On The Public Offering Question

The Public Offering Question satisfies the second factor because the Order deepens a conflict among courts in this District and beyond as to whether Section 12(a)(1)—like Section 12(a)(2)—requires a purchase in a public offering.

This Court and "two other district courts have" applied Section 12(a)(1) to "secondary market transactions." *See* Order at 27 (citing *Zakinov v. Ripple Labs, Inc.*, 2020 WL 922815, at *11-12 (N.D. Cal. Feb. 26, 2020); *Owen v. Elastos Found.*, 2021 WL 5868171, at *12-14 (S.D.N.Y. Dec. 9, 2021)). In so holding, this Court declined to treat "purchase in a public offering [as] an element of [a Section 12(a)(1)] claim" and instead concluded that "the sale of *any* unregistered security is covered by Section 5(a)(1)." *Id.* at 23, 26.

As the Order reflects, however, there is no "consensus" on Section 12(a)(1)'s reach. *Mills v. Target Corp.*, 2021 WL 12300105, at *4 (C.D. Cal. Oct. 15, 2021) (citation omitted). The Order expressly disagreed with *Kainos*. Order at 27. There, Judge Patel explained that "[t]he 'public offering' requirement stated in *Gustafson* clearly extends to the other provisions in the 1933 Act,

1    including Section 12(1)." *Kainos*, 1998 WL 2016634, at *6. The *Kainos* plaintiff's failure to

2    "allege facts establishing that the sale of stock . . . was pursuant to a public offering" was fatal to

3    its Section 12(a)(1) claim. *Id.* at *7. The Order and *Kainos* cannot be reconciled on this point.

4         *Kainos* aligns with Fifth Circuit precedent. In *Lewis*, the court held that Section 12 "does

5    not apply to private transactions." 252 F.3d at 357. The court noted that "[a]lthough the *Gustafson*

6    case was brought under § 12(2) and not § 12(1), the language of the majority opinion encompasses

7    *all* of § 12."[4] *Id.* at 357 & n.4; *id.* (concluding that "Congress meant for § 12 to apply only to public

8    offerings" and noting that "'[t]he House Report'" recognized that "'§ 12 liability is imposed only

9    as to a document soliciting the public'" (citation omitted)); H.R. Rep. No. 85, 73d Cong., 1st Sess.,

10   9 (1933). The Fifth Circuit held that the plaintiff "fail[ed] to state a claim under the 1933 Act

11   because the transaction at issue was a private one that is not governed by § 12." *Lewis*, 252 F.3d

12   at 358; *see also Holland v. GEXA Corp.*, 161 F. App'x 364, 366 (5th Cir. 2005) (explaining that a

13   Section 12(a)(1) claim could not proceed without "any facts demonstrating the sale was actually a

14   public offering"); *Gibson v. Vanisi*, 2005 WL 165382, at *5 (D. Utah Jan. 25, 2005) (applying

15   *Lewis* and dismissing Section 12(a)(1) claim). As Fifth Circuit precedent confirms, "courts have,

16   in fact, disagreed" on the Public Offering Question. *Github*, 2024 WL 4336532, at *2.

17        There is thus substantial ground for difference of opinion on the Public Offering Question.

18   Regardless of "the [Supreme] Court's current approach," Order at 24, *Gustafson* instructs courts

19   to give "prospectus" a "consistent meaning throughout" the Securities Act that is "confined to

20   documents related to public offerings by an issuer or its controlling shareholders," 513 U.S. at 568-

21   70. If Congress wished to extend liability to *any* sale, it could have simply omitted the phrase

22   "through the use or medium of any prospectus or otherwise." 15 U.S.C. § 77e(a)(1). "Congress

23   would not ordinarily introduce a general term that renders meaningless the specific text that

24   accompanies it." *Fischer*, 603 U.S. at 487. And Congress presumably would have made

25   "abundantly clear" that Section 12(a)(1) extended to secondary market transactions if it intended

26

27

28   ---

     [4] In a case addressing a Section 12(a)(2) claim, the Third Circuit similarly reasoned that neither part of Section 12 applies to "aftermarket trading." *Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682, 691-92 (3d Cir. 1991) (noting the "limited scope of [Section] 12(1)").

MOT. TO CERTIFY INTERLOCUTORY APPEAL
CASE NO. 3:23-cv-06492-VC

1  a "major departure" from Section 12(a)(2) and from the Securities Act's "primar[y] concern[] with

2  the regulation of new offerings." *United States v. Naftalin*, 441 U.S. 768, 777-78 (1979).

3      Though this Court concluded that text and structure permit a Section 12(a)(1) claim based

4  on a secondary market purchase, reasonable judges could disagree on the best reading of text in

5  context. By reading "the phrase 'prospectus or otherwise'" to reach "the sale of *any* unregistered

6  security," Order at 23, the Order equates "or otherwise" with "or not." But *Fischer* casts doubt on

7  a reading that renders the entire phrase "though the use or medium of any prospectus or otherwise"

8  meaningless. That problem is not solved by asserting that "Sections 12(a)(1) and 5(a)(1)

9  contemplate a broader scope than does Section 12(a)(2)." *Id.* at 25. The former provisions apply

10 to "sales 'through the use or medium of any prospectus *or otherwise*,'" and the latter "covers sales

11 'by means of a prospectus or oral communication.'" *Id.* (citation omitted). In *Gustafson*, all agreed

12 that "oral communication" in Section 12(a)(2) "is restricted to oral communications that relate to

13 a prospectus." 513 U.S. at 567-68. The phrase "or otherwise" may be broader than "oral

14 communication," but a court interpreting either provision must "limit[] the broad language in light

15 of narrower terms that precede it." *Fischer*, 603 U.S. at 490.

16      Section 4's exemptions do not settle the issue. The Court emphasized the exemptions for

17 "transactions by entities other than issuers, underwriters, and dealers, and transactions by issuers

18 'not involving any public offering,'" reasoning that they would be surplusage if a public-offering

19 purchase was an element of Section 12(a)(1). Order at 25. But superfluity exists under the Court's

20 interpretation too. Under the Order, the statute would mean exactly the same thing if the words

21 "through the use or medium of any prospectus or otherwise" were omitted. "[T]he canon against

22 surplusage 'assists only where a competing interpretation gives effect to every clause and word of

23 a statute.'" *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013) (citation omitted).

24      Nor is the Securities Act unique in making a requirement "both an element and an

25 affirmative defense." Order at 26. Congress routinely requires plaintiffs to prove an element while

26 permitting defendants to disprove the same element. Whistleblower-retaliation claims under

27 several statutes, including Sarbanes-Oxley, require an employee to establish that protected activity

28 was a "contributing factor in [an] unfavorable personnel action" but let an employer avoid liability

1  if it "demonstrat[es], by clear and convincing evidence, that the employer would have taken the

2  same" action regardless to avoid liability. *Murray v. UBS Sec., LLC*, 601 U.S. 23, 28 & n.1, 36

3  (2024) (citation omitted) (identifying six statutes employing same framework). Just as causation

4  is both an element and an affirmative defense in whistleblower-retaliation claims, it would not be

5  "irrational" to treat a public-offering purchase the same way. Order at 26.[5]

6      Given courts' disagreement on this "very difficult issue," Sept. 5, 2024 Hr'g Tr. 50:22-24;

7  *supra* at 4, and the importance of providing clarity regarding Section 12's application to sales of

8  alleged securities on the secondary market, certification is warranted to allow the Ninth Circuit to

9  resolve the Public Offering Question.

10            **3.**       **An Immediate Appeal "May Materially Advance The Ultimate**

11                       **Termination Of The Litigation"**

12      As with the Solicitation Question, answering the Public Offering Question in Defendants'

13  favor "would be dispositive of [the sole] claim[] currently before this court." *Emp'rs Ins. of*

14  *Wausau v. Musick, Peeler, & Garrett*, 948 F. Supp. 942, 947 (S.D. Cal. 1995). And even if the

15  Order were reversed with leave to amend, that would avoid a situation where work must be redone

16  because a post-judgment appeal makes clear that the case was fully litigated on an incorrect legal

17  premise. *See Dalie v. Pulte Home Corp.*, 636 F. Supp. 2d 1025, 1030 (E.D. Cal. 2009).

18  **V.**    **CONCLUSION**

19      For all these reasons, this Court should certify the Order pursuant to 28 U.S.C. § 1292(b).

20

21

---

22  [5] In any event, under Defendants' reading, Section 4's "separate affirmative defense[s]" are not a mirror-image of Section 5's "element" of pleading a purchase "'through the use or medium of any

23  prospectus or otherwise.'" Order at 23, 26 (quoting 15 U.S.C. § 77e(a)(1)). Section 4 creates carveouts from Section 5 liability for sales that meet the "prospectus or otherwise" element but

24  nevertheless fall within an exemption. For example, a plaintiff who bought directly from an issuer close in time to a public offering might plausibly plead that he purchased through a "prospectus or

25  otherwise" under Section 5(a)(1), *i.e.*, through a "public offer[] by an issuer or its controlling shareholders," *Gustafson*, 513 U.S. at 570. But under Section 4(a)(2), the issuer could still avoid

26  liability by proving that the transaction was in fact private and did not "not involv[e] any public offering." 15 U.S.C. § 77d(a)(2). Thus, under Defendants' reading, Section 5's "prospectus or

27  otherwise" element "serves [an] exclusionary purpose," and Section 4's particularized exemptions supplement Section 5's limits. *Clark v. Rameker*, 573 U.S. 122, 132-33 (2014). Defendants'

28  reading gives Section 4's exemptions a more "modest" role than the Order's interpretation, but that is no reason to reject it. *Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 281-82 (2018).

1    Dated: December 18, 2024                    Respectfully submitted,

2

3                                               LATHAM & WATKINS LLP

4                                               /s/ Susan E. Engel
                                                Susan E. Engel (Admitted *pro hac vice*)
5                                                 susan.engel@lw.com
                                                555 Eleventh Street, N.W., Suite 1000
6                                               Washington, D.C. 20004-1304
                                                Telephone: +1.202.637.2200
7

8                                               Douglas K. Yatter (SBN 236089)
                                                  douglas.yatter@lw.com
                                                Benjamin Naftalis (Admitted *pro hac vice*)
9                                                 benjamin.naftalis@lw.com
                                                Samir Deger-Sen (Admitted *pro hac vice*)
10                                                samir.deger-sen@lw.com
                                                Peter Trombly (Admitted *pro hac vice*)
11                                                peter.trombly@lw.com
                                                1271 Avenue of the Americas
12                                              New York, NY 10020
                                                Tel: +1 (212) 906-1200
13

14                                              Morgan E. Whitworth (CA Bar No. 304907)
                                                  morgan.whitworth@lw.com
15                                              505 Montgomery Street, Suite 2000
                                                San Francisco, CA 94111
                                                Telephone: +1.415.391.0600
16

17                                              *Attorneys for Defendant AH Capital Management,
                                                L.L.C.*

18                                              MORRISON COHEN LLP

19                                              /s/ Jason Gottlieb
20                                              Jason Gottlieb (Admitted *pro hac vice*)
                                                Michael Mix (Admitted *pro hac vice*)
21                                              Rachel Fleder (Admitted *pro hac vice*)
                                                909 Third Avenue
22                                              New York, New York,10022
                                                jgottlieb@morrisoncohen.com
23                                              mmix@morrisoncohen.com
                                                rfleder@morrisoncohen.com
24                                              (212) 735-8600

25

26                                              LONDON & NAOR P.C.
                                                Ellen London
27                                              1999 Harrison St., Suite 655
                                                Oakland, CA 94612
28                                              elondon@londonnaor.com

1  (415) 862-8494

2  *Attorneys for Defendant*
3  *Dragonfly Digital Management LLC*

4  SKADDEN, ARPS, SLATE, MEAGHER & FLOM
   LLP
5

6  */s/ Alexander C. Drylewski*
   Alexander C. Drylewski (Admitted *pro hac vice*)
7  alexander.drylewski@skadden.com
   One Manhattan West
8  New York, NY 10001
   Tel: +1 (212) 735-3000
9

10 Peter B. Morrison (SBN 230148)
   peter.morrison@skadden.com
11 Zachary M. Faigen (SBN 294716)
   zack.faigen@skadden.com
12 2000 Avenue of the Stars, Suite 200N
   Los Angeles, CA 90067
13 Tel: +1 (213) 687-5000

14 *Attorneys for Defendant Paradigm Operations LP*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**SIGNATURE ATTESTATION**

2      I am the ECF User whose identification and password are being used to file the foregoing

3  Defendant AH Capital Management, L.L.C., Dragonfly Digital Management LLC, and Paradigm

4  Operations LP's Notice of Motion and Motion to Certify Order for Interlocutory Appeal;

5  Memorandum of Points and Authorities in Support Thereof. Pursuant to L.R. 5-1(i)(3) regarding

6  signatures, I, Susan E. Engel, attest that concurrence in the filing of this document has been

7  obtained.

8

9

10  Dated:  December 18, 2024                 */s/ Susan E. Engel*
                                                 Susan E. Engel

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28