STEVEN G. SKLAVER (237612)
ssklaver@susmangodfrey.com
OLEG ELKHUNOVICH (269238)
oelkhunovich@susmangodfrey.com
ROHIT D. NATH (316062)
rnath@susmangodfrey.com
NICHOLAS N. SPEAR (304281)
nspear@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

JASON BELL (*pro hac vice*)
jbell@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
One Manhattan West
New York, NY 10001-8602
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

JAMES CROOKS (*pro hac vice*)
jamie@fairmarklaw.com
MICHAEL LIEBERMAN (*pro hac vice*)
**FAIRMARK PARTNERS, LLP**
400 7th Street NW, Suite 304
Washington, DC 20004
Telephone: (619) 507-4182

CHARLES GERSTEIN (*pro hac vice*)
charlie@gerstein-harrow.com
**GERSTEIN HARROW LLP**
400 7th Street NW, Suite 304
Washington, DC 20004
Telephone: (202) 670-4809

JASON HARROW (308560)
jason@gerstein-harrow.com
**GERSTEIN HARROW LLP**
12100 Wilshire Blvd., Suite 800
Los Angeles, California 90025
Telephone: (323) 744-5293

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREW SAMUELS, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br> v.<br><br>LIDO DAO, a general partnership; AH CAPITAL MANAGEMENT, LLC; PARADIGM OPERATIONS LP; DRAGONFLY DIGITAL MANAGEMENT LLC; ROBOT VENTURES LP,<br><br>       Defendants. | Case No. 3:23-cv-6492-VC<br><br>**CLASS ACTION**<br><br>**LEAD PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>DATE:     August 14, 2025<br>TIME:     10:00 AM<br>PLACE:   Courtroom 4 – 17th Floor<br>BEFORE: Hon. Vince Chhabria |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................... 1

STATEMENT OF ISSUE TO BE DECIDED .............................................................................. 3

BACKGROUND ........................................................................................................................... 3

ARGUMENT ................................................................................................................................ 4

    I.     Defendants Waived Any Right to Compel Arbitration ........................................... 4

         A.     Defendants Knew of Their Alleged Right to Compel Arbitration. .............. 5

         B.     Defendants Acted Inconsistently with Their Alleged Right to Arbitrate. ................................................................................................... 8

    II.    This Court Should Decide Whether Defendants Can Compel Arbitration. ............. 9

    III.   The Arbitration Provisions Cannot Be Enforced by Defendants. ......................... 12

         A.     Defendants Are Not Third-Party Beneficiaries. ........................................ 12

         B.     Equitable Estoppel Does Not Apply. ......................................................... 13

    IV.   Claims Against the Lido DAO Should Not Be Stayed. ......................................... 15

CONCLUSION ........................................................................................................................... 15

1

## TABLE OF AUTHORITIES

2

### CASES

3

*Alvarez v. Sheraton Operating Corp.*
  2023 WL 2491279 (9th Cir. Mar. 14, 2023) .............................................................. 8

4

*Arthur Andersen LLP v. Carlisle*
  55 U.S. 624 (2009) ...................................................................................................... 15

5

6

*Berman v. Freedom Fin. Network, LLC*
  30 F. 4th 849 (9th Cir. 2022) ..................................................................................... 11

7

*Blanton v. Domino's Pizza Franchising LLC*
  962 F.3d 842 (6th Cir. 2020) ...................................................................................... 11

8

9

*Cal. Crane Sch., Inc. v. Google LLC*
  621 F. Supp. 3d 1024 (N.D. Cal. 2022) ...................................................................... 15

10

*Coinbase, Inc. v. Bielski*
  599 U.S. 736 (2023) ...................................................................................................... 1

11

12

*DeVries v. Experian Info. Sols., Inc.*
  2017 WL 733096 (N.D. Cal. Feb. 24, 2017) ................................................................ 5

13

*Douglas v. U.S. Dist. Court for Cent. Dist. of Cal.*
  495 F.3d 1062 (9th Cir. 2007) .................................................................................... 11

14

15

*Ferreira v. Uber Techs., Inc.*
  2023 WL 7284161 (N.D. Cal. Nov. 3, 2023) .............................................................. 10

16

*Franklin v. Cmty. Reg'l Med. Ctr.*
  998 F.3d 867 (9th Cir. 2021) ...................................................................................... 14

17

18

*Gile v. Dolgen Cal., LLC*
  2022 WL 17248087 (9th Cir. Nov. 28, 2022) .............................................................. 8

19

*Goldman v. KPMG, LLP*
  173 Cal. App. 4th 209 (2009) ..................................................................................... 13

20

21

*Henry Schein, Inc. v. Archer & White Sales, Inc.*
  586 U.S. 63 (2019) ...................................................................................................... 12

22

*Herrera v. Cathay Pac. Airways Ltd.*
  104 F. 4th 702 (9th Cir. 2024) .................................................................................... 14

23

24

*Hill v. Xerox Bus. Servs., LLC*
  59 F. 4th 457 (9th Cir. 2023) .................................................................................... 5, 8

25

*Houghton v. Leshner*
  2024 WL 5154071 (N.D. Cal. Nov. 25, 2024) ..................................................... passim

26

27

*In re Bam Trading Servs. Inc. Sec. Litig.*
  733 F. Supp. 3d 854 (N.D. Cal. 2024) ....................................................................... 14

28

*In re Midland Credit Mgmt., Inc. Tel. Consumer Prot. Litig.*
  2019 WL 398169 (S.D. Cal. Jan. 31, 2019) ................................................................... 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
  2011 WL 2650689 (N.D. Cal. July 6, 2011) .................................................................. 13

*Jackson v. Amazon.com, Inc.*
  65 F. 4th 1093 (9th Cir. 2023) ........................................................................................ 12

*Kramer v. Toyota Motor Corp.*
  705 F.3d 1122 (9th Cir. 2013) ......................................................................... 2, 10, 13, 14

*Letizia v. Prudential Bache Sec., Inc.*
  802 F.2d 1185 (9th Cir. 1986) ........................................................................................... 7

*Martin v. Yasuda*
  829 F.3d 1118 (9th Cir. 2016) ..................................................................................... 5, 8, 9

*Morgan v. Sundance, Inc.*
  596 U.S. 411 (2022) ......................................................................................................... 15

*MouseBelt Labs Pte. Ltd. v. Armstrong*
  674 F. Supp. 3d 728 (N.D. Cal. 2023) ............................................................................... 7

*Newirth v. Aegis Senior Cmtys., LLC*
  931 F.3d 935 (9th Cir. 2019) .......................................................................................... 8, 9

*Newman v. Plains All Am. Pipeline, L.P.*
  23 F. 4th 393 (5th Cir. 2022) .......................................................................................... 10

*Parella v. Orange Rabbit, Inc.*
  2021 WL 4462809 (S.D.N.Y. Sept. 29, 2021) ............................................................... 10

*Parsittie v. Schneider Logistics, Inc.*
  2023 WL 2629869 (C.D. Cal. Feb. 8, 2023) ..................................................................... 7

*Patrick v. Running Warehouse, LLC*
  93 F. 4th 468 (9th Cir. 2024) .......................................................................................... 11

*Ramirez v. Charter Commc'ns, Inc.*
  16 Cal. 5th 478 (2024) ..................................................................................................... 11

*Revitch v. DIRECTV, LLC*
  977 F.3d 713 (9th Cir. 2020) .......................................................................................... 12

*Ronderos v. USF Reddaway, Inc.*
  114 F. 4th 1080 (9th Cir. 2024) ................................................................................. 11, 12

*Ruiz v. Kelly Serv. Glob. LLC*
  2024 WL 3618222  (E.D. Cal. Aug. 1, 2024) ................................................................ 11

*Samuels v. Lido DAO*
  757 F. Supp. 3d 951 (N.D. Cal. 2024) .............................................................................. 3

*Sequoia Benefits & Ins. Servs., LLC v. Constantini*
   553 F. Supp. 3d 752 (N.D. Cal. 2021) ....................................................................... 8

*Simmons v. Ghaderi*
   44 Cal. 4th 570 (2008) ........................................................................................... 15

*Simula, Inc. v. Autoliv, Inc.*
   175 F.3d 716 (9th Cir. 1999) .................................................................................... 8

*Soto v. Am. Honda Motor Co.*
   946 F. Supp. 2d 949 (N.D. Cal. 2012) ................................................................ 9, 10

*Support Cmty., Inc. v. MPH Int'l, LLC*
   2025 WL 547380 (9th Cir. Feb. 19, 2025) ............................................................... 9

*Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*
   97 F. App'x 462 (5th Cir. 2004) ............................................................................... 7

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*
   871 F.3d 791 (9th Cir. 2017) .................................................................................. 12

*White v. Ring LLC*
   2023 WL 1097554 (C.D. Cal. Jan. 25, 2023) ......................................................... 10

*Young v. ByteDance Inc.*
   700 F. Supp. 3d 808 (N.D. Cal. 2023) ...................................................... 10, 12, 15

*Young v. Solana Labs, Inc.*
   2024 WL 4023087  (N.D. Cal. Sep. 3, 2024) ............................................... 3, 6, 8, 14

**STATUTES**

9 U.S.C. § 4 .................................................................................................................... 8

**TREATISES**

5 Williston on Contracts § 10:1 (4th ed.) ....................................................................... 7

## **PRELIMINARY STATEMENT**

Defendants' motion to compel arbitration follows a playbook that has emerged in the wake of *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023). Test the waters in federal court—*e.g.*, seek favorable rulings on motions to dismiss, try for an interlocutory appeal, and aggressively engage in discovery—and if things go south, move to compel arbitration. The goal is not so much to compel arbitration (though that may be a bonus), but to indefinitely stall the litigation with the subsequent interlocutory appeal. *Id.* at 740. When two of the defendants here (a16z and Paradigm) executed the same gambit in *Houghton v. Leshner*, 2024 WL 5154071 (N.D. Cal. Nov. 25, 2024), *appeal filed*, No. 24-7243 (9th Cir.), Judge Orrick observed: "[P]laintiffs can be forgiven for their belief that defendants' motion is transparently designed to delay resolution of this case." No. 22-cv-7781, Dkt. 242, 2–3 (quotation marks omitted) (*Chuman* order). Defendants use the same play here. Their motion to compel is as meritless as their attempt in *Houghton*, because they waived any right to compel arbitration and their purported right to arbitrate this dispute is entirely nonexistent.

**First**, any purported right to arbitrate has been waived because Defendants waited nearly fourteen months to move to compel, even though they knew of the purported right to arbitrate since April 2024. During that period, Defendants litigated aggressively on the merits in this Court, filing three motions to dismiss, opposing default against Defendant Lido DAO, seeking interlocutory review of the denial of their motions to dismiss, filing counterclaims, opposing a motion to dismiss their counterclaims, negotiating a protective order and ESI protocol, serving 264 discovery requests, responding to 94 discovery requests, conducting extensive meet-and-confers over search terms, and briefing a discovery dispute. Defendants have no excuse for their extraordinary delay.

Defendants deliberately chose to avail themselves of this forum. From the moment the Amended Complaint was filed on April 3, 2024, Defendants knew that Plaintiff purchased LDO tokens in April and May 2023 on the Gemini exchange. Dkt. 54 ("AC") ¶ 10. The publicly available Gemini User Agreements in effect on those dates *required* all users to agree to arbitration clauses before trading. *See* Dkt. 175-3 ("Mar. Agreement"), at 1; Dkt. 175-4 ("May Agreement"), at 1.[1] Defendants, in fact, admitted in their answers—filed more than six months ago in December

---

[1] Because the contracts are the same in all relevant ways, this brief cites to the May Agreement.

2024—that they knew of their alleged right to seek arbitration. *See, e.g.*, Dkt. 125 at 15. But instead of moving to compel arbitration right away, Defendants forced the Court and Plaintiff to invest time and resources into the adjudication of motions to dismiss, a request for an interlocutory appeal, and counterclaims. It was only after Defendants failed to secure their preferred rulings in federal court that they have made this belated attempt to compel arbitration. This is textbook waiver.

Defendants—some of the world's most sophisticated crypto-asset companies—implausibly claim they did not know of their right to arbitrate until May 2025. This makes no sense. Defendants knew that Plaintiff used Gemini, knew of Gemini's publicly available arbitration agreements, and knew that Gemini requires all users to agree to arbitration. Yet Defendants claim they were entirely unaware before May 2025 that Plaintiff agreed to arbitrate with Gemini. That claim is false, as more than six months earlier, Defendants stated in their Answers, unequivocally, that "Plaintiff's claim is subject to arbitration." *Id.* Just as in the nearly identical circumstances in *Houghton*, this Court should not allow Defendants to seek arbitration after taking advantage of this forum for over a year.

**Second**, Defendants' motion fails on the merits. Their lead argument is that this Court is powerless to decide whether non-signatories can compel arbitration under Gemini's User Agreement because it incorporates certain arbitral rules and contains a delegation clause. That is incorrect. The contract does not include "clear and unmistakable evidence" that Plaintiff consented to delegate arbitrability in disputes with *non-signatories*—especially disputes with non-signatories about who is a third-party beneficiary. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013). If the delegation provision swept so far, it would be unconscionable because it would allow *any* defendant in *any* case brought by Plaintiff to force arbitration of arbitrability.

Defendants are not entitled to arbitrate. As the third-party beneficiary clause provides, Defendants could qualify as third-party beneficiaries only if Plaintiff's claim "[arose] from or related to [the] User Agreement." May Agreement 49. But Plaintiff's unregistered securities claim has no relationship at all with the Gemini User Agreement, and regardless, Defendants' reading of the third-party beneficiary clause is unconscionable. Defendants cannot rely on equitable estoppel, either. Multiple courts in this District have denied arbitration on the same basic facts where a digital asset issuer, sued for promoting unregistered securities, sought to enforce an arbitration agreement

between plaintiffs and a third-party exchange from which they purchased tokens. *See Houghton*, 2024 WL 5154071, at \*7; *Young v. Solana Labs, Inc.*, 2024 WL 4023087, \*6–\*8 (N.D. Cal. Sep. 3, 2024), *appeal filed*, No. 24-6032 (9th Cir.). As in those cases, equitable estoppel does not apply because Plaintiff's claim "do[es] not depend on the [contract] and [is] not inextricably bound up with its terms." *Solana*, 2024 WL 4023087, at \*7.

## STATEMENT OF ISSUE TO BE DECIDED

Whether this Court should compel arbitration and stay the non-arbitrable claims.

## BACKGROUND

On December 17, 2023, Plaintiff filed this putative securities class action alleging violations of Section 12(a)(1) of the Securities Act. Dkt. 1. On April 3, 2024, Plaintiff filed an Amended Complaint alleging that a16z, Paradigm, and Dragonfly were general partners in the Lido DAO, which sold LDO tokens to the public in unregistered securities transactions. *See* AC. Plaintiff expressly alleged that he "purchased approximately 132 LDO tokens in April and May 2023 on Gemini, a US-based cryptocurrency exchange." *Id.* ¶ 10. No later than April 3, 2024, Defendants therefore knew that Samuels purchased his LDO on Gemini and the months he purchased them. *Id.* Gemini's User Agreements, which Defendants concede are publicly available, Mot. 8, contain arbitration provisions that all users must agree to before trading. May Agreement 1, 49.

Defendants, however, did not then move for arbitration. Instead, on May 2, 2024, Defendants moved to dismiss the amended complaint for failure to state a claim on the merits, *e.g.*, Dkt. 60, seeking a broad ruling that would have made it nearly impossible to sue Defendants for schemes, like the one alleged here, to raise millions of dollars from the public through sales of tokens like LDO.[2]

On November 18, 2024, the Court denied Defendants' motions to dismiss. *See* 757 F. Supp. 3d 951. Defendants then asked this Court to certify two merits questions for interlocutory appeal to the Ninth Circuit, where Defendants would have sought something they could not get in arbitration:

---

[2] While their motions to dismiss were pending, Defendants continued to litigate in this Court, opposing Plaintiff's motion for entry of default as to the Lido DAO. Dkt. 70. The Court denied that motion, deemed the DAO to have been served, and set a deadline for its response. Dkt. 75. After the DAO failed to appear, the clerk entered default against it. Dkt. 124.

precedent shielding them from future liability. Dkt. 127. The Court declined certification. Dkt. 159.

On the same day they sought interlocutory appeal, Defendants filed answers pleading as an affirmative defense that Plaintiff's claims were subject to arbitration. *See* Dkt. 125 at 15; 126 at 33; 128 at 25. At that point, Defendants had not engaged in any discovery, yet had enough knowledge of their purported right to arbitrate to assert that "Plaintiff's claims . . . are subject to mandatory arbitration pursuant to a valid and enforceable arbitration agreement." *See, e.g.*, Dkt. 126 at 33. Each answer also included a counterclaim alleging that Plaintiff was a partner in the DAO and seeking "damages in an amount to be determined at trial" in this forum. *Id.* at 39; Dkt. 125 at 20; 128 at 32. Plaintiff filed a motion to dismiss the counterclaims, which the Court granted. Dkt. 170.

Defendants *still* did not move to arbitrate and *continued* to pursue their defenses in federal court for the next six months. They served 264 discovery requests on Plaintiff, most of which have nothing to do with formation of an arbitration agreement. The parties spent hundreds of hours responding to discovery, including months of meets-and-confers to negotiate searches.

On January 27—more than two months after the Court denied the motions to dismiss—Paradigm served 28 requests for admission, including one about whether Plaintiff had consented to the User Agreement. Spear Decl. ¶ 3. On March 6, a16z served interrogatories and requests for admission seeking similar information, and Dragonfly served its requests for admission on March 17. *Id.* ¶¶ 4–6. As a user of the Gemini platform, Plaintiff unsurprisingly admitted that he was subject to the applicable Gemini User Agreements. *See* Dkt. 175-11 at 20–21; 175-12 at 14–17; 175-13 at 9. Finally, on May 29, 2025, with the substantial discovery completion deadline less than five weeks away, Defendants filed this motion to compel arbitration and to stay proceedings.

## ARGUMENT

## I.    Defendants Waived Any Right to Compel Arbitration

Defendants waived any right to arbitrate by waiting almost fourteen months before filing this motion—until they had already tried and failed to get this case dismissed and tried and failed get interlocutory review in the Ninth Circuit. A party may neither "delay seeking arbitration until after the district court rules against it" nor "belatedly change its mind after first electing to proceed in what it believed to be a more favorable forum." *Martin v. Yasuda*, 829 F.3d 1118, 1128 (9th Cir.

4

1  2016). Put differently, a party that has been "sued in court has a choice: it can either seek to compel
2  arbitration or agree to litigate in court. It cannot choose both." *Id.* This is dispositive.[3]

3      A party waives a right to compel arbitration when it (1) has "knowledge of an existing right
4  to compel arbitration" and (2) takes "intentional acts inconsistent with that existing right." *Hill v.*
5  *Xerox Bus. Servs., LLC*, 59 F. 4th 457, 468 (9th Cir. 2023). "[T]he burden of showing waiver" is
6  not "heavy." *Armstrong v. Michaels Stores, Inc.*, 59 F. 4th 1011, 1014 (9th Cir. 2023).

7  **A.  Defendants Knew of Their Alleged Right to Compel Arbitration.**

8      From the time Plaintiff filed his amended complaint on April 3, 2024, if not earlier,
9  Defendants were aware of their claimed right to arbitrate. The only factual basis for their supposed
10  right to arbitrate is Plaintiff's purchase of LDO on Gemini in April and May 2023. Plaintiff
11  explicitly alleged that he did so. AC ¶ 10. Defendants cited that paragraph in their motions to
12  dismiss, Dkt. 60 at 2, and even noted that the purchase was on Gemini, Dkt. 61 at 5 n.10; 62 at 2.

13      Defendants have known all along that Gemini requires users to sign arbitration agreements
14  and that Plaintiff is subject to the April and May 2023 agreements. When Defendants filed their
15  Answers, they asserted that they were entitled to arbitration based *solely* on Plaintiff's allegations
16  and Gemini's User Agreement. *See* Mot. 9 n.9. Defendants do not even contend that they were
17  unaware that Plaintiff used Gemini, of Gemini's arbitration agreements, or that Gemini requires all
18  users to agree to arbitration before trading. And despite arguing preemptively that they did not
19  waive arbitration, Defendants did not put forward *any evidence* denying knowledge of those facts.

20      Instead, Defendants contend that they "did not know which version(s) of the User
21  Agreement Plaintiff accepted . . . including whether he had accepted a version including the third-
22  party beneficiary provision." Mot. 8. This is contradicted by the User Agreement's plain terms:
23  Every version of the Gemini User Agreement in the record—all publicly available on the Wayback
24  Machine, as Defendants acknowledge, *id.*—states on its very first page that "login or API
25  Authentication, as applicable, shall constitute your agreement" to whichever version of the User
26  Agreement governs at the time of login. *E.g.*, May Agreement 1. There is no way to opt out of

---

27
28  [3] Defendants do not argue that waiver is delegated to the arbitrator and forfeit that position. But
    nothing in the contract delegates waiver, see, *e.g.*, *DeVries v. Experian Info. Sols., Inc.*, 2017 WL
    733096, at *10 (N.D. Cal. Feb. 24, 2017), let alone as to non-signatories, see Section II.

arbitration. *Id.* Because Defendants knew that Plaintiff logged into Gemini in April and May 2023 to trade LDO, AC ¶ 10, they necessarily knew he had agreed to the then-in-effect version, which included the third-party beneficiary language on which Defendants rely.

Moreover, Defendants have used this exact delay strategy before. While briefing their motions to dismiss in this case, a16z and Paradigm were pursuing identical tactics in *Houghton*—a case raising essentially the same unregistered securities claims against them. Four days before filing its reply in support of its motion to dismiss, a16z served discovery in *Houghton* including a materially identical request to the one served here about whether Plaintiff accepted a crypto-exchange contract. *See Houghton*, No. 22-cv-7781, Dkt. 182 at 5. As in this case, they tried to use this discovery as cover for their deliberate delay in seeking to compel arbitration, a gambit that Judge Orrick saw right through. *See* 2024 WL 5154071, at *3. That Defendants and their counsel attempted this identical strategy in another case—all while actively litigating this one in federal court—underscores that they knew of their claimed arbitration right long ago.

Defendants, citing *Solana*, contend that they did not know of a right to arbitrate because they "lack[ed] evidence as to how the platform appeared on a mobile device . . . [and] whether Plaintiff allegedly accessed Gemini via desktop computer, mobile application, or some other method." Mot. 8. *Houghton* rejected that argument, and this Court should, too. The parties in *Solana* agreed that "whether users were bound to the arbitration agreement depended on whether users accessed the cryptocurrency exchange via a desktop or through a mobile app," and "there was a genuine dispute" over agreement. 2024 WL 5154071 at *3 n.6. But here, as in *Houghton*, Plaintiff does not "raise[] or argue[]" any such dispute. *Id.* And unlike Defendants here, the defendants in *Solana* (represented by some of the same lawyers who represent a16z) filed their motion to compel arbitration simultaneously with a motion to dismiss and *immediately* requested limited discovery on their motion to compel to ensure any fact dispute could be resolved. 2024 WL 4023087, at *4.

Defendants, in effect, ask for a rule under which a movant cannot be said to have "knowledge" of a claimed arbitration right unless the formation of the arbitration agreement is undisputed. But that is not the law. "Knowledge" of a claimed right to arbitrate, courts have held, does not require epistemological certainty that a contract was formed or that a motion to compel

1    arbitration will succeed. *Houghton*, 2024 WL 5154071, at *3 (distinguishing knowledge from

2    "confirmation in discovery"). After all, if defendants were required to be sure that they would win

3    a motion to compel arbitration to have any obligation to bring one, they could always wait as long

4    as they want—maybe the plaintiff will say the signature is not hers, she signed under duress, or was

5    intoxicated—to seek "confirmation in discovery" and only then move for arbitration. *Id.*

6    Defendants' requests regarding the User Agreement do not even try to rule out all possible defects

7    in contract formation, such as incompetency, *see, e.g.*, 5 Williston on Contracts § 10:1 (4th ed.),

8    and are simply an excuse to justify an impermissible litigate-first, arbitrate-later strategy.

9        No court has *ever* held that a party lacks knowledge of a claimed right to arbitrate until a

10    counterparty stipulates to contract formation through discovery responses. Defendants' authorities

11    are inapposite. *See* Mot. 7 n.8. Three concern litigants who lacked *any* awareness of a potentially

12    applicable arbitration agreement. *See Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97

13    F. App'x 462, 465 (5th Cir. 2004) ("Equicredit was simply unaware of the 1999 [arbitration]

14    agreement."); *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986) ("no

15    existing right to arbitration" until intervening Supreme Court decision); *Parsittie v. Schneider

16    Logistics, Inc.*, 2023 WL 2629869, at *1–*2, *4 (C.D. Cal. Feb. 8, 2023) (contract obtained in

17    response to subpoena three years into case). They do not address a situation where, like here, the

18    defendant knew about the purported arbitration from the amended complaint. Another involves

19    imputation of knowledge to a party by other entities, which is not at issue here. *See MouseBelt Labs

20    Pte. Ltd. v. Armstrong*, 674 F. Supp. 3d 728, 735–36 (N.D. Cal. 2023).

21        Defendants point to nothing that distinguishes this case from *Houghton*. They argue that

22    *Houghton* "wrongly charges a defendant with knowledge of an arbitration right simply based on a

23    supposed failure to immediately pursue discovery of contract formation," Mot. 9 (emphasis

24    omitted), but *Houghton* turned on the factual finding that defendants had knowledge of their

25    claimed right to arbitrate. 2024 WL 5154071, at *3. *Houghton* explained that if the defendants

26    "really needed . . . confirmation" of agreement, "they could have secured limited discovery earlier

27    . . . for example, prior to general discovery opening." *Id.* Likewise, here, the sole piece of

28    information that Defendants supposedly lacked was whether Plaintiff would take the position that

he did not accept the agreements. Mot. 8. That question, if genuine, was apparent from the amended complaint and the contracts, and nothing would have stopped Defendants from serving discovery at the outset, for example, by using the FAA's procedural mechanisms to obtain "discovery . . . in connection with a motion to compel arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999); 9 U.S.C. § 4; *see, e.g.*, *Solana*, 2024 WL 4023087, at *4.  They instead moved to dismiss, waited six months for a decision, then waited another two to four months to serve their supposedly indispensable discovery, all while filing counterclaims, opposing motions to dismiss those counterclaims, seeking interlocutory review on the merits, and participating in discovery.

**B.    Defendants Acted Inconsistently with Their Alleged Right to Arbitrate.**

The second element of waiver is satisfied when a party "actively litigat[es] his case to take advantage of being in federal court." *Hill*, 59 F. 4th at 471 (citation omitted). And a party "actively litigates" when it does exactly what Defendants have been doing in this case since April 3, 2024— litigating motions, filing counterclaims, negotiating stipulations, serving discovery, and otherwise participating in the normal course of civil litigation. *See, e.g.*, *Alvarez v. Sheraton Operating Corp.*, 2023 WL 2491279, at *1 (9th Cir. Mar. 14, 2023) (waiver where defendants moved to dismiss and engaged in some "limited" discovery); *Gile v. Dolgen Cal., LLC*, 2022 WL 17248087, at *1 (9th Cir. Nov. 28, 2022) (waiver where defendant filed two motions to dismiss, met and conferred with plaintiffs' counsel six times, and signed a joint Rule 26(f) report); *Sequoia Benefits & Ins. Servs., LLC v. Constantini*, 553 F. Supp. 3d 752, 759 (N.D. Cal. 2021) (waiver where defendants moved to dismiss and filed counterclaims); *Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 942 (9th Cir. 2019) (waiver where the defendant took "advantage of the federal forum by filing a motion to dismiss"); *Martin*, 829 F.3d at 1126 (waiver where defendants "spent seventeen months litigating," including entering "a joint stipulation structuring the litigation" and "a protective order," filing "a motion to dismiss on a key merits issue," conducting a deposition, and answering discovery).

Over the past 14 months, Defendants have done almost all of the above, and more. Defendants aggressively litigated from the start, filing three motions to dismiss, opposing default against the DAO, and seeking interlocutory review of the motion to dismiss order on the same day that they filed answers asserting their known right to arbitrate. That conduct alone satisfies this

element.[4] *See, e.g.*, *Newirth*, 931 F.3d at 942–43. Defendants even *filed counterclaims* against Plaintiff, invoking this Court's jurisdiction and demanding a jury trial or asking the Court to enter judgment on the merits. *See* Dkt. 125 at 20; 126 at 39; 128 at 24. It is hard to imagine an act less consistent with arbitration than affirmatively seeking court resolution of a counterclaim. *See, e.g.*, *Support Cmty., Inc. v. MPH Int'l, LLC*, 2025 WL 547380, at *1 (9th Cir. Feb. 19, 2025). That is not to mention Defendants' conduct in negotiating a joint 26(f) report, protective order, and ESI protocol, serving 264 discovery requests, negotiating search terms and start dates for searches in response to Plaintiffs' 87 requests for production, only one of which concerns the Gemini User Agreement, and briefing a dispute about the search end date before reaching a negotiated resolution. These acts are obviously inconsistent with a right to arbitrate. *See, e.g.*, *Martin*, 829 F.3d at 1126.

Defendants argue only that here, unlike in *Houghton*, they "did seek the relevant discovery 'earl[y]'—once the Court denied Defendants' motions to dismiss and the automatic stay of discovery lifted." Mot. 9 (emphases omitted). But even their motions to dismiss were enough for waiver, *Newirth*, 931 F.3d at 941, and Defendants went so far as to seek an interlocutory appeal, assert counterclaims, and serve merits discovery. And as explained above, Defendants easily could have served targeted discovery under the FAA as soon as Plaintiff filed the amended complaint.

## II.   This Court Should Decide Whether Defendants Can Compel Arbitration.

Defendants next argue that this Court lacks the power to decide whether they are third-party beneficiaries of the arbitration provision. Defendants are wrong for three independent reasons.

First, because arbitration is "a matter of contract," a non-signatory cannot invoke a contractual right to arbitrate until a court determines that the non-signatory has any rights under the contract in the first place. *Soto v. Am. Honda Motor Co.*, 946 F. Supp. 2d 949, 954 (N.D. Cal. 2012) (citation omitted). The "issue of whether the delegation clause is even applicable to a certain party must be decided by the Court." *Id.* Determining who is bound by an arbitration agreement and can thus invoke a delegation clause—including under the doctrine of third-party beneficiaries—is a

---

[4] Defendants' argument that Plaintiffs' discovery responses were delayed, Mot. 9, is wrong. Spear Decl. ¶¶ 7–9. It is also irrelevant: as noted above, Defendants have known since April 2024 of their purported right to arbitrate but waited until January 2025 (after trying and failing repeatedly to get Plaintiff's case dismissed) to first serve any discovery related to arbitration.

"first-step, formation question" that cannot be delegated to an arbitrator. *Newman v. Plains All Am. Pipeline, L.P.*, 23 F. 4th 393, 398, 400–01 (5th Cir. 2022). Just as "there is no contract formed between a party to the contract and a nonparty asserting equitable estoppel," there is no contract formed between a party and a nonparty asserting third-party beneficiary status. *Young v. ByteDance Inc.*, 700 F. Supp. 3d 808, 813 (N.D. Cal. 2023). A nonparty who has not even been determined to have any rights under the contract cannot possibly enforce a "delegation provision." *See id.* The Court accordingly decides whether Defendants are third-party beneficiaries.

Second, even if a non-signatory could ever invoke a delegation clause before a court determination that it has rights under the contract, the clause here does not clearly and unmistakably delegate the question of who counts as a third-party beneficiary. *See Kramer*, 705 F.3d at 1127. The clause is explicitly limited to "You and Gemini"—not "You, Gemini, and any purported third-party beneficiary." May Agreement 49. And it only states that "any dispute about the scope of this User Agreement to arbitrate and/or the arbitrability of any particular dispute shall be resolved in arbitration." May Agreement 49. Courts in this Circuit regularly conclude that similar clauses do not delegate "which parties are bound by [the] delegation clause." *Soto*, 946 F. Supp. 2d at 954; *see, e.g., Ferreira v. Uber Techs., Inc.*, 2023 WL 7284161, at *4 (N.D. Cal. Nov. 3, 2023); *In re Midland Credit Mgmt., Inc.*, 2019 WL 398169, at *6 (S.D. Cal. Jan. 31, 2019).

The NAM Rules also do not delegate the decision of who is third-party beneficiary. As an initial matter, the NAM delegation clause was not incorporated at all because the User Agreement explicitly states that the NAM Rules only kick in "[s]hould any dispute proceed to arbitration," which occurs *after* arbitrability is decided. May Agreement 50. Regardless, the NAM Rules merely let the arbitrator decide enforceability disputes between parties and third-party beneficiaries who have already been determined to have rights under the contract.[5] And the NAM Rules are

---

[5] Defendants overread dicta in a footnote in *Young* to claim that any party purporting to be a third-party beneficiary can automatically enforce the NAM delegation clause without first establishing that it is a third-party beneficiary. That is incorrect—the footnote says nothing about the arbitrability of a disputed claim of third-party beneficiary status, *see* 700 F. Supp. 3d at 812 n.5, and for the reasons discussed above this issue should be decided by the court, not an arbitrator. None of Defendants' other cases hold that the NAM Rules delegate this issue. *See Parella v. Orange Rabbit, Inc.*, 2021 WL 4462809, at *11 (S.D.N.Y. Sept. 29, 2021) (objection to arbitrator's power to decided arbitrability "waived" by participating in arbitration); *White v. Ring LLC*, 2023

inconsistent with the delegation clause, which is limited to "scope" and "arbitrability." This cannot

be a clear and unmistakable delegation of the threshold third-party beneficiary issue, especially

because Samuels is an average consumer, see Samuels Decl., not a sophisticated party able to

navigate these separately incorporated rules. *Ruiz v. Kelly Serv. Glob. LLC*, 2024 WL 3618222, at

*4 (E.D. Cal. Aug. 1, 2024), *appeal filed*, No. 24-6529 (9th Cir.); *cf. Patrick v. Running Warehouse,*

*LLC*, 93 F. 4th 468, 481 (9th Cir. 2024).

Third, Defendants' reading of the arbitrability provisions and the third-party beneficiary

clause is erroneous because it would be unconscionable if *anyone* sued by Plaintiff could invoke

them to force the arbitrator to decide if it were a third-party beneficiary. *Ramirez v. Charter*

*Commc'ns, Inc.*, 16 Cal. 5th 478, 507 (2024) (facing two interpretations, a court should select the

one "that makes the contract valid," not void). A term is unenforceable if it is procedurally and

substantively unconscionable. *Ronderos v. USF Reddaway, Inc.*, 114 F. 4th 1080, 1089 (9th Cir.

2024). The "more substantively oppressive" the term, "the less evidence of procedural

unconscionability is required," and vice versa.[6] *Id.* (citation omitted).

The delegation provisions and the third-party beneficiary clause, as Defendants interpret

them, are procedurally unconscionable. A take-it-or-leave it contract like this one, which does not

include any opt out, is a procedurally unconscionable "contract of adhesion." *Id.* at 1090. Worse

still, the purported right for third parties to enforce the delegation provisions was imposed with a

complete "lack of negotiation and meaningful choice" because the third-party beneficiary clause

was unilaterally added to the contract and users agreed to it by merely logging in. *Id.* (citation

omitted). Delegation of the third-party beneficiary issue is also an oppressive "surprise" because

the provisions on which Defendants rely are phrased in "opaque" terms that disguised from average

---

WL 1097554, at *6 (C.D. Cal. Jan. 25, 2023) (party also agreed to delegation in separate contract);
*Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845 n.1, 848 (6th Cir. 2020) (plaintiff
did not dispute that reference to "jurisdiction" in AAA rules covered the issue).

[6] The New York choice-of-law clause does not control because the contract gives third-party
beneficiaries the right to enforce the arbitration provision only, not a separate choice-of-law clause.
Regardless, under California choice-of-law rules, see *Berman v. Freedom Fin. Network, LLC*, 30
F. 4th 849, 862–63 (9th Cir. 2022) (Baker, J., conc.), California law applies because California's
interest in protecting its citizens like Plaintiff from unconscionable contracts executed in California
and enforced by other California citizens like Defendants dwarfs New York's interests—which are
limited to the coincidence that a non-party to this dispute is headquartered there. *Douglas v. U.S.*
*Dist. Court for Cent. Dist. of Cal.*, 495 F.3d 1062, 1067 n.2 (9th Cir. 2007).

1  consumers that *any* case they brought against *anyone* could be forced to arbitration. *Id.* at 109.

2  The provisions supposedly delegating the third-party beneficiary issue are substantively

3  unconscionable on Defendant's reading because *any* non-signatory sued by Plaintiff about anything

4  *for the rest of his life* could invoke the third-party beneficiary clause and detour to arbitration. *See*

5  *Young*, 700 F. Supp. 3d at 812 (rejecting approach that would lead to similarly "absurd results");

6  *cf. Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019) (rejecting "wholly

7  groundless" exception to delegation). No one would think such "absurd results" were possible by

8  creating a Gemini account. *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 717 (9th Cir. 2020).

9  **III.    The Arbitration Provisions Cannot Be Enforced by Defendants.**

10  Plaintiff's unregistered securities claim does not arise from or relate to the Gemini User

11  Agreement, or have any relationship with it, so arbitration is improper under both the third-party

12  beneficiary clause and the doctrine of equitable estoppel.

13  **A.    Defendants Are Not Third-Party Beneficiaries.**

14  The third-party beneficiary clause on which Defendants rely does not allow them to enforce

15  the arbitration provision. Under that clause, Defendants can compel arbitration only if the claims

16  "aris[e] from or relate[] to [the] User Agreement." May Agreement 49. But Plaintiff's unregistered

17  securities claim does not satisfy that test. A claim "aris[es]" from or "relate[s] to" a contract where

18  the allegations "'touch matters' covered by the contract," meaning that there is "direct relationship"

19  between the claim and the contract. *Jackson v. Amazon.com, Inc.*, 65 F. 4th 1093, 1101, 1104 (9th

20  Cir. 2023). A mere "but for" link is not sufficient. *United States ex rel. Welch v. My Left Foot

21  Children's Therapy, LLC*, 871 F.3d 791, 799 (9th Cir. 2017). In other words, if the defendant

22  "'could have engaged in' the same conduct 'even in the absence of any contractual . . . relationship,"

23  and a third party "could have brought the[] same claims . . . based on virtually the same alleged

24  facts," the claim is not arbitrable. *Id*. (citation omitted). There is no direct relationship between the

25  Gemini User Agreement and Plaintiff's claim that Defendants solicited unregistered securities

26  transactions. *See, e.g.*, AC ¶ 138. Plaintiff happened to purchase LDO on Gemini, but Defendants

27  could have engaged in the same solicitations even in the absence of the User Agreement. Class

28  members who purchased tokens on other exchanges could state the *same* claim on the *same*

allegations. Plaintiff's standing depends on a purchase of LDO *somewhere*, but the contract under which Plaintiff made the purchase is irrelevant to his claim that Defendants engaged in unrelated misconduct.

Neither of Defendants' theories about how the Section 12(a)(1) claim relates to the contract work. *See also* Section III.B. It makes no difference that the contract may govern orders on Gemini. No matter where Plaintiff bought LDO, his claims arise from or relate to Defendants' solicitations, not the contract under which his order was executed. *Cf. In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 2650689, at *4–*5 (N.D. Cal. July 6, 2011) (compelling arbitration where plaintiff sued defendant for fixing prices for purchases under contract *between plaintiff and defendant*). Defendants are also wrong that the claim "rests on restrictions imposed by the User Agreement" that let Gemini keep custody of tokens. Mot. 13. Nowhere does Plaintiff allege that Defendants' solicitations were unlawful because some purchasers have LDO in custody—or even that Plaintiff's tokens are in custody. *Cf. id.* (cobbling together out-of-context quotes from six paragraphs). Were Plaintiff able to vote, Defendants would still have violated Section 12(a)(1) in the same way. That has been Plaintiff's consistent position. *See* Dkt. 64 at 22 (arguing it would not matter for the Section 12(a)(1) claim if Plaintiff could vote). So there is not even a "but for" link, let alone a "direct relationship," between Gemini's custody of LDO and Defendants' unlawful solicitations.[7]

## B.    Equitable Estoppel Does Not Apply.

Defendants cannot invoke equitable estoppel. They claim that doctrine applies where a claim is "intimately founded in and intertwined with" the contract, or rests "on allegations of interdependent and concerted misconduct." Mot. 14. But either way, the claims must be "dependent upon, or inextricably bound up with, the obligations imposed by the contract." *Kramer*, 705 F.3d at 1129 (quoting *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 229–30 (2009)).

Applying these rules, two courts in this district recently denied motions to compel

---

[7] The one-sided nature of the third-party beneficiary clause is also unconscionable. It purports to allow a class of non-signatory defendants to compel a signatory to arbitrate but does not have a parallel means for a signatory to compel arbitration of claims brought against it by the non-signatory. Courts regularly refuse to enforce lopsided terms such as these. *See, e.g.*, *Cook v. Univ. of S. Cal.*, 102 Cal. App. 5th 312, 326–28 (2024); *Sandler v. Modernizing Medicine, Inc.*, 2024 WL 4469217, at *7 (S.D. Cal. Oct. 9, 2024), *appeal filed*, No. 24-6623 (9th Cir.).

arbitration in virtually identical circumstances to this case. In *Houghton*, the court rejected attempts by a16z and Paradigm to rely on equitable estoppel to compel arbitration of essentially the same unregistered securities claims. The court explained that while the complaint, like this one, discussed efforts by an exchange (Coinbase) to list the crypto asset at issue, the Section 12(a)(1) claim did not "implicate Coinbase" because the court would "not need to address (much less rely on) the Coinbase User Agreement." 2024 WL 5154071, at *5; *see id.* at *6. Following the same reasoning, the court in *Solana* reached the same result on the same basic facts. 2024 WL 4023087, at *7.

The same analysis applies here. Plaintiff's claim does not depend on obligations imposed by the User Agreement. He does not allege it was violated or rely on its terms to support his claim. The Court instead held that Plaintiff stated a claim even though his complaint never mentioned or relied on the User Agreement. Plaintiff "could have purchased [LDO] on any exchange and . . . alleged the exact same claim," because he does not allege that Gemini "illegally profited from [his] purchase or otherwise directly harmed [him]." *Houghton*, 2024 WL 5154071, at *6.

None of Defendants' bases for estoppel is sufficient. The solicitation of purchases is not "dependent upon" or "bound up with" the Gemini User Agreement. *Kramer*, 705 F.3d at 1129 (citation omitted); *Houghton*, 2024 WL 5154071, at *5–*6; *Solana*, 2024 WL 4023087, at *7. As explained above, Plaintiff does not allege that LDO is a security because of any custody restrictions, or even that his tokens are in custody. It is irrelevant that Plaintiff's losses are recorded in Gemini's records, because "the correct analysis is whether Plaintiffs would have a claim independent of the existence of the" Agreement, "not whether the court must look to [it] to ascertain the requested relief." *Kramer*, 705 F.3d at 1131–32. And while allegations that the DAO caused LDO to be listed on Gemini may be "relevant," they have no relationship to the User Agreement and do not require the Court to address or rely on it. *Houghton*, 2024 WL 5154071, at *5; *see, e.g.*, *Herrera v. Cathay Pac. Airways Ltd.*, 104 F. 4th 702, 705 (9th Cir. 2024) (claim "turn[ed] on whether" signatory "abided by its" contract); *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 876 (9th Cir. 2021) (whether the plaintiff could "maintain liability" could not "be answered without reference to" contract); *In re Bam Trading Servs. Inc. Sec. Litig.*, 733 F. Supp. 3d 854, 875 (N.D. Cal. 2024) (claims brought against non-signatory agent of signatory principal).

This case is not at all like *Young*, where the plaintiff tried to "sidestep[]" arbitration by bringing claims only against a nonparty to the arbitration agreement, even though she could have also sued the signatory "on essentially the same set of allegations." 700 F. Supp. 3d at 814. Defendants provide no evidence supporting that Plaintiff made a similar strategic choice here. Indeed, Plaintiff does not allege that Gemini engaged in any solicitations. *See* AC ¶ 60.

Regardless, Defendants apply the wrong test for equitable estoppel. Defendants do not argue (nor could they) that they satisfy California's test for equitable estoppel, which requires that Plaintiff have intentionally misled them into believing he would arbitrate. *See Simmons v. Ghaderi*, 44 Cal. 4th 570, 584 (2008). Defendants instead invoke an arbitration-specific doctrine. But only state laws that "arose to govern . . . contracts generally" apply under the FAA, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (citation omitted); *see Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022)—not the arbitration variant of equitable estoppel that Defendants rely on here.

## IV. Claims Against the Lido DAO Should Not Be Stayed.

Finally, because the DAO has defaulted and has not moved to compel arbitration, this Court should exercise its discretion to allow the non-arbitrable claims against it to proceed pending arbitration.[8] A stay is "appropriate where the arbitrable claims predominate, or where the outcome of the nonarbitrable claims will depend upon the arbitrator's decision." *Cal. Crane Sch., Inc. v. Google LLC*, 621 F. Supp. 3d 1024, 1033 (N.D. Cal. 2022) (citation omitted). Defendants contend that they are not liable as general partners for the conduct of the DAO, so on their own theory, claims against the DAO predominate. And because the arbitrator's finding would not "be binding on this Court," Plaintiff will need "to eventually litigate the remaining non-arbitrable claims irrespective of whatever happens in the arbitration." *Id.* A stay would "only serve to needlessly delay" claims against the DAO, *id.* at 1034, and should therefore be denied.

## CONCLUSION

Plaintiff respectfully requests that the Court deny Defendants' motion.

---

[8] Defendants argue that because a final judgment in this Court against Defendants could be enforced against the DAO, the Court should compel arbitration of the claims against it. But Defendants cite no authority that the Court can *sua sponte* compel arbitration of claims against a party that has defaulted and never sought arbitration of those claims.

15

1 | Dated:  June 23, 2025

Respectfully submitted,

2

By:  /s/ *Nicholas N. Spear*

3

Nicholas N. Spear

4

STEVEN G. SKLAVER (237612)
ssklaver@susmangodfrey.com

5

OLEG ELKHUNOVICH (269238)
oelkhunovich@susmangodfrey.com

6

ROHIT D. NATH (316062)
rnath@susmangodfrey.com

7

NICHOLAS N. SPEAR (304281)
nspear@susmangodfrey.com

8

**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400

9

Los Angeles, California 90067-6029
Telephone: (310) 789-3100

10

Facsimile: (310) 789-3150

11

JASON BELL (*pro hac vice*)
jbell@susmangodfrey.com

12

**SUSMAN GODFREY L.L.P.**
One Manhattan West

13

New York, NY 10001-8602
Telephone: (212) 336-8330

14

Facsimile: (212) 336-8340

15

JASON HARROW (308560)
jason@gerstein-harrow.com

16

**GERSTEIN HARROW LLP**
12100 Wilshire Blvd., Suite 800

17

Los Angeles, California 90025
Telephone: (323) 744-5293

18

19

JAMES CROOKS (*pro hac vice*)
jamie@fairmarklaw.com

20

MICHAEL LIEBERMAN (*pro hac vice*)
**FAIRMARK PARTNERS, LLP**

21

400 7th Street NW, Suite 304
Washington, DC 20004

22

Telephone: (619) 507-4182

23

CHARLES GERSTEIN (*pro hac vice*)
charlie@gerstein-harrow.com

24

**GERSTEIN HARROW LLP**
400 7th Street NW, Suite 304

25

Washington, DC 20004
Telephone: (202) 670-4809

26

*Attorneys for Plaintiff*

27

28

1

**ATTESTATION**

2          Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I attest that concurrence in the

3    filing of this document has been obtained from the other signatories.

4

5    Dated: June 23, 2025                    By:    */s/ Nicholas N. Spear*

6                                                  Nicholas N. Spear

7

**CERTIFICATE OF SERVICE**

8

9          I hereby certify that on June 23, 2025, I authorized the electronic filing of the foregoing

10    with the Clerk of the Court using the CM/ECF system which will send notification of such filing

11    to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused

12    to be mailed the foregoing document or paper via the United States Postal Service to any non-

13    CM/ECF participants indicated on the attached Manual Notice List.

14

15    Dated: June 23, 2025                    By:    */s/ Nicholas N. Spear*

16                                                  Nicholas N. Spear

17

18

19

20

21

22

23

24

25

26

27

28